Jane C. Mariani, SBN 313666
Law Office of Jane C. Mariani
587 Castro Street, #687
San Francisco, CA 94114
jcm@marianiadvocacy.com
(415) 203-2453

*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| THOMAS NEAL MULLINS, an individual, and JOHN R. SCHOLZ, III, an individual, on behalf of themselves and all others similarly situated,<br><br>     Plaintiff,<br><br>vs.<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS, a labor organization; SEAN O'BRIEN, in his official capacity as General President of the International Brotherhood of Teamsters; TEAMSTERS LOCAL 986, a labor organization; CHRIS GRISWOLD, in his official capacity as Teamsters Local 986 principal officer; and UNITED AIRLINES, INC., a Delaware corporation; and UNITED AIRLINES HOLDINGS, INC., a Delaware corporation,<br><br>     Defendant | Case No.:<br><br>**COMPLAINT**<br><br>**CLASS ACTION**<br><br>**PRIVATE ATTORNEYS GENERAL ACT REPRESENTATIVE ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

## **COMPLAINT**

COMPLAINT – CLASS ACTION AND REPRESENTATIVE ACTION
- 0 -

Plaintiffs Thomas Neal Mullins ("Plaintiff Mullins") and John R. Scholz, III ("Plaintiff Scholz," by and through undersigned counsel, as individuals, collectively ("Plaintiffs"), on behalf of themselves and a class of similarly situated people (the "Proposed Class," as defined below) allege and aver the following:

## I.    INTRODUCTION

1.    This action is brought by Plaintiffs to secure damages and equitable relief to remedy the Defendants' breaches of duty owed to Plaintiffs and the Proposed Class in accordance with the governing collective bargaining agreement, union constitution, and local union bylaws. Plaintiffs seek to adjudicate deprivations of their property interests, specifically, due, payable, and owing wages, and denial of statutory rights protected by federal and state employment laws. Plaintiffs have been so injured due to the Defendants' fraudulent schemes to undercompensate Plaintiffs and the Proposed Class of a significant amount of wage compensation. Plaintiffs requested their Unions take immediate action on their behalf to assist in remedying these violations by Plaintiffs' and the Proposed Class' employer, Defendant United; however, all Union Defendants have refused, and failed, to do so. Instead, these Union Defendants have improperly, and unilaterally, extinguished Plaintiffs' rights, by processing Plaintiffs' grievances in a perfunctory, arbitrary, and bad faith manner. Plaintiffs have no choice left but to seek court intervention to assist in remedying these wrongs to secure proper wage compensation and therefore, Plaintiffs file this action for damages and equitable relief.

## II.    JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1337 because this action involves federal questions concerning breaches of the duty of fair representation and breaches of contracts made under the laws of the United States, and Acts of Congress, affecting and regulating interstate commerce.

3.    This Court has original jurisdiction over this action, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d), because: (a) this is a class action with a putative class of

more than one hundred (100) members; (b) at least one member of the class of plaintiffs is a citizen of a state different from any defendant; and (c) the amount in controversy exceeds the sum or value of five million dollars ($5,000,000), exclusive of interest and costs.

4.      This Court has supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a), over Plaintiffs' independent California state law claims because the state law claims are derived from the same operative facts as Plaintiffs' federal claims and form part of the same case and controversy under Article III of the United States Constitution. Resolving all claims in a single action serves the interests of judicial economy, convenience, and fairness to the parties.

5.      This Court has subject matter jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. The instant dispute is an actual and existing controversy.

6.      On August 7, 2023, Plaintiffs gave written notice of their claims in this Complaint to the California Labor and Workforce Development Agency ("LWDA"), seeking intervention or, alternatively, permission to proceed as a representative "aggrieved employee" for and on behalf of all other aggrieved employees and the State of California in a representative capacity under the California Private Attorneys General Act of 2004 ("PAGA"), California Labor Code § 2698 et seq. LWDA's statutory time to respond has not yet expired.

7.      Venue lies in this District, pursuant to 28 U.S.C. §1391(b) and (c) because all Defendants conduct substantial business, maintain offices, and employ authorized officers and agents in this District and this District is where the claims of Plaintiffs and the Proposed Class arose.

### III.     INTRADISTRICT ASSIGNMENT

8.      Pursuant to Civil L. R. 3-2(c) and 3-2(d), this action is properly assigned to either the San Francisco Division or the Oakland Division because a substantial part of the events giving rise to the claims asserted herein occurred in San Mateo County.

### IV.     PARTIES

9.      Plaintiff Thomas Neal Mullins ("Mullins"), at all times relevant, resides and works in this District. Plaintiff Mullins works as a non-exempt QC Lead Inspector for Defendant United

Airlines, Inc. and is a dues paying member in good standing of Defendant International Brotherhood of Teamsters and Defendant Teamsters Local Union 986.

10.     Plaintiff John R. Scholz, III ("Plaintiff Scholz"), at all times relevant, resides and works in this District. Plaintiff Scholz works as a non-exempt Hydraulic Mechanical Technician for Defendant United Airlines, Inc. and is a dues paying member in good standing of Defendant International Brotherhood of Teamsters and Defendant Teamsters Local Union 986.

11.     Defendant International Brotherhood of Teamsters ("Teamsters" or collectively with Teamsters Local 986 "Unions") is an unincorporated labor organization with its principal offices and headquarters in Washington, in the District of Columbia. The Teamsters regularly conduct and transact business in this District, and throughout California, in carrying out its union representational activities on behalf of Plaintiffs and the Proposed Class.

12.     Defendant Sean O'Brien ("O'Brien") is the Teamsters' General President, and principal officer, who acts in his position pursuant to the Teamsters' constitution.

13.     Defendant Teamsters Local 986 ("Local 986") is an autonomous affiliated local union of Defendant Teamsters and regularly conducts and transacts business in this District in providing its representational duties to Plaintiffs.

14.     Defendant Chris Griswold ("Griswold") is the principal officer of Defendant Local 986. Defendant Griswold maintains offices throughout California, including this District, to carry out his representational duties.

15.     Defendant United Airlines, Inc. ("United") is an air carrier as defined by, and subject to, the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 et seq. Defendant United, incorporated in Delaware and headquartered in Chicago, in the state of Illinois, regularly conducts and transacts its airline operations in this District, including employing Plaintiffs and the Proposed Class. Defendant United is a wholly owned subsidiary of Defendant United Airlines Holdings, Inc.

16.     Defendant United Airlines Holdings, Inc. ("UAH") is a Delaware corporation and is the parent company of Defendant United. Defendant UAH regularly conducts and transacts business in this District in operating its wholly owned subsidiary, United Airlines, Inc.

# V.    RELEVANT FACTUAL ALLEGATIONS

17.    At all relevant times, United was, and is, an "employer" as defined by the RLA and California Labor Code ("Labor Code"), employing, and continuing to employ, Plaintiffs and the Proposed Class as hourly-paid or non-exempt employees throughout the state of California, including San Mateo County, in California, including Plaintiffs and the Proposed Class.

18.    At all relevant times, Plaintiffs were "employees" as defined by the RLA and the Labor Code, employed by United at its many facilities which are part of the San Francisco International Airport located in San Mateo County, in California, in various classifications within United's Technician and Other Related work group.

19.    United directly hires, and pays wages and benefits to, Plaintiffs and the Proposed Class.

20.    Plaintiffs and the Proposed Class are required to join one of two affiliated local unions, Local 856 or Local 986, based on an alphabetical division of these workers by last name as stated by the Teamsters, as a condition of employment with United. Plaintiffs were assigned to, and required to join, Local 986 due to the first letter of their last names.

21.    Both the Teamsters and Local 986 are recognized bargaining representatives of Plaintiffs.

22.    The Teamsters are a hierarchical organization governed by a constitution which expressly provides for empowerment of autonomous affiliated local unions as bargaining representatives for representative functions, including negotiations and grievance handling.

23.    The Teamsters employ autonomous affiliated local unions such as Local 986 to carry out the Teamsters' representation and the Teamsters' constitution.

24.    Under the RLA, 45 U. S.C. § 151, et seq., a local union and its parent organization can be "labor organizations" within the meaning of the RLA. At all relevant times, the Teamsters and Local 986 were "labor organizations" as defined by the RLA and the California Labor Code.

25.    The Teamsters' constitution further provides that the principal officer is responsible for all acts performed by the Teamsters and any autonomous affiliated local, including the failure or refusal of a local's principal officer to perform his or her duties. Therefore, Defendant O'Brien

has the duty, responsibility, and the power to fix any bad act by the Teamsters officers, agents, and/or other officials in carrying out representational duties.

26.    Local 986 is a Teamsters affiliated local union serving as a bargaining representative for the Plaintiffs and the Proposed Class. Local 986 negotiates and enforces agreements for its members with employers such as United. Local 986 is governed by its bylaws and the Teamsters constitution. Local 986's bylaws provide the local principal officer is an agent of the Teamsters both in the implementation and enforcement of the collective bargaining agreement and in the processing of grievances. Thus, because Defendant Griswold is the principal officer of Local 986, Griswold has the duty, responsibility, and the power to fix any bad act by any Local 986 "agent" in carrying out representational duties, and is exclusively responsible for handling grievances.

27.    The Teamsters' constitution and Local 986's bylaws are enforceable contracts between the Teamsters, Local 986, Plaintiffs, and members of the Proposed Class.

28.    At all relevant times, the tripartite relationship between Plaintiffs, the Unions, and United is governed by a collective bargaining agreement ("CBA"), 2016-2022 "Collective Bargaining Agreement between United Airlines, Inc. and The Airline Technicians and Related Employees and Flight Simulator Technicians and Related Employees In the Service of United Airlines As Represented by The International Brotherhood of Teamsters."

29.    Designated agents for the Teamsters and Local 986 participated in the negotiation and ratification of the CBA and are signatories to the CBA.

30.    The parties agreed upon an objective, standardized method of wage increases in the CBA, incorporated Letter of Agreement #29 ("LOA #29"), by which Plaintiffs and the Proposed Class receive increases in pay.

31.    All parties agreed Plaintiffs and the Proposed Class must be the highest compensated technicians in the airline industry at all relative times. To accomplish this goal, pursuant to LOA #29, Plaintiffs and the Proposed Class receive increases in pay every two years depending upon a comparison of their wages and benefits with the wages and benefits of two competitor airlines, American Airlines ("American") and Delta Airlines ("Delta"). This biennial comparison is

expressly provided for in LOA #29, as is the objective, standardized method to perform this comparison.

32.    Another stated goal of the CBA, and of LOA #29 in particular, was to reduce lengthy, drawn out, contentious wage negotiations. Instead, the parties sought to prioritize transparency in order to eliminate the prickly, combative negotiations common to past wage negotiations. To accomplish this goal, the parties agreed to LOA #29's objective, standardized methods.

33.    The "Adjustment Calculation," LOA #29, section 2, is the sum value of 5-key contract elements in each airlines CBA or employment manual: Pay, Time Off, Benefits, Profit Sharing, and Scope. LOA #29 explicitly provides the definition for each of these elements. The United technicians' 5-element sum is weighted against the combined average sum of the same elements for American, and Delta, technicians.

34.    The calculation's structure does not change; only the periodic updates of element data being analyzed changes, e.g., with a new CBA or wage increases in between measuring periods of any of the three airlines.

35.    In 2016, at the start of the CBA term, the Defendants created a baseline measurement from the 2016-2022 CBA (then proposed, now ratified) and to demonstrate to Plaintiffs and the Proposed class the strength and value of the CBA.  At the time of the baseline measurement, the Defendants stated the value of the wages and benefits, analyzed using the LOA #29, made Plaintiffs' and the Proposed Class' wages and benefits 5.8% above the average of the wages and benefits of their counterparts at American and Delta. This result was heavily touted and leveraged to induce ratification by Plaintiffs and the Proposed Class of the CBA.

36.    The Teamsters' economic expert Dan Akins conducted in person presentations, provided detailed written explanations, as well as created and disseminated a comprehensive audiovisual explanation of how this measuring calculation functioned and would be carried out. Mr. Akins went into great detail as to what information was used and needed for the Adjustment Calculation, and more specifically, how the information was to be curated, i.e., that it was to be gathered from publicly available information for all three airlines. This is self-evident as the information needed

to perform the Adjustment Calculation could not be routinely, objectively obtained otherwise. The calculations would be made available to Plaintiffs and the Proposed Class upon completion.

37.     Teamsters' Airline Division Coordinator, Bob Fisher, Local 986 Business Agent Mark DesAngeles, and Local 856 Business Agent Javier Lectora expressly stated the same three points related to LOA #29 at an October 19, 2016 union "roadshow" to sell the proposed CBA to the membership – all of the measuring factors were defined in LOA #29, all information was to be culled from publicly available data, and the members would be shown the calculation. This meeting's details are also captured in detailed in notes, audio recordings, and videos.

38.     This is further reinforced by the express terms of LOA #29, section 1, subsections (a)-(i); each section specifically identifies where the measuring elements derive from, as well as what each element is comprised of, as it relates to the Adjustment Calculation, for all three airlines. There is not a single measuring element deemed proprietary or secret nor do those words appear anywhere in LOA #29.

39.     All Defendants repeated these three main points – remain at least 2% higher than main competitors, measured by publicly available information, provided for review after measurement completed – endlessly during the ratification process and beyond.

40.     Teamsters' Airline Division Coordinator, Vincent Graziano published several letters to the membership regarding LOA #29. These comprehensive and detailed postings reaffirm all of the information was to be from publicly available information and entirely available to members.

41.     A February 2017 posting stated "it is far better to capture the highest hourly rate possible rather than have hourly earnings flex with the ability of the company to make a profit." Plaintiffs understood this to mean any costs, expenses, or liabilities of United are not a factor.

42.     A May 15, 2018 letter details of the elements and how each and every one factor into the Adjustment Calculation. "UA must be 102% of that average total rate and if not, then wages at UA will be increased so UA total rate is equal to 2% above industry average" , "Annual Employee Benefits consist of retirement benefits and active medical cost share ... . Add Wages, Benefits, and Time Off and then weighted for 10, 20, and 30 years of service, i.e., 20% (10 years), 60%

(20 years), and 20% (30 years) ... . Then plus or minus Scope Adjustment where Scope equals the ratio of techs to aircraft." Specifically confirming, "[i]t should be noted here all of the factors used for the calculation are readily available through SEC filings and other public sources."

43.    It is because of these, and other, statements, and the express terms of LOA #29, Plaintiffs and the Proposed Class began asking for the "Cost Model." Mr. Graziano, however, in response to these requests, stated in a June 22, 2018 letter, despite the Cost Model having been "completed and agreed upon shortly after the ratification of the Agreement, ... . The model is kept on a server at the [National Mediation Board] for security" and therefore, it could not be so provided.

44.    A Freedom of Information Act request was made of the NMB for the Cost Model. The NMB responded not only were they not keeping any such data on their servers, the NMB did not have any such servers to keep data on. This misrepresentation told to Plaintiffs and the Proposed Class was to conceal a scheme to defraud them out of their rightful contractual wages and benefits.

45.    There are no provisions in LOA #29 to make any kind of adjustment, either to unilaterally reduce or eliminate the Adjustment Calculation wage increase, by any party.  The Adjustment Calculation result is an enforceable obligation on the United Defendants that Plaintiffs and the Proposed Class' wages and benefits be 102% of the two competitor airlines.

46.    On November 23, 2022, Plaintiff was provided the 2022 Adjustment Calculation via separate emails from the Teamsters and United, stating the Adjustment Calculation resulted in 2.6% increase. For Plaintiff Scholz this resulted in a $1.17 wage increase and for Plaintiff Mullins a $1.23 increase.

47.    Given American's new CBA, and Delta's substantial wage increases and profit-sharing payouts, since the last measurement, Plaintiff Scholz independently performed the calculation to confirm he was being paid correctly and according to the CBA and LOA #29.

48.    When Scholz' calculation did match up to the information previously provided by the Defendants, on or about November 25, 2023, Plaintiff Scholz emailed several Local 986 officials, including his shop steward, Selvin Najera, requesting information for the values used for the 5-elements of the Adjustment Calculation to confirm he was being paid correctly.

49.    After a discussion with Mr. Najera, both agreed this should grieved and Mr. Najera initiated the grievance process by entering Plaintiff Scholz' grievance into the union electronic grievance database. The grievance asked to be provided the values of the agreed upon elements used in the Adjustment Calculation in order to confirm his hourly rate of pay was correct because this was not readily ascertainable from his wage statement and he had arrived at a dramatically different result than United's $1.17. In essence, Scholz challenged not only the "math" but the failure to "show their work," to fail to disclose and provide the Adjustment Calculation summary.

50.    On December 8, 2023, the grievance was answered by United employee Mike Richardson, Scholz' supervisor, stating "I am not privileged to this information and/or the numbers." Scholz appealed this answer and Local 986 moved his grievance to the Second Step.

51.    Plaintiff Mullins followed essentially the same process as Scholz. Mullins' independent calculations reached a differing result than United, one almost identical to Plaintiff Scholz' result, and therefore, Mullins discussed the situation with his Local 986 shop steward, Dale Mitchell, resulting in a grievance being written up and entered into the electronic data base.

52.    United however provided Mullins with a more detailed answer than the answer given to Scholz. United manager Greg Jedrzejczyk's answer, drafted on information and belief by Defendant United's Thomas Reardon, Managing Director of Labor Relations, read:

> LOA 29 of the UA/IBT CBA provides, among other things, that economic experts from the Company and the Union agree on a costing model to calculate the industry reset. The parties agreed on the model within the parameters set out in the LOA, and utilized the model for the 2018, 2020and the 2022 industry reset calculations. Much of the data that the model utilizes is publicly available ... like the [American]. Some of the information is Company confidential and proprietary, and can't be shared publicly. And finally, the exact nature of the model and its operation is kept secure because it could put [United]at a competitive disadvantage if our competitors were to have access to it. It is for these reasons that the parties have agreed to maintain the confidentiality of the model.

53.    This response by Defendant United misrepresents the entirety of the express language in LOA #29 and the stated upon, and agreed to, goals.

54.    The Cost Model referred to has nothing to do with the Adjustment Calculation. All terms comprising the Adjustment Calculation are defined in LOA #29. The Adjustment Calculation is

specifically defined as the sum of Annual Wages and Benefits. The element, or term, Annual Wages and Benefits is similarly clearly defined and notably does not include the Cost Model, any reference to the Cost Model, or suggest in any way United's "costs" are somehow relevant to whether United technicians are being compensated at a rate at least 2% higher than their American and Delta counterparts.

55.    This response further states "the parties," presumably the Defendants, have used some secret formula or model to manipulate the Adjustment Calculation when it states "utilized the model ... "[for] the 2022 industry reset calculations." Again, the Cost Model is not included in, nor could it be read into, the Adjustment Calculation as provide for in LOA #29.

56.    LOA #29, Section 1, subsection (j), however, clearly states that once the Cost Model is agreed to, it will be attached to the CBA as Exhibit A. Indeed, this makes sense because the whole point of the CBA is to know all of the terms and conditions for wages, hours, and work conditions between the employer and the employee and because there can be no secret deals or terms between the employer and the union. This also is strong proof the Cost Model was always intended to be provided to Plaintiffs and the Proposed Class.

57.    The response states "much of the data that the model utilizes is publicly available ... like the [American] CBA. Some of the information is company confidential and proprietary, and can't be shared publicly." This is demonstrably false.  All of the information is derived from the CBA's, SEC filings, and other publicly available curated sources. It is self-evident that if the information is all publicly available for the other two airlines, it is publicly available for United. United did not offer what was public and what was proprietary and secret.

58.    Notably, MIT conducts the "Airline Data Project," which curates highly accurate data encompassing the 5-elements and has done so for over 20-years; the data is publicly available on a regularly, updated website. Data for the 5-elements in the Adjustment Calculation is also easily discerned from the CBAs, SEC filings,  and other government reports of each of the three airlines.

59.    Furthermore, a simple internet search often produces the proper data to be plugged into the Adjustment Calculation's standardized formula. Delta's technicians are not unionized and

thus do not work pursuant to a CBA. However, Delta's pay scales, profit-sharing announcements, and basic benefits for employees are readily available via internet search.

60.    The statement that there is a competitive disadvantage to United if the values are disclosed is false, baseless, and designed and intended to deceive. The element data can be found for United just as easily as their competitor airlines. More importantly, LOA #29 clearly states in Section 1, subsection (j), that the Cost Model will be attached to the CBA as Exhibit A once agreed upon by the parties. The CBA was ratified over six years ago, and all Defendants admit and confirm the Cost Model has been agreed to, and yet, Defendants refuse to provide to it Plaintiffs and the Proposed class or appended the Cost Model to the CBA as required.

61.    Plaintiff Scholz sent two written requests via certified mail to both the Teamsters and Local 986 for the relevant collective bargaining agreement, first on February 18, 2023, and again on March 25, 2023; however, neither the Teamsters nor Local 986 has complied with Plaintiff Scholz' requests and provided him the complete CBA.

62.    After the Plaintiffs' grievances were filed, Local 986 Chief Steward, Components/Plant Maintenance, Maurice McDonald, unilaterally combined the Plaintiffs' grievances into a singular grievance and, following receipt of United's answers, appealed the grievance to the Second Step.

63.    Article 19, paragraph 3, subsection (c) of the CBA states that during a grievance, "upon request, the Union *will be provided* access to all documents and reports in the Company's possession on which the action taken was based. ... Each Party *shall be entitled* to copies of any such documents that it may determine are needed." (emphasis added).

64.    Despite this, neither the Teamsters nor Local 986 made any attempt to get any documents or reports related to these grievances, or alternatively, file a grievance when, and if, United would not so provide such information in light of this contractual obligation to do so.

65.    Plaintiffs made multiple written and oral requests to Local 986 officials urging them to investigate on their behalf, including requesting relevant documentation and information as permitted pursuant to the CBA. Local 986 officials refused to do so and failed to provide any such requested assistance to Plaintiffs in the entirety of the grievance process.

66.    Because LOA #29 states the element items will be mutually agreed upon, and reviewed, all relevant documents would have also been within the control of Local 986 and the Teamsters, at least for the actions to be taken under the LOA #29 to be legitimate. Therefore, even if United refused to comply, the Defendant Unions would be able to provide Plaintiffs with this relevant and material information and had a duty to provide this information to Plaintiffs in handling and adjudicating the grievances as there RLA representatives.

67.    Similarly, Plaintiff Mullins, who was notified of a Second Step hearing only a few days prior, asked Local 986's Dale Mitchell to invoke the CBA grievances procedures, which state "a reasonable opportunity to secure the presence of necessary individual(s) to fairly conduct hearing and meetings required in connection with a grievance" is agreed to by the parties, in order to accommodate Mullins work schedule.  Mr. Mitchell refused to do so, providing no reason as to why he would not do so. Mullins was unable to attend the Second Step hearing as a result.

68.    At the Second Step hearing, Local 986 representative Maurice McDonald simply read Plaintiffs' grievances, LOA #29, and the 2016 Baseline Summary, into the record. Mr. McDonald did not advocate for, support, or explain in any other way Plaintiffs' legitimate positions.

69.    Plaintiff Scholz, on the other hand, strenuously argued United was required to provide him this information in order for him to determine, amongst other things, whether he was being paid correctly. Plaintiff Scholz explained how the elements to be used in LOA #29's Adjustment Calculation were clearly spelled out to the employee-members in 2016 prior to the ratification vote on the CBA, specifically referencing the audiovisual recording provided by the Teamsters Dan Atkins.

70.    United's hearing officer, Jesse Jandura, was visibly taken aback by this bit of information. Mr. Jandura asked when and how Plaintiff Scholz had such information and Scholz again repeated that it was provided in the voting materials to ratify the CBA in 2016 and was posted on the Teamsters' website.  Scholz offered to play the video on his laptop, and to give Mr. Jandura his copy of the video but Mr. Jandura declined both invitations. Local 986's Dale Mitchell stated he would send a copy to Mr. Jandura. It is unclear if Mr. Jandura ever received, or watched, it.

71.     As expected, and despite substantial, credible evidence to the contrary, on January 25, 2023, Mr. Jandura's decision, a largely unchanged statement like the one provided to Plaintiff Mullins at the First Step, denied the grievance because the information was proprietary and secret.

72.     Despite finding merit to challenge this explanation after Plaintiff Mullins received this response at the First Step, Local 986 somehow now found this explanation so compelling as to extinguish the grievances entirely. On or about February 6, 2023, Local 986 provided Plaintiffs with written letters stating the grievance lacked merit and was now closed and withdrawn.

73.     Plaintiffs allege Local 986 impermissibly closed Plaintiffs' grievances, impermissibly extinguishing Plaintiffs' rights, over Plaintiffs express objections, and without prior notification to, or discussion with, Plaintiffs when the grievances were closed on February 6, 2023.

74.     In doing so, Local 986 Business Agent, Mark DesAngeles, expressly stated to Plaintiff Scholz, "CARP contribution payments are a secret and always will be a secret" and "CARP catch up payments are why United adjusted the calculation." These statements are further misleading and inaccurate statements in a long line of misleading and inaccurate statements. As participants in CARP, Plaintiffs are statutorily entitled to, and are required to annually be provided for, CARP contribution information pursuant to ERISA; United is statutorily required to provide that exact information on an annual basis and has done so in the past.

75.     Local 856 Business Agent Javier Lectora similarly confirmed a scheme to hide the failed calculation with the pretext of CARP contribution amounts being so highly proprietary as to render the entire calculation a secret to Plaintiff Scholz when they spoke for almost an hour on February 7, 2023.

76.     In the lengthy wide-ranging conversation unprompted by Plaintiff Scholz, Mr. Lectora confessed and repeatedly acknowledged Plaintiff Scholz was right that United was violating the CBA and LOA #29.  Mr. Lectora explicitly stated, "United will not show anyone the numbers because they do not have the numbers, the values for the elements are simply estimated.  This is why the unions cannot request the values or will not be given the values."

77.     Mr. Lectora also continually emphasized the main element United wanted concealed was the contribution amount to United's single employer benefit plan. Mr. Lectora stated, "CARP contribution always is a secret  and the ERISA retirement contribution is what they do not want to reveal." Again, as stated above, this is nonsensical given ERISA's explicit dictates, which United appears to follow every year, of providing this same information to Plaintiffs in CARP's Annual Funding Notice, Supplement to Annual Funding Notice, and Internal Revenue Service Form 5500, as well as in its verified financial disclosures required to be filed with the Securities and Exchange Commission, containing similar, if not identical information.

78.     Mr. Lectora confirmed what Plaintiffs had long suspected, and tentatively proven with their independent calculations, which is that the Adjustment Calculation was being manipulated by United, with the Teamsters and Local 986's blessing, to defraud and deceive Plaintiffs and the Proposed Class out of due, owed, and payable wages.

79.     Mr. Lectora went on to say United does not even do the calculation for American and Delta, just guesses and so they are "never going to let you see the numbers because they do not want you to test the numbers." Mr. Lectora also confirmed the information was publicly available, stating "United gets the American and Delta information from public information and analyzes public information" but "United does not want you to see the CARP numbers" and perpetuating the falsehood CARP contribution amounts rendered the entire calculation proprietary and secret.

80.     Mr. Lectora was deeply concerned about the repercussions of speaking to Plaintiff Scholz, stating "[i]f I were to help you, the company is then going to turn around and say what the f**k." Plaintiff Scholz understood Mr. Lectora to be suggesting United and the Union had a secret deal. Mr. Lectora stated "I will deny this conversation took place, I am here as a friend and if they found out it would be a shit storm but I think this is bullshit" but "this is how United works."

81.     Despite these admissions, Plaintiff Scholz requested to complete the grievance process, at a minimum to advance the grievance to the Third Step. The Defendant Unions refused stating Plaintiff had no right to do so, only the union was allowed to; Defendant United never responded to Scholz' request.

82.    Plaintiffs contend they have fully exhausted all administrative remedies under the CBA to the fullest extent possible despite completing only two of the four steps.

83.    Without proper review of the calculation discrepancies Plaintiffs have raised with the Defendants, Plaintiffs damages increase with every paycheck, perpetuating an intentional and deceit upon Plaintiffs and the Proposed Class by the Defendants causing substantial financial harm yet again at their expense due to being uninformed and unable to determine whether they are being paid correctly.

## VI.    COMMON FACTUAL ALLEGATIONS

### CLASS ALLEGATIONS

84.    Plaintiffs allege and incorporate by reference all paragraphs above as though fully set forth herein.

85.    Plaintiffs bring this action on behalf of themselves and all others similarly situated and therefore seek class certification under Federal Rules of Civil Procedure Rule 23 ("Rule 23").

86.    This action has been brought, and may properly be maintained, as a class action under Rule 23 because there is a well-defined community of interest in the litigation and the proposed class members are easily ascertainable, clearly defined, and can be identified and notified efficiently from reference to existing, objective criteria such as records maintained by Defendants.

87.    For purposes of this Complaint, "Plaintiff Mullins" or "Plaintiff Scholz" shall refer to that particular Plaintiff only; "Plaintiffs" will refer to them collectively. Reference to the "Proposed Class" shall be deemed to include the Plaintiffs and each member of the Proposed Class.

88.    The Proposed Class is defined as follows:

> All current and former hourly-paid or non-exempt employees who were employed by United Airlines, Inc., as a non-exempt hourly wage Technician or Other Related employee at any time from four (4) years prior to the filing of this Complaint through to the time of judgment in this action, who were residents of California and who performed work in California for which all earned wages were not paid. This includes those individuals who are, or have been, Teamsters' members, Teamsters Local 986 members, Teamsters Local 856 members, or who were not Teamsters members as that relates to the Teamsters' representation of United Airlines, Inc.'s Technician or Other Related employees in the relevant violation period.

89. Plaintiffs reserve the right to establish subclasses as appropriate.

90. Excluded from the class are: any Defendant; any of the Defendants' officers, directors, or agents; and any member of the immediate family of, and any heirs, successors or assigns of, any such excluded party.

91. This action is properly maintainable as a class action under Rule 23(a)(1) as the Proposed Class is so numerous joinder of all is impracticable. The precise number of the entire Proposed Class is unknown to Plaintiffs at this time; however, Plaintiffs are informed and believe that Defendant United currently employs, and has employed during the relevant time periods, more than two thousand (2,000) potential Proposed Class members.

92. This action is properly maintainable as a class action under Rule 23(a)(3) as Plaintiffs' claims are typical of all other members of the Proposed Class' claims as demonstrated herein. Plaintiffs were subjected to the same violations of rights under federal and California law as the Proposed Class. Plaintiffs seek the same types of penalties, and other relief, on the same theories and legal grounds as the members of the Proposed Class that Plaintiffs seek to represent.

93. This action is properly maintainable as a class action under Rule 23(a)(4) as Plaintiffs will fairly and adequately protect the interests of each member of the Proposed Class with whom Plaintiffs have a well-defined community of interest and typicality of claims. Plaintiffs have no interest antagonistic to the Proposed Class who Plaintiffs seek to represent. To the contrary, Plaintiffs' interests are fully aligned with the Proposed Class' interests in seeking redress for all Defendants' wrongful conduct. Plaintiffs' attorney, the Proposed Class counsel, is well versed in the rules governing class action, including discovery, certification, and settlement. Plaintiffs have incurred, and during the pendency of this action will continue to incur, costs and attorney's fees, that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each class member.

94. This action is properly maintainable as a class action under Rule 23(b)(1). Separate litigations by individual members of the Proposed Class against any Defendant would create the risk of conflicting, inconsistent, or otherwise varying rulings and resolutions concerning those

individual class members that would create conflicting or otherwise incompatible standards of conduct for the Defendants or would otherwise substantially impair or impede the individual class members not parties to the individual adjudications to protect their own interests.

95.    This action is properly maintainable as a class action under Rule 23(b)(2). As described above, Defendants have acted, or refused to act, on grounds generally applicable to the Proposed Class and therefore, relief is appropriate respecting the Proposed Class as a whole.

96.    Additionally, class action treatment of this lawsuit will advance public policy objectives. Defendants in this class action violate employment and labor laws every day. Current employees and union members are often afraid to assert their rights out of fear of direct or indirect retaliation. Class actions provide class members who are not named in the complaint anonymity and allow for the vindication of their rights while lessening the aforementioned fear and is efficient and economical for the parties and the judicial system.

97.    This action is maintainable as a class action under Rule 23(b)(3), as there are questions of law and fact common to the proposed class, including but without limitation:

(a)    The proposed class members are commonly represented by the Unions pursuant to certification by the National Mediation Board which designates the Unions as the bargaining representative of Technician and Other Related United employees for purposes of collective bargaining under the Railway Labor Act, as amended.

(b)    The collective bargaining agreement, including LOA #29, entered into between the parties affects each proposed class member;

(c)    Whether the Defendants have engaged in a fraudulent scheme and/or artifice to defraud through secret agreement the Proposed Class in the manipulation of the Adjustment Calculation to the Proposed Class' harm and any Defendants' gain;

(d)    Whether Defendant United's conduct was willful or reckless;

(e)    Whether Defendant United failed to pay all wages due to each member of the Proposed Class, which includes Plaintiffs, within the required time as designated by the collective bargaining agreement and required by Labor Code § 204;

(f)     Whether Defendant United secretly paid wages less than agreed upon rate found in, and according to, the collective bargaining agreement to each member of the Proposed Class, which includes Plaintiffs, for all hours worked;

(g)     Whether Defendant United has, and had, a corporate policy and practice of failing to pay Defendant United's non-exempt technician employees within the state of California the true and correct standard rate, regular rate, and overtime rate of pay;

(h)     Whether Defendant United complied with the wage reporting requirements as mandated by the California Labor Code, including Labor Code § 226;

(i)     Whether Defendant United engaged in unfair business practices in violation of California Unfair Competition Laws, California Business and Professions Code §§ 17200, et seq., by unlawfully, unfairly, or deceptively having in place company policies, practices and procedures purposely designed to deceive Plaintiffs and the proposed class members as to the true rate of pay and by failing to pay all wages due, payable, and owing for all time worked;

(j)     Whether the actions of any Defendant, in failing to enforce Letter of Agreement #29 ("LOA #29"), were directed at the Proposed Class affecting the legal rights of the Proposed Class in the same or a substantially similar manner;

(k)     Whether any Defendant denied statutory due process to the Proposed Class when the Defendants actively prevented access, participation, and completion of the congressionally mandated grievance process to Plaintiffs;

(l)     Whether the Union Defendants' breach of their owed duties of fair representation to the Proposed Class in failing to make honest, complete, accurate disclosures regarding the Adjustment Calculation to the Proposed Class;

(m)     Whether any Union Defendant breached its owed duty of fair representation to the Proposed Class in failing to investigate Plaintiffs' grievances related to the United Defendants' breach of the parties collective bargaining agreement in inaccurately calculating, disclosing, and reporting the Proposed class' wages;

(n)     Whether any Union Defendant breached the duty of fair representation owed to the Proposed Class in processing Plaintiffs' grievances by failing to request or disclose any relevant, material documents and records related to supporting Plaintiffs' grievances;

(o)     Whether the Union Defendants breached their owed duties of fair representation by giving away the Proposed Class' earned wage increases without any disclosure, explanation, or participation through ratification and a vote by the Proposed Class;

(p)     Whether the Union Defendants breached their fiduciary disclosure duties, their contractual duties pursuant to the Teamsters' constitution, and Local 986's bylaws, and their duty to act in a reasonable manner toward their members, independent of any interpretation of any collective bargaining agreement by engaging in certain deceitful conduct directed at the Proposed Class;

(q)     Whether the entitlement of the Proposed Class to damages and equitable relief pursuant to the Railway Labor Act, the California Labor Code, and other relevant federal and state laws affects the legal rights of the Proposed Class in the same or substantially similar manner.

(r)     What the appropriate amount of damages, restitution, and/or monetary penalties resulting from Defendant United's violations of California law.

98.     The claims of the representative plaintiffs are typical of the claims of the Proposed Class. Plaintiffs are employed by United in the Technician and Other Related work group pursuant to the collective bargaining agreement which includes LOA #29. Plaintiffs are represented by the Unions representing the interests of commonly-situated United employed Technicians and who are parties to the collective bargaining agreement, the Teamsters' constitution, and Local 986's bylaws. Additionally, common questions, including without limitation to those listed above, predominate over any questions affecting only the Plaintiffs.

99.     The amount in controversy for the aggregate claims of the Proposed Class exceeds five million dollars ($5,000,000.00).

## PAGA ALLEGATIONS

100.    At all times relevant, Public Attorneys General Act of 2004 ("PAGA"), California Labor Code §§ 2698 et seq., was applicable to Plaintiffs' employment with Defendant United.

101.    At all times relevant, PAGA provides any provision of law under the California Labor Code providing for a civil penalty, including unpaid wages and premium wages, to be assessed and collected by the Labor and Workforce Development Agency ("LWDA") for violations of the California Labor Code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself and other current or former employees pursuant to procedures outlined in California Labor Code § 2699.3.

102.    Pursuant to PAGA, a civil action may be brought by an "aggrieved employee" who is any person employed by the alleged violator and against whom one or more of the alleged violations was committed.

103.    Plaintiffs were, and are, employed by Defendant United and one of the alleged violations was committed against Plaintiffs during Plaintiffs' time of employment. Therefore, Plaintiffs are aggrieved employees.

104.    Pursuant to Labor Code §§ 2699.3 and 2699.5, aggrieved employees, including Plaintiffs, may pursue a civil action arising under PAGA after the following requirements have been met: (1) the aggrieved employee(s) provides written notice by online submission to the LWDA and by certified mail to the employer of the specific provisions of the Labor Code alleged to have been violated, including facts and theories to support the alleged violations; (2) LWDA notifies the employer and the aggrieved employee by certified mail that the LWDA does not intend to investigate the alleged violation within sixty (60) calendar days of the postmark date of the aggrieved employee(s) written and certified mail submission; and (3) where LWDA has not provided any notice within 65-calendar days of the e-submission date or the postmark date of the aggrieved employee(s) notice.

105.    On August 7, 2023, Plaintiffs provided written notice by online submission to the LWDA and by certified mail to Defendant United of Plaintiffs' intent to file a civil action regarding the

specific provisions of the Labor Code alleged to have been violated by Defendant United, including facts and theories to support the alleged violations. Therefore, the administrative prerequisites under Labor Code § 2699.3(a) to recover civil penalties have been satisfied.

## VII.    CAUSES OF ACTION

Count I – Breach of the Duty of Fair Representation
(Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 et seq.)
(Against All Union Defendants)

106.    Plaintiffs reallege and incorporate by reference all paragraphs of this Complaint as though fully set forth herein.

107.    Plaintiffs are, and at all relevant times were, dues paying members in good standing with the Unions. As dues paying members, the Unions owed Plaintiffs a statutory and common law duty of fair representation, including but not limited to a duty to disclose material facts that could affect the terms and conditions of Plaintiffs employment.

108.    At all times material and relevant, Defendant Unions and the individual Principal Officer Defendants owed a duty of fair representation to Plaintiffs and the Proposed Class.

109.    Unions must "act for and not against those whom it represents." Steele v. Louisville & Nashville R.R., 323 U.S. 192, 202 (1944). A union is not a neutral fact finder but is exclusively on the side of member-grievant. A union breaches its duty when its "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190 (1967).

110.    The Defendant Unions know, and knew, Plaintiffs and the Proposed Class are, and were, entitled to accurate wage increases and that concealing such wage increases by stating the information was proprietary when it was not was nothing more than a scheme or artifice to defraud Plaintiffs and the Proposed Class of their rights to contractual wage increases and employment income, which is arbitrary and bad faith conduct as described above.

111.    The Defendant Unions have engaged in a practice and pattern of breaching the duty of fair representation towards Plaintiffs and the Proposed Class by entering into undisclosed secret

agreements with Plaintiffs' employer, Defendant United to further the deprivation of accurate wage increases and employment income which is bad faith conduct.

112.    The Defendant Unions have engaged in a practice and pattern of breaching the duty of fair representation towards Plaintiffs and the Proposed Class by failing to disclose to Plaintiffs and the Proposed Class their entitlement to greater wage increases from the LOA #29 Adjustment Calculation and by wrongfully misleading Plaintiffs and the Proposed Class that they were not entitled to such compensation and such conduct is deemed to be arbitrary and done in bad faith.

113.    The Defendant Unions have engaged in a practice and pattern of breaching the duty of fair representation towards Plaintiffs and the Proposed Class by misleading them into believing the Unions could not do anything about the accuracy of the Adjustment Calculation, including not being able to grieve the accuracy of the Adjustment Calculation. The failure to conduct any reasonable, or diligent, investigation of material, relevant issues is arbitrary and bad faith conduct.

114.    The Defendant Unions have engaged in a practice and pattern of breaching the duty of fair representation towards Plaintiffs and the Proposed Class by refusing to invoke provisions of the collective bargaining agreement to protect Plaintiffs and the Proposed Class and by actively preventing investigation and discovery of material facts related to grievances, which constitutes actionable concealment in breach of the duty of fair representation.

115.    The Defendant Unions have engaged in a practice and pattern of breaching the duty of fair representation towards Plaintiffs and the Proposed Class in engaging in the unreasonable conduct alleged above, and in depriving Plaintiffs and the Proposed Class of their statutory right to access the grievance process.

116.    The Defendant Unions further conspired with Defendant United to deprive Plaintiffs and the Proposed Class of their statutory rights  to be paid for all work performed when such wages were owed, due, and payable by entering into a scheme to defraud Plaintiffs and the Proposed Class which permitted Defendant United to withhold owed, due, and payable.

117.    As union representatives, the Unions owed Plaintiffs and the Proposed Class a duty of fair representation, as well as fiduciary duties and obligations in all dealings, including enforcing

the collective bargaining agreements of their members, as well as the Teamsters' constitution and Local 986 bylaws.

118.    A fiduciary has an affirmative obligation to truthfully disclose information important to the party the fiduciary is acting on behalf of, to respond to a request for information, and to deal fairly with their members regarding employment issues.

119.    By refusing to provide the information, Defendant Unions directly impaired Plaintiffs' and the Proposed Class' rights under the Teamsters' constitution, Local 986's bylaws, and the collective bargaining agreement and such conduct violates the Union Defendants fiduciary duties.

120.    As a direct and proximate result of the unions conduct, Plaintiffs and the Proposed Class members have suffered damages in an amount according to proof.

<u>Count II – Violation of the Labor Management Reporting Disclosure Act</u>
<u>29 U.S.C. § 411 et seq.</u>
<u>(Against All Union Defendants)</u>

121.    Plaintiffs reallege and incorporate by reference all paragraphs of this Complaint as though fully set forth herein.

122.    The Labor Management Reporting and Disclosure Act ("LMRDA") Section 102, 29 U.S.C. § 412 provides in part that a "person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate."

123.    LMRDA Section 104, 29 U.S.C. § 414, further provides, "[i]t shall be the duty of the secretary or corresponding principal officer of each labor organization, in the case of a local labor organization, to forward a copy of each collective bargaining agreement made by such labor organization with any employer to any employee who requests such a copy and whose rights as such employee are directly affected by such agreement ... ."

124.    The Department of Labor, Office of Labor Management Standards § 110.300 provides, "[i]n addition to the basic agreement, any subsequent agreement or amendment, oral or written, which modifies the basic agreement becomes a part of the collective bargaining agreement.

Furthermore, all agreements which are incorporated by reference into the basic working agreement become a part of it." § 110.300.

125.    Department of Labor, Office of Labor Management Standards § 110.305 provides LMRDA "Section 104 applies to oral as well as written collective bargaining agreements. If the agreement is negotiated by a local labor organization, a copy of the agreement, including a written statement of all terms arrived at orally, must be furnished to any directly affected employee who requests a copy. It is the duty of the secretary or corresponding principal officer of the organization to furnish a statement setting forth the terms and conditions of the oral agreement.  In the case of a labor organization other than a local, the entire agreement, including a written statement of any oral provisions, must be transmitted to the principal office of the constituent unit for inspection by a union member or directly affected employee who asks to see the agreement." 110.305.

126.    Failure to respond to a request by an employee for a copy of the collective bargaining agreement constitutes a violation of the duty of fair representation.  <u>Law Enforcement & Sec. Off. Local 408</u>, 260 NLRB 419 (1982).

127.    As set forth above, Plaintiff Scholz sent written requests to both Defendant Teamsters and Defendant Local 986 for the collective bargaining agreement as defined above; however, as of the filing of this Complaint, neither Defendant Teamsters nor Defendant Local 986 or any other Union Defendant have complied with the LMRDA requirements.

128.    As a direct and proximate result of the Defendant Teamsters' and Defendant Local 986's conduct, Plaintiffs have suffered damages in an amount according to proof.

<u>Count III – Breach of Contract</u><br>
<u>(Railway Labor Act ("RLA") § 2, First, 45 U.S.C. §152, First and Common Law)</u><br>
<u>(Against All Defendants)</u>

129.    Plaintiffs reallege and incorporate by reference all paragraphs of this Complaint as though fully set forth herein.

130.    Underlying every collective bargaining agreement are certain fundamental principles of morality and fair play.  RLA § 2, First, 45 U.S.C. § 152 First, provides "[i]t shall be the duty of

COMPLAINT – CLASS ACTION AND REPRESENTATIVE ACTION<br>
- 24 -

all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions … ." The Supreme Court has described RLA § 2, First, 45 U.S.C. § 152, First as "[t]he heart of the Railway Labor Act." Bhd. of R.R. Trainmen v. Jacksonville Terminal Co., 394 U.S. 369, 377 (1969).

131.    By refusing to provide Exhibit A of LOA #29 as stated in LOA #29, all Defendants have failed to exert every reasonable effort to maintain the agreement, in violation of RLA § 2, First, 45 U.S.C. § 152 .

132.    By refusing to perform the Adjustment Calculation as expressly provided for in LOA #29, all Defendants have failed to exert every reasonable effort to maintain the agreement, in violation of RLA § 2, First, 45 U.S.C. § 152.

133.    By refusing to process Plaintiffs' grievances related to the Adjustment Calculation found in LOA #29, which is incorporated in, and arises under the collective bargaining agreement, all Defendants have failed to exert every reasonable effort to maintain the agreement, in violation of RLA § 2, First, 45 U.S.C. § 152.

134.    As a party to the collective bargaining agreement with the Defendants, Plaintiffs and the Proposed Class have a right to information related to United's performance under the collective bargaining agreement, including all terms and conditions.

135.    As a direct and proximate result of the breach of the collective bargaining agreements by UAH and United, Plaintiffs and the Proposed Class have been damaged by the loss of years of wages in a sum Plaintiffs would have earned under the collective bargaining agreement in an amount to be determined according to proof.

136.    The Teamsters constitution, and Local 986's bylaws, are for the benefit of the members and can be enforced against the Union Defendants.

137.    Defendant O'Brien, as the principal officer of the Teamsters, failed to follow the dictates of the Teamsters constitution and the CBA in failing to correct misrepresentations of his officials to Plaintiffs and the Proposed Class and failing to permit Plaintiffs to appeal the decision to close and withdraw Plaintiffs grievances without prior discuss and agreement by Plaintiffs.

138.    Defendant Griswold owes a duty to Plaintiffs and the Proposed Class as the principal officer of Local 986, to follow the dictates of the Teamsters constitution, Local 986's bylaws, and the CBA.

139.    Defendant Griswold, as the principal officer of Local 986, failed to follow the dictates of the Teamsters constitution and the CBA in failing to enforce the CBA, in failing to process all grievances according to the bylaws, failing to perform adequate investigation into Plaintiffs' grievances and evidentiary assertions according to the bylaws, and in failing to permit, and assist Plaintiffs in appealing the decision to close and withdraw Plaintiffs grievances without prior discussion and agreement with Plaintiffs.

<u>Count IV – Violation of the Statutory Right to Due Process of Grievances</u>
<u>Railway Labor Act ("RLA") § 184, 45 U.S.C. § 184</u>
(Against All Defendants)

140.    Plaintiffs reallege and incorporate by reference all paragraphs of this Complaint as though fully set forth herein.

141.    RLA § 184 governs the resolution of disputes as applied to the airline industry and provides for a compulsory remedy of a system adjustment board:

> "The disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions … shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to an appropriate adjustment board … ."

45 U.S.C. § 184

142.    The Railway Labor Act § 184 imposes a duty to not only create the specialized boards of adjustment but also a duty to permit access and a role in the grievance process for all parties, including represented employees. Therefore, under the Railway Labor Act an individual airline employee has a statutory right to due process before an adjustment board and any attempt to deny such a right is invalid and unenforceable.

143.    Article 19 of the collective bargaining agreement between the parties creates a System Board of Adjustment for the Third Step of the grievance process and a Board of Arbitration for

the final step of the grievance process, defining the jurisdiction of each and setting forth procedures for their operation.

144. The Defendants may not, by agreement, secret or otherwise, divest theses unique boards of statutorily prescribed jurisdiction over a dispute unilaterally or arbitrarily.

145. As set forth above, all Defendants actively inhibited, prohibited, and/or refuse to provide the ability for Plaintiffs to complete the higher stages of the grievance process independently.

146. While the Union Defendants may not have wanted to represent Plaintiffs in the higher stages of the grievance process, their decision not to do so does not bar Plaintiffs from so doing.

147. Plaintiffs were not given any prior warning that such a drastic step of withdrawing their grievances would be taken nor given an opportunity to assume responsibility for processing their grievances as provided for under the statute prior to such withdrawal. As a result, Plaintiffs were categorically foreclosed from any relief, effectively ending Plaintiffs' grievances in favor of the United Defendants at the Plaintiffs' expense.

148. Nothing in the relevant collective bargaining agreement states an employee waives their statutory, individual right to these congressionally mandated procedures. Any contractual clause waiving such a right, particularly a statutory right, must be "clear and unmistakable" in the collective bargaining agreement.

149. Defendant United wrongfully withheld the terms and conditions of Plaintiffs' wages, and miscalculated Plaintiffs' wages, in breach of the collective bargaining agreement, including LOA #29, which could be remedied through the grievance process to the Plaintiffs' benefit were it not for the Defendant Unions blocking Plaintiffs from the grievance process.

150. By all Defendants refusing to process Plaintiffs grievances to the Third Step, and refusing to establish a System Board of Adjustment for such purpose, all Defendants violated RLA § 184, 45 U.S.C. § 184.

151. But for the general jurisdiction of the federal courts there would be no remedy to enforce the statutory commands which Congress had written into the Railway Labor Act to adjudicate such grievances. The congressionally mandated arbitral remedial was not designed to shield

employers from the natural consequences of their breaches of bargaining agreements by wrongful union conduct in the enforcement of such agreements.

Count V – Fraudulent Concealment and Intent to Deceive
(Cal. Civil Code §§ 1709 and 1710 )
(Against All Defendants)

152.    Plaintiffs reallege and incorporate by reference all paragraphs of this Complaint as though fully set forth herein.

153.    Defendants willfully and intentionally engaged in fraudulent concealment and deceit as defined by the California Civil Code §§ 1709 and 1710.

154.    All Defendants knew the administration of the collective bargaining agreement ignored the explicit terms of the collective bargaining agreement, and LOA #29, and was depriving wage increases due from the Adjustment Calculation to Plaintiffs and the Proposed Class.

155.    All Defendants had superior knowledge of the true nature of the administration, discussions, and enforcement of the Adjustment Calculation because the Defendants were the only parties allowed in the secret and closed-door meetings and all Defendants refused to share any of that information with Plaintiffs even when asked.

156.    All Defendants knew of, and understood, the failure to enforce LOA #29 as written would, and was causing, financial harm to the Plaintiffs and the Proposed Class due to the Plaintiffs and the Proposed Class not receiving the full wage increase pursuant to the dictates of LOA #29.

157.    All Defendants willfully, knowingly, and fraudulently concealed from Plaintiffs and the Proposed Class the many serious manipulations Defendants made in the Adjustment Calculation results that were provided to Plaintiffs and the Proposed Class, as well as the damage this was causing and continues to cause.

158.    Plaintiffs and the Proposed Class members reasonably relied on the many statements made by all Defendants regarding the data required for the Adjustment Calculation being from publicly derived sources, being available to them for verification, and being the objective and standardized method by which the Adjustment Calculation would be performed to determine the appropriate wage increase.

159.    All Defendants made these statements in writing, orally, and even in a recorded video to be provided to each Plaintiff and each employee-member of the Proposed Class.

160.    Plaintiffs reasonably believed the Defendants would not act illegally and in doing so, damage the Plaintiffs and put them at risk of substantial and continuing financial harm.

161.    The Defendants concealment was continuous, and continues today, and has caused great economic losses, distress, and harms and as a result, the Defendants are liable to the Plaintiffs and the Proposed Class for the full measure of damages of all categories permissible under applicable law.

162.    All Defendants intentionally failed to disclose the true Adjustment Calculation, known only to the Defendants, and refused to provide any supporting documentation or data related to the Adjustment Calculation. Plaintiffs could not discover the true facts making the rate provided intentionally, and recklessly, deceptive.

163.    Despite having actual knowledge these statements were false and nothing more than a scheme to defraud the Plaintiffs and the members of the Proposed Class of their accurate wage increases when made to Plaintiffs, all Defendants continued to recklessly make, and repeat, these false statements.

164.    The Defendants concealed the true facts from Plaintiffs and the other members of the Proposed Class by providing false documents and recklessly stating the information of the Adjustment Calculation was proprietary. These acts were done intentionally and willfully with the actual intent to deceive Plaintiffs and the other members of the Proposed Class, in order to conceal the true nature of the above referenced material facts.

165.    Plaintiffs and the other members of the Proposed Class did not know of the concealed facts and relied on the Defendant Unions' representations that the Defendant Unions were guarding Plaintiffs' and the other members of the Proposed Class' rights and best interests as their fiduciary union representatives, reasonably relying on the Defendant Unions' deceptions.

166.    As a result of the deceptions and concealments of facts, Plaintiffs and the Proposed Class suffered significant damages, including loss of wages in an amount according to proof.

<u>Count VI – Failure to Timely Pay All Earned Wages</u>
<u>(Violation of California Labor Code § 204, 210, 218, 218.5, and 218.6)</u>
<u>(Against All United Defendants)</u>

167.    Plaintiffs reallege and incorporate by reference all paragraphs of this Complaint as though fully set forth herein.

168.    Under Labor Code § 204 "[a]ll wages ... earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays."

169.    Plaintiffs and the Proposed Class were employed by Defendant United and entitled to receive full payment of all earned wages as set forth in Labor Code § 204.

170.    The United Defendants engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California. This pattern and practice involved failing to pay Plaintiffs and the Proposed Class for all standard, regular, and/or overtime rates for wages earned.

171.    Defendant United systematically failed and refused to provide Plaintiffs and the Proposed Class with their earned wages within the time frames required under Labor Code § 204.

172.    Defendant United accomplished this malicious and illegal policy by willfully, knowingly, and intentionally concealing the correct Adjustment Calculation from Plaintiffs and the Proposed Class and by fraudulently misrepresenting the Adjustment Calculation results to Plaintiffs and the members of the Proposed Class.

173.    Defendant United's inaccurately calculated applicable hourly rates underpaid Plaintiffs and the Proposed Class for actual time worked in an unlawful attempt to avoid paying of all wages and compensation due, payable, and owing to Plaintiffs and the members of the Proposed Class in violation of the Labor Code and other applicable federal and state laws.

174.    As a direct result of Defendant United's unlawful wage policies and practices, Plaintiffs and the Proposed Class did not receive the full wage compensation they were legally entitled to.

175.    Labor Code § 204, which requires employers to pay employees in full twice a month, does not create a private right of action; however, PAGA, Labor Code § 2698, <u>et seq.</u>, creates a

private right of action for employees to seek civil penalties for violations of the Labor Code, including § 210, which authorizes civil penalties for violations of § 204. Therefore, Plaintiffs and the Proposed Class seek civil penalties for violations of Labor Code § 204 provided for in Labor Code § 210

176. Labor Code §210 provides "in addition to, an entirely independent and apart from, any other penalty provided in this article, every person who fails to pay the wages of each employee as provided in Sections ... 204 ... shall be subject to a civil penalty as follows: (1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee; (2) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25% of the amount unlawfully withheld."

177. As a result of the faulty compensation policies and practices described in detail above and Defendant United's failure to pay Plaintiffs and all aggrieved employees within seven (7) days of the close of the payroll period, the state of California is entitled to recover penalties under Labor Code § 210 through PAGA.

178. Labor Code § 218 sets forth, "the right of any wage claimant to sue directly ... for any wages or penalty due him under this article."

179. Labor Code § 218.5 sets forth "the court shall award reasonable attorney's fees and costs" in an action for the nonpayment of wages.

180. Labor Code § 218.6 sets forth "the court shall award interest on all due and unpaid wages ..., which shall accrue from the date that the wages were due and payable" in an action for the nonpayment of wages.

181. As a direct result of Defendant United's conduct as alleged herein, Plaintiffs and the Proposed class as aggrieved employees have suffered monetary damages in an amount according to proof.

<u>Count VII - Failure to Pay Agreed Upon Wages for All Hours Worked</u>
<u>(California Labor Code §§ 222 and 223)</u>
<u>(Against All United Defendants)</u>

182.    Plaintiffs reallege and incorporate by reference all paragraphs of this Complaint as though fully set forth herein.

183.    California law requires payment of all wages due, whether established by contract or by law, for all hours worked.

184.    Plaintiffs and the Proposed Class work under a written contract with their employer, Defendant United, the above-described CBA, of which LOA #29 in fully incorporated.

185.    Labor Code § 222 provides, "[i]t shall be unlawful, in case of any wage agreement arrived at through collective bargaining, either willfully or unlawfully or with intent to defraud an employee, a competitor, or any other person, to withhold from said employee any part of the wage agreed upon."

186.    Labor Code § 223 provides, "[w]here any statute or contract requires an employer to maintain the designated wages scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract."

187.    Defendants have willfully, knowingly, and intentionally failed to pay Plaintiff and the Proposed Class all compensation for employment due, payable, and owing under the law.

188.    The work performed by Plaintiffs and the Proposed Class, for which Plaintiffs and the Proposed Class have not received full and fair compensation, was at the direction and behest of the United Defendants, and each of them. Plaintiffs and the Proposed Class did not perform this work gratuitously, but with the expectation they would receive the wages in amounts and in a manner fully compliant with the law and the CBA, including LOA #29.

189.    Defendant United's retention of the aforementioned unpaid wages is unlawful, wrongful, inequitable, and represents an unjust enrichment of the United Defendants, and each of them, to the detriment of Plaintiffs and the Proposed Class. The mere act of putting into place a policy or arrangement that functionally undercompensates employees violates the statute.

190.    An injustice would occur to let the United Defendants retain such money rightfully due, payable, and owing to Plaintiffs and the Proposed Class for work Plaintiffs and the Proposed Class performed for the United Defendants because Defendant United falsified pay records and

entered into secret agreements with the Defendant Unions to preserve the illusion of compliance with the CBA, LOA #29, and California law. Statutes drafted for the protection of employees, particularly Labor Codes statutes, are afforded maximum employee protective effect.

191.    Defendant United promised to provide Plaintiffs and the Proposed Class wage increases according to the objective, standardized method in the CBA and LOA #29.

192.    The United Defendants failed to pay, and caused Defendant United to fail to pay, or acted on behalf of those who failed to pay Plaintiffs and the Proposed Class, this promised rate for all the hours worked, violating Labor Code §§ 222, and 223.

Count VIII – Failure to Provide Accurate Wage Statements
(Violation of California Labor Code § 226)
(Alleged Against Defendant United)

193.    Plaintiffs reallege and incorporate by reference all paragraphs of this Complaint as though fully set forth herein.

194.    Labor Code § 226 requires employers to furnish each employee, at the time wages are paid, an accurate itemized statement in writing showing, inter alia, gross wages, total hours worked, all deductions, net wages earned, and dates for which the employee is being paid.

195.    Defendant United willfully and intentionally failed to provide compliant wage statements, including providing accurate, applicable hourly rates of pay in effect during the pay period for Plaintiffs and the Proposed Class in violation of Labor Code § 226(a).

196.    As a result of this failure, Plaintiffs could not "promptly and easily" determine the correct wages for each pay period thereby suffering an injury pursuant to Labor Code § 226(e)(2)(B).

197.    Defendant United is liable to Plaintiffs and the Proposed Class members for the amounts provided for by Labor Code § 226(b).

Count IX – Enforcement Public Attorneys General Act
(California Labor Code §§ 2698 et seq.)
(Against All United Defendants)

198.    Plaintiffs reallege and incorporate by reference all paragraphs of this Complaint as though fully set forth herein.

199.    Plaintiffs, on behalf of themselves and all others who are or previously were employed by Defendant United as non-exempt employees in the Technician and Other Related work group in California during the time period of August 5, 2019 until the present, bring this representative action pursuant to California's Private Attorneys General Act of 2004 ("PAGA"), §§ 2698 et seq. seeking civil penalties for Defendant United's violations of California Labor Code §§ 204, 210, 222, 223, and 226.

200.    PAGA permits an aggrieved employee to recover penalties on behalf of himself and other current or former employees as a result of an employer's violations of the Labor Code.

201.    Each Plaintiff is an "aggrieved employee" under PAGA. Each Plaintiff was employed by Defendant United during the applicable statutory period and each suffered one or more of the Labor Code violations alleged herein. Thus, Plaintiffs seek to recover civil penalties through a representative action on behalf of themselves, the state of California, and all other aggrieved employees, any and all civil penalties provided for and available.

202.    The above-referenced civil penalties shall include the recovery of amounts specified in the applicable sections of the Labor Code, and if not specifically provided, those under Labor Code § 2699(f), and shall include those amounts sufficient to recover underpaid wages, pursuant to Labor Code §§ 210 and 2699(a), (f).

203.    As Plaintiffs' and the other aggrieved employees' employer, Defendant United exercised authority and control over the unlawful wage-and-hour practices against Plaintiffs and other aggrieved employees. On information and belief, Defendant UAH is similarly responsible for the violations of California labor law described in this Complaint as, on information and belief, Defendant UAH decided, planned, caused, assisted, participated in, allowed and/or ratified the unlawful acts alleged.

204.    Plaintiffs complied with PAGA's notice provisions set forth in Labor Code § 2699.3(a)(1) by providing written notice through online filing to Labor and Workforce Development Agency ("LWDA"), and by certified mail to Defendant United, on August 7, 2023. Plaintiffs' written notice included reference to specific provisions of the Labor Code alleged to have been violated,

including the facts and theories to support the alleged violations. Plaintiffs' written notice was accompanied by a filing fee of seventy-five ($75) dollars as required by the statute.

205.     Plaintiffs will file an amended complaint after LWDA has been afforded the opportunity to consider Plaintiffs' notice of the United Defendant's Labor Code violations, and of Plaintiffs' intent to prosecute a private enforcement action for civil penalties under PAGA. If LWDA declines to investigate, Plaintiffs will prosecute the PAGA cause of action against Defendant United pursuant to California Labor Code § 2699.3(a)(2)(A).

Count X - Violations of California Business and Professions Code, Unfair Competition Law
California Business and Professions Code §§ 17200 et seq.
(Against All United Defendants)

206.     Plaintiffs reallege and incorporate by reference all paragraphs of this Complaint as though fully set forth herein.

207.     Plaintiffs are informed and believe, and based thereon allege, the United Defendants are "persons" within the meaning of § 17201 of the California Business and Professions Code.

208.     California Business and Professions Code §§ 17200, et seq., prohibits acts of unfair competition, which includes any "unlawful, unfair, or fraudulent business act or practice ... ."

209.     At all times relevant and material, through United Defendants acts and omissions alleged herein, including but not limited to violations of California Labor Code §§ 204, 222, 223, and 226, United Defendants have committed unlawful acts in violation of California's Business and Professions Code §§ 17200 et seq.

210.     The United Defendants violations of these statutes, as well as the fundamental public policy of protecting workers from unfair labor practices, independently and separately constitute an unlawful business practice and that by engaging in the above-described unfair, unlawful, and fraudulent business acts and practices, the United Defendants are able to obtain a competitive advantage over law-abiding employers with whom United Defendants compete.

211.     Plaintiffs are informed and believe, and based thereon allege, by engaging in the above-described unfair business practices, the United Defendants have sought to avoid, and successfully avoided, obligations to meet the minimum employee-protection standards established by the

California legislature thereby shifting the burden that should appropriately be imposed on the United Defendants onto Plaintiffs and other employees, as well as other law-abiding businesses.

212.    Plaintiffs are informed and believe, and based thereon allege, the United Defendants violated California's Business and Professions Code §§ 17200 et seq. because the utility of its conduct as described in this Complaint is outweighed by the gravity of the consequences to Plaintiffs and the members of the Proposed Class.

213.    As a direct and proximate result of the United Defendant's unlawful, unfair, and fraudulent business practices, Plaintiffs and the proposed class members suffered, and continue to suffer, injury and to lose money or property as a result of such unfair, unlawful, and fraudulent business practices and acts.

Count XI - Declaratory Relief
(28 U.S.C. §§ 2201 and 2202)
(Against All Defendants)

214.    Plaintiffs reallege and incorporate by reference all paragraphs of this Complaint as though fully set forth herein.

215.    A present and actual controversy exists between Plaintiffs and Defendants concerning their rights and respective duties. Plaintiffs contend Defendants violated their rights under the RLA, LMRDA, California Labor Code, and California Business and Professions Code.

216.    Plaintiffs are informed and believe and thereon allege Defendants deny any liability to Plaintiffs and the Proposed Class.

217.    Plaintiffs seek a judicial declaration of the rights and duties of the respective parties and therefore, declaratory relief is necessary and appropriate.

218.    Plaintiffs have suffered injury in fact and have lost money and property as a result of all Defendants' unlawful, unfair, and fraudulent practices and acts. Plaintiffs are thus authorized to pursue injunctive relief against Defendants necessary to prevent further unfair practices and acts.

219.    Defendants acted, or failed to act, as herein alleged with malice or reckless disregard to the protected rights of Plaintiffs and the Proposed Class. Thus, Plaintiffs are entitled to recover punitive damages in an amount to be determined according to proof.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, the individual Plaintiffs named above, on behalf of themselves and the Proposed Class, respectfully pray this Court accept jurisdiction of this action and grant Plaintiffs' demand for judgment against Defendants, jointly and severally, and further demand judgment as follows for all claims:

A.    For certification of Plaintiffs' claims as a class action pursuant to Rule 23;

B.    For Plaintiffs to be appointed as Class Representatives and

C.    For Plaintiffs' counsel to be appointed as Class Counsel;

D.    For a declaration the acts of wrongdoing, and practices by Defendants, complained of herein are unlawful under federal and state law, including Labor Code §§ 222, 223, and the UCL;

E.    For a declaration United failed to furnish accurate wage statements in violation of § 226;

F.    For compensatory damages in an amount according to proof with interest thereon;

G.    For such general and special damages as may be appropriate;

H.    For all statutory penalties, including civil penalties pursuant to PAGA, available;

I.    For any punitive and exemplary damages available;

J.    For an order that United make restitution to Plaintiffs and the Proposed Class; X.  For pre-judgment, and post judgment, interest, at the legal rate;

K.    For an award of attorney's fees and costs as permitted by applicable law;

L.    For a jury trial on all issues triable by a jury; and

M.    For all such other and further relief as the Court may deem just, proper, and equitable.

Date: August 6, 2023                              Respectfully submitted,

                                                  JANE C. MARIANI,
                                                  Law Offices of Jane C. Mariani

                                                  By: ___/s/ Jane C. Mariani___
                                                      JANE C. MARIANI

                                                  *Counsel for Plaintiffs,*
                                                  *Thomas Neal Mullins*
                                                  *John R. Scholz. III*