1

2

3

4                          UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    THOMSA NEAL MULLINS, et al.,              Case No.  23-cv-03939-EMC   (EMC)

8                    Plaintiffs,

9           v.                                 **ORDER GRANTING UNION**
                                               **DEFENDANTS' MOTION TO**
10   INTERNATIONAL BROTHERHOOD OF               **DISMISS; AND GRANTING UNITED**
     TEAMSTERS, et al.,                         **DEFENDANTS' MOTION TO DISMISS**
11
                     Defendants.                Docket Nos. 34-35
12

13

14          Plaintiffs Thomas Neal Mullins and John R. Scholz III are employees of United Airlines,

15   Inc. ("United") and members of the International Brotherhood of Teamsters ("Teamsters") and its

16   local chapter Teamsters Local 986 ("Local 986").  They have filed a class and representative

17   action against two groups of defendants: (1) the Union Defendants (*i.e.*, Teamsters, the Teamsters'

18   president Sean O'Brien, Local 986, and Local 986's principal officer Chris Griswold) and (2)

19   United Defendants (*i.e.*, United and its parent United Airlines Holdings, Inc.).  According to

20   Plaintiffs

                    their employer [United] agreed to provide them with objectively
21                  calculated, biennial raises according to a set formula and then
                    subsequently entered into a secret deal with the Plaintiffs' . . . union
22                  representatives, the Union Defendants, who agreed not only to
                    conceal this deal but [also] to unilaterally reduce Plaintiffs' wages
23                  for Plaintiffs' employer's, the United Defendants', financial gain.

24

25   Opp'n to Union Mot. at 21.  Plaintiffs claim violations of both federal and state law.  Currently

26   pending before the Court are two motions to dismiss: one brought by the Union Defendants and

27   one by the United Defendants.

28          Having considered the parties' papers, as well as the oral argument of counsel, the Court

hereby **GRANTS** the Union Defendants' motion and **GRANTS** the United Defendants' motion.

## I.        FACTUAL & PROCEDURAL BACKGROUND

A.        CBA and LOA #29

Typically, when ruling on a motion to dismiss, a court

> [c]onsider[s] only allegations contained in the [complaint], exhibits attached to the complaint, and matters properly subject to judicial notice.  However, in order to "[p]revent[] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting . . . documents upon which their claims are based," a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned.

*Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  In the case at bar, Plaintiffs' complaint refers repeatedly to a collective bargaining agreement ("CBA") and a letter of agreement ("LOA").  The Union Defendants have, in support of their motion to dismiss, provided excerpts from the relevant CBA and LOA.  *See generally* Pantoja Decl., Exs. A-B (CBA excerpts and LOA #29).  Plaintiffs do not challenge these documents in any way; there is, *e.g.*, no claim that the documents are not authentic.  Accordingly, the Court shall consider both the CBA excerpts and the LOA even though the motion before it is a 12(b)(6) motion.[1]

1.        CBA Excerpts

The relevant CBA is a contract entered into between United and the Teamsters, covering the period 2016-2020.  *See* Pantoja Decl., Ex. A (preamble to CBA).  Article 1, ¶ B.1 provides that United "recognizes the [Teamsters] as the sole collective bargaining agent and authorized representative for those employees composing the craft or class of Mechanic and Related Employees" and "those employees composing the craft or class of Flight Simulator Technicians." Pantoja Decl., Ex. A (CBA, art. 1, ¶ B.1).

Article 19 provides for the grievance procedure.  There is a multi-step process where there is "a grievance arising over the interpretation or application of [the CBA]." Pantoja Decl., Ex. A

---

[1] In contrast, the Court does not consider the declarations submitted by Plaintiffs and a third United employee (Sally Dill) in support of their opposition briefs.  There is no basis on which the Court may consider these declarations in the context of a 12(b)(6) proceeding.

United States District Court
Northern District of California

(CBA, art. 19, ¶ B).

- Under the first step, the aggrieved employee presents a complaint to her supervisor for discussion.  At this time, the employee has the right, but not the obligation, to be represented by her shop steward or Local Business Representative.  *See* Pantoja Decl., Ex. A (CBA, art. 19, ¶ B.1).  If the complaint cannot be resolved through a discussion, then the employee and/or her representative reduces the grievance to writing and the supervisor responds in writing.  *See* Pantoja Decl., Ex. A (CBA, art. 19, ¶¶ B.2 to B.3).

- Under the second step, "[i]f the decision of the supervisor is not satisfactory," then the employee and/or her representative "may appeal the grievance directly to the Managing Director or his designee."  *See* Pantoja Decl., Ex. A (CBA, art. 19, ¶ B.4).  The Managing Director or designee will meet to hear the grievance, and the employee, shop steward, and Local Union business agent are entitled to attend the meeting.  The Managing Director or designee then issues a written decision.  *See* Pantoja Decl., Ex. A (CBA, art. 19, ¶ B.5).

- "[I]f the [written] decision is not satisfactory to the employee and [her] Union Representative, the Union may appeal such grievance to the System Board of Adjustment."  Pantoja Decl., Ex. A (CBA, art. 19, ¶ B.6); *see also* Pantoja Decl., Ex. A (CBA, art. 19, ¶ D.1) (providing that the System Board of Adjustment is composed of two members designated by United and two members designated by Teamsters and meets on a monthly or bi-monthly basis).  Per the express terms of the CBA, it is the Teamsters that has the right to appeal here.

Article 19 also provides that,

> [u]pon Request, the Union will be provided access to all documents and reports in the Company's possession on which the action was based.  The Company will likewise be provided access to all documents on which the Union's case is based.  Each Party shall be entitled to copies of any such documents that it may determine are needed.

Pantoja Decl., Ex. A (CBA, art. 19, ¶ E.3).

United States District Court
Northern District of California

2.   LOA #29

Multiple LOAs appear to be part of the CBA.  *See* Pantoja Decl., Ex. A (CBA, Table of Contents).  LOA #29 is the relevant LOA in the instant case.  It is titled "Industry Reset" and addresses wage increases.

LOA #29 begins by noting that, under specific timelines, if United's "Annual Employee Wages and Benefits is not at least two percent (2%) higher than the average of American Airlines' and Delta Airlines' Wages and Benefits, then United's basic wages will be adjusted so that United's Wages and Benefits are two percent higher than said average."  Pantoja Decl., Ex. B (LOA #29).

Following this statement there are two paragraphs in the LOA.  Paragraph 1 provides definitions for terms used in the LOA.  For example:

- "Annual Employee Wages" is defined as basic wages, certain premiums, and profit sharing.  *See* Pantoja Decl., Ex. B (LOA #29, at ¶ 1.e).

- "Annual Employee Benefits" is defined as retirement benefits and medical plan cost share.  *See* Pantoja Decl., Ex. B (LOA #29, at ¶ 1.f).

- "Annual Wages and Benefits" is the sum of Annual Employee Wages, Annual Employee Benefits, and Time-Off Adjustment (*i.e.*, a cost adjustment for sick pay accrual, vacation accrual, and holidays).  *See* Pantoja Decl., Ex. B (LOA #29, at ¶¶ 1.g, 1.h).

- "Cost Model" is defined as "an economic model, based in MS Excel, which calculates Annual Employee Cost.[2]  The model is to be agreed upon by economic experts from the company and the union within two months after the date of ratification of [United's] agreement as Exhibit 'A.'  If an agreement is not reached within this timeframe, the matter may be submitted for expedited arbitration as provided in Article 1 G."  Pantoja Decl., Ex. B (LOA #29, at ¶ 1.j).

Paragraph 2 of LOA #29 is the substantive part of the LOA, addressing the actual

---

[2] The term "Annual Employee Cost" is not defined in the LOA but implicitly relates to Annual Wages and Benefits.

1  "Adjustment Calculation."  It provides as follows:

2  > If the results of the analysis demonstrate that, as of the Measurement
3  > Date, [United]'s Annual Wages and Benefits is less than 102 percent
   > (102%) of the combined average of Annual Wages and Benefits
4  > under [American] CBA and [Delta] CBA, then [United] shall adjust
   > basic wages effective at the beginning of the first pay period after
   > each measurement date to be 102 percent of the combined average. .
5  > . .

6  > The parties shall meet to review the Cost Model for the purposes of
   > reaching an understanding of the adjustment analysis.  In the event
7  > the parties are unable to reach an understanding relative to the
   > adjustment analysis, the matter may be submitted for expedited
8  > arbitration as provided in Article 1 G.

9  Pantoja Decl., Ex. B (LOA #29, ¶ 2).

10  B.    <u>Complaint</u>

11      In their complaint, Plaintiffs allege as follows.

12      Plaintiffs are nonexempt employees of United.  *See* Compl. ¶¶ 9-10.  They are also

13  members of Teamsters and Local 986.  *See* Compl. ¶¶ 9-10.

14      During the relevant period, the relationship among Plaintiffs, United, and the Union

15  Defendants was governed by the CBA (covering the years 2016-2022).  "The parties agreed upon .

16  . . [a] method of wage increases in the CBA," which incorporated LOA #29.  Compl. ¶ 30.  Under

17  LOA #29, Plaintiffs and others similarly situated "receive increases in pay every two years

18  depending upon a comparison of their wages and benefits with the wages and benefits of two

19  competitor airlines, American Airlines ('American') and Delta Airlines ('Delta')."  Compl. ¶ 31.

20      Plaintiffs maintain that, under LOA #29, there was an "*objective, standardized* method" of

21  calculating the pay increase.  Compl. ¶ 30 (emphasis added).  Specifically,

22  > [t]he "Adjustment Calculation," [as described in] LOA #29, section
   > 2, is the sum value of 5-key contract elements in each airlines CBA
23  > or employment manual: Pay, Time Off, Benefits, Profit Sharing, and
   > Scope.  LOA #29 explicitly provides the definition for each of these
24  > elements.  The United technicians' 5-element sum is weighted
   > against the combined average sum of the same elements for
25  > American, and Delta, technicians.

26  Compl. ¶ 33.  Notably there is no reference in the LOA to a 5-element sum.  Nonetheless,

27  according to Plaintiffs, this objective, standardized method was adopted "to eliminate the prickly,

28  combative negotiations common to past wage negotiations."  Compl. ¶ 32.

United States District Court
Northern District of California

In addition, Plaintiffs maintain that all of the information above was and is "*publicly available* for all three airlines," a point that the Teamsters' economic expert Dan Akins underscored in giving presentations about the industry reset.  Compl. ¶ 36 (emphasis added); *see also* Compl. ¶ 37 (alleging that other union representatives also promoted the proposed CBA to union members because "all information was to be culled from publicly available data").  According to Plaintiffs, the information had to be publicly available "as the information needed to perform the Adjustment Calculation could not be routinely, objectively obtained otherwise."[3]  Compl. ¶ 36.  Plaintiffs add that nothing on the face of LOA #29 refers to "proprietary or secret" information being a part of the Adjustment Calculation.  Compl. ¶ 38.

Plaintiffs essentially contend that Teamsters and Local 986 promoted the objective and publicly available aspects of the pay increase to get the union membership to ratify the CBA.  *See, e.g.*, Compl. ¶¶ 35, 37, 39.

The first year of the CBA was 2016.  *See* Compl. ¶ 35.  It appears that there were industry reset calculations two years later in 2018, and then in 2020.  *See* Compl. ¶ 52.

In 2018, Plaintiffs began to ask for the Cost Model referred to in LOA #29.  *See* Compl. ¶ 43.  A Teamsters representative told them that it could not be provided because it was kept on a server at the National Mediation Board for security.[4]  *See* Compl. ¶ 43.  This was not true, as Plaintiffs subsequently learned after making a FOIA request to the National Mediation Board.  *See*

---

[3] According to Plaintiffs, MIT is able to make calculations based on this publicly available information.

> MIT conducts the "Airline Data Project," which curates highly accurate data encompassing the 5-elements [to be considered under the CBA] and has done so for over 20-years; the data is publicly available on a regularly, updated website.  Data for the 5-elements in the Adjustment Calculation is also easily discerned from the CBAs, SEC filings, and other government reports of each of the three airlines.

Compl. ¶ 58.

[4] "The National Mediation Board helps to maintain the flow of interstate commerce in the airline and railway industries through representation, mediation and arbitration services." https://nmb.gov/NMB_Application/ (last visited 1/23/2024); *see also* 45 U.S.C. §§ 154-55, 183 (addressing National Mediation Board).

United States District Court
Northern District of California

Compl. ¶ 44.

In 2022, another industry reset calculation was performed.  In November 2022, Plaintiffs were given the 2022 Adjustment Calculation via emails from United and the Teamsters.  Plaintiffs were told that the Adjustment Calculation resulted in a 2.6% increase.  Plaintiffs, however, did their own calculations and the results did not match Defendants'.  *See* Compl. ¶¶ 46-47, 51 (alleging that, under Defendants' math, Plaintiffs got a wage increase of just a little over $1).  Subsequently, each Plaintiff started a grievance.

- *Mr. Scholz.*  In his grievance, Mr. Scholz asked to be given "the values of the agreed upon elements used in the Adjustment Calculation in order to confirm his hourly rate of pay was correct because his was not readily ascertainable from his wage statement and he had arrived at a dramatically different result than United's $1.17.  In essence, [Mr.] Scholz challenged not only the 'math' but [also] the failure to 'show their work,' to fail to disclose and provide the Adjustment Calculation summary."  Compl. ¶ 48.  Mr. Scholz's supervisor responded to the grievance by stating: "'I am not privileged to this information and/or the numbers.'"  Compl. ¶ 50.

- *Mr. Mullins.*  In response to Mr. Mullins's grievance, a United manager responded: "'LOA 29 of the . . . CBA provides, among other things, that economic experts from the Company and the Union agree on a costing model to calculate the industry reset.  The parties agreed on the model within the parameters set out in the LOA, and utilized the model for the 2018, 2020 and the 2022 industry reset calculations.  Much of the data that the model utilizes is publicly available . . . like the [American].  Some of the information is Company confidential and proprietary, and can't be shared publicly.  And finally, the exact nature of the model and its operation is kept secure because it could put [United] at a competitive disadvantage if our competitors were to have access to it.  It is for these reasons that the parties have agreed to maintain the confidentiality of the model.'"  Compl. ¶ 52 (emphasis added).  Plaintiffs suggest that the Cost Model is *not* a part of the Adjustment

Calculation.  *See* Compl. ¶ 54 (""The Adjustment Calculation is specifically defined as the sum of Annual Wages and Benefits.  The element, or term, Annual Wages and Benefits is similarly clearly defined and notably does not include the Cost Model, any reference to the Cost Model, or suggest in any way United's 'costs' are somehow relevant to whether United technicians are being compensated at a rate at least 2% higher than their American and Delta counterparts.").  Plaintiffs add, however, that Defendants also failed to provide the Cost Model to Plaintiffs even though Defendants were legally required to provide it.  *See* Compl. ¶¶ 56, 60.

Plaintiffs' grievances were combined into a single grievance and, after United's responses, the grievance was appealed "to the Second Step."  Compl. ¶ 62.  According to Plaintiffs, Teamsters and Local 986 did not make any attempt to get documents from United to support their grievance.  *See* Compl. ¶¶ 63-66.  In addition, when the Second Step hearing eventually took place, "Local 986 representative Maurice McDonald simply read Plaintiffs' grievances, LOA #29, and the 2016 Baseline Summary, into the record.  Mr. McDonald did not advocate for, support, or explain in any other way Plaintiffs' legitimate positions."  Compl. ¶ 68.

Subsequently, in January 2023, a decision unfavorable to Plaintiffs issued.  The grievance was denied on the basis that the information at issue was "proprietary and secret."  Compl. ¶ 71.  In February 2023, Local 986 told Plaintiffs that the grievance lacked merit and "was now closed and withdrawn."  Compl. ¶ 71.  This was done without prior notice to Plaintiffs and without regard to Plaintiffs' objection.  *See* Compl. ¶ 73.

Plaintiffs allege that a business agent for Local 856, Javier Lectora, subsequently told Mr. Scholz that Mr. Scholz "was right that United was violating the CBA and LOA #29."  Compl. ¶ 76.  According to Mr. Lectora, "'United will not show anyone the numbers because they do not have the numbers, the values for the elements are simply estimated.  This is why the unions cannot request the values or will not be given the values.'"  Compl. ¶ 76; *see also* Compl. ¶ 79.  Mr. Lectora also claimed that "the main element United wanted concealed was the contribution amount to United's single employer benefit plan[:] . . . 'CARP contribution is always a secret and the ERISA retirement contribution is what they do not want to reveal.'"  Compl. ¶ 77.  But,

1   Plaintiffs assert, this claim was "nonsensical" because, "[a]s participants in CARP, Plaintiffs are

2   statutorily entitled to, and are required to annually be provided for, CARP contribution

3   information pursuant to ERISA."  Compl. ¶¶ 74, 77.

4       Mr. Scholz thereafter tried to "advance the grievance to the Third Step."  Compl. ¶ 81.

5   United did not respond to Mr. Scholz.  The unions told Mr. Scholz that he "had no right to do so

6   only the union was allowed to."  Compl. ¶ 81; *see also* Pantoja Decl., Ex. A (CBA, art. 19, ¶ B.4)

7   (providing that if the decision at the Second Step "is not satisfactory to the employee and his

8   Union Representative, *the Union* may appeal") (emphasis added).

9       Based on, *inter alia*, the above allegations, Plaintiffs have asserted the following claims

10  against the Union Defendants and the United Defendants.  (Plaintiffs' claims are either class

11  action claims or representative claims.)

12      • *Union Defendants:*

13          o  Breach of the duty of fair representation pursuant to the RLA, 45 U.S.C. §

14             151 *et seq.* (Count 1).

15          o  Violation of the Labor Management Reporting Disclosure Act ("LMRDA"),

16             49 U.S.C. § 411, *et seq.* (Count 2).

17          o  Breach of contract pursuant to the Railway Labor Act ("RLA"), 45 U.S.C. §

18             152, and the common law (Count 3).  (Count 3 is asserted against all

19             Defendants).

20          o  Violation of the statutory right to due process of grievances pursuant to the

21             RLA, 45 U.S.C. § 184 (Count 4). (Count 4 is asserted against all

22             Defendants.)

23          o  Fraudulent concealment and intent to deceive in violation of California

24             Civil Code §§ 1709 and 1710 (Count 5).  (Count 5 is asserted against all

25             Defendants.)

26          o  Declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 (Count 11).

27             (Count 11 is asserted against all Defendants.)

28      • *United Defendants:*

○ Breach of contract pursuant to the RLA, 45 U.S.C. § 152, and the common law (Count 3).  (Count 3 is asserted against all Defendants.)

○ Violation of the statutory right to due process of grievances pursuant to the RLA, 45 U.S.C. § 184 (Count 4). (Count 4 is asserted against all Defendants).

○ Fraudulent concealment and intent to deceive in violation of California Civil Code §§ 1709 and 1710 (Count 5).  (Count 5 is asserted against all Defendants.)

○ Failure to timely pay all earned wages in violation of the California Labor Code §§ 204, 210, 218, 218.5 and 218.6 (Count 6).

○ Failure to agree upon wages for all hours worked in violation of California Labor Code §§ 222 and 223 (Count 7).

○ Failure to provide accurate wage statements in violation of California Labor Code § 226 (Count 8).

○ Enforcement of the Private Attorneys General Act ("PAGA") pursuant to California Labor Code § 2698 *et seq.* (Count 9).

○ Violation of California Business & Professions Code § 17200 (Count 10).

○ Declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 (Count 11). (Count 11 is asserted against all Defendants.)

The Court notes that a case similar to the instant action was previously litigated before Judge Chhabria.  *See Seitz v. Int'l Bhd. of Teamsters*, No. C-21-5346 VC (N.D. Cal.).  In *Seitz*, the plaintiff challenged the Adjustment Calculation that was done for 2020 on similar grounds.[5]  *See, e.g.*, *Seitz*, No. C-21-5346 VC (Docket No. 41) (SAC ¶ 115) (alleging that United and Teamsters "have changed the terms and conditions of LOA #29 The Industry Reset by changing the terms and conditions that the Letter of Agreement was negotiated and agreed upon" – *i.e.*, "they have

---

[5] The same plaintiff had previously filed a suit challenging the 2018 Adjustment Calculation, but Judge Ryu found the suit time barred.  *See Seitz v. Int'l Bhd. of Teamsters*, No. C-20-5442 DMR (N.D. Cal.) (Docket No. 37) (order).

changed the formula that is in the United CBA from the negotiated 'publicly available information' to Company 'confidential and proprietary' in 2020").  Judge Chhabria held that the plaintiff had failed to state a claim for relief, *see Seitz*, No. C-21-5346 VC (Docket Nos. 39, 55) (order), and the Ninth Circuit affirmed.  *See Seitz v. Int'l Bhd. of Teamsters*, No. 22-15902, 2023 U.S. App. LEXIS 19626 (9th Cir. July 31, 2023).

## II.    <u>DISCUSSION</u>

A.    <u>Legal Standard</u>

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).

B.    <u>Claim for Breach of the Duty of Fair Representation (Count 1)</u>

In Count 1, Plaintiffs assert a claim for breach of the duty of fair representation ("DFR").  It is asserted against the Union Defendants only, and not the United Defendants.  But notably, Plaintiffs assert this claim against *all* Union Defendants – *i.e.*, Teamsters, its president (Mr.

11

O'Brien), Local 986, and its principal officer (Mr. Griswold).

The Union Defendants challenge the DFR claim on two grounds: (1) the claim is viable at most against the Teamsters, and not the remaining defendants (*i.e.*, Local 986 and the two individual defendants); and (2) Plaintiffs have failed to state a claim for relief because, at bottom, Plaintiffs are challenging the interpretation of LOA #29, and the Union Defendants' interpretation was not wholly irrational nor was it undertaken in bad faith (even if the interpretation was arguably mistaken).

1.   Correct Defendant

The Union Defendants are correct that, based on the allegations in the complaint and the documents that the Court may consider under the incorporation-by-reference doctrine, the only viable defendant is Teamsters, and not Local 986 or the two individual defendants.

The duty of fair representation is owed by the exclusive bargaining representative only. *See Vaca v. Sipes*, 386 U.S. 171, 177 (1967) ("[A]s the exclusive bargaining representative of the employees in [the plaintiff's] bargaining unit, the Union had a statutory duty fairly to represent all of those employees, both in its collective bargaining with [the employer] and in its enforcement of the resulting collective bargaining agreement."); *Dycus v. NLRB*, 615 F.2d 820, 827 (9th Cir. 1980) ("A labor organization that is not the exclusive representative of a bargaining unit . . . owes no duty of fair representation to the members of the unit.").  Employees have the right to pick who their exclusive bargaining representative is.  *See Beckington v. Am. Airlines*, Inc., 926 F.3d 595, 599 (9th Cir. 2019) (stating that "a fundamental component of the RLA's design is the right of employees 'to organize and bargain collectively through representatives of their own choosing'").  The CBA indicates that the employees selected Teamsters to be their exclusive bargaining representative.

- The cover page of the CBA reflects that it is a contract between (1) United and (2) certain kinds of employees "As Represented by The International Brotherhood of Teamsters."

- The preamble of the CBA specifies that it is entered into between "United Airlines, hereinafter referred to as the 'Company' and the International Brotherhood of

United States District Court
Northern District of California

Teamsters, hereinafter referred to as the 'Union'" as "certified by the National Mediation Board."

- Article 1, § B.2 of the CBA provides: "The Company hereby recognizes the Union as the sole collective bargaining agent and authorized representative . . . ."

- The signature block for the CBA reflects that the signatories to the agreement are (1) United and (2) the Teamsters.  Though multiple individuals signed on behalf of the Teamsters – not only representatives of the Teamsters but also representatives of numerous local unions (including Local 986) – nothing indicates that those individuals were signing on behalf of those local unions as opposed to the Teamsters.

### a. Local 986

In their opposition, Plaintiffs argue that Local 986 should be deemed a joint representative along with the Teamsters because Local 986 was a co-signatory to the CBA.  Plaintiffs do suggest in their complaint that Local 986 was a co-signatory, *see* Compl. ¶ 29 (alleging that "[d]esignated agents for the Teamsters and Local 986 participated in the negotiation and ratification of the CBA and are signatories to the CBA"); however, that allegation cannot override the unchallenged CBA excerpts.  *Cf. Ajaxo, Inc. v. Bank of Am. Tech. & Ops., Inc.*, No. 2:07-CV-945-GEB-GGH, 2007 U.S. Dist. LEXIS 89969, at *3 (E.D. Cal. Nov. 21, 2007) (stating that "'a court may take judicial notice of . . . a fact even when the complaint makes an express allegation to the contrary'").

In their opposition, Plaintiffs also suggest that Local 986 is an exclusive bargaining representative based on the Teamsters' constitution and Local 986's bylaws.  However, the constitution and the bylaws are not before the Court.

Accordingly, the Court dismisses Count 1 as pled against Local 986.  Plaintiffs have leave to amend if they can do so in good faith, consistent with their obligations under Federal Rule of Civil Procedure 11.

### b. Individual Defendants

This leaves the two individual defendants, namely, the president of Teamsters and the principal officer of Local 986.  Count 1 is dismissed against these defendants – and with prejudice.

13

1    Plaintiffs cite no authority to support the proposition that union officers (including those at the

2    highest level), as opposed to the union itself, owe a duty of fair representation.

3              In fact, authority is to the contrary.  For example, the Ninth Circuit has noted as follows:

4                        It has long been recognized that union officers and employees are
                         not individually liable to third parties for acts performed as
5                        representatives of the union in the collective bargaining process.  In
                         *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238 (1962), the Supreme
6                        Court held that individual damage claims may not be maintained
                         against union officials for acts that are undertaken on behalf of the
7                        union.  In *Atkinson*, the employer brought an action against the
                         union and against certain designated union officers for the
8                        defendants' alleged breach of a no-strike agreement.  The Court
                         concluded that "the union as an entity . . . should in the absence of
9                        agreement be the sole source of recovery for injury inflicted by it . . .
                         ," and emphasized specifically that "this policy cannot be evaded or
10                       truncated by the simple device of suing union agents or members,
                         whether in contract or in tort, or both, in a separate count or in a
11                       separate action for damages. . . ." . . . .

12                       . . . .

13                       In *Complete Auto Transit, Inc. v. Reis*, 451 U.S. 401 (1981), the
                         Supreme Court reaffirmed and extended the holding of *Atkinson*.
14                       The Court ruled that a damage claim may not be brought against
                         individual union officers or members even if the individual's
15                       conduct was unauthorized by the union and was in violation of an
                         existing collective bargaining agreement.  The Court reiterated that
16                       "the legislative history of § 301 [of the Labor Management
                         Relations Act] clearly reveals Congress' intent to shield individual
17                       employees from liability for damages arising from their breach of . .
                         . a collective bargaining agreement."
18

19   *Peterson v. Kennedy*, 771 F.2d 1244, 1256-57 (9th Cir. 1985).  In short, the precedent above

20   "prohibit[s] claims, both state and federal, tort and otherwise, against individuals who are

21   employees of or acting as agents or representatives of their unions."  *Id.* at 1257; *see also Bybee v.*

22   *Int'l Bhd. of Teamsters*, No. 18-cv-06632-JD, 2022 U.S. Dist. LEXIS 136561, at *14 (N.D. Cal.

23   Aug. 1, 2022) (citing both *Atkinson* and *Peterson*).

24              Therefore, the Court dismisses Count 1 as to the individual defendants and with prejudice.

25              2.    Failure to State a Claim

26              Because the Court has dismissed the local union and the individual defendants, it need only

27   address whether Plaintiffs have failed to state a claim for relief against Teamsters.

28              Plaintiffs' opposition brief is not a model of clarity, nor is their complaint.  However, the

United States District Court
Northern District of California

14

gist of their DFR claim seems to be based on the following factual predicate:

- LOA #29 makes clear how the Adjustment Calculation is to be made.  But Teamsters did not abide by that calculation.  Teamsters claimed that its calculation was informed by the Cost Model but, under the terms of LOA #29, the Cost Model was not actually a part of the Adjustment Calculation.  Teamsters failed to abide by the terms of LOA #29 because it had a secret agreement with the United Defendants.

- Because of that secret agreement with the United Defendants, Teamsters refused to provide Plaintiffs with the underlying information as to how its calculation was made.  There was no basis for Teamsters to fail to provide the underlying information for its calculation because the information needed for the Adjustment Calculation was all publicly available information; no confidential or proprietary information was involved.

- Because of its secret agreement with the United Defendants, Teamsters also refused to give Plaintiffs a copy of the Cost Model.  The failure to provide the Cost Model was unjustified because the Cost Model was a part of the CBA[6] and union members have a statutory right to get a copy of a CBA (specifically, under the LMRDA).

- The Teamsters' secret agreement with the United Defendants caused it not to pursue Plaintiffs' grievance appropriately.  This included failing to ask United for documents to pursue Plaintiffs' grievance and failing to sufficiently advocate for Plaintiffs at the Second Step.  This also included not pursuing the grievance at the Third Step and/or not allowing Plaintiffs to pursue the grievance on their own at the Third Step (the latter being a statutory right under the RLA).

"A union breaches its duty of fair representation 'when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith.'  Plaintiffs bear the burden of proving that a union breached such duty." *Demetris v. Local 514, Transp. Workers Union of Am.*, 862

---

[6] According to Plaintiffs, "LOA #29, Section 1, subsection (j) . . . clearly states that once the Cost Model is agreed to, it will be attached to the CBA as Exhibit A."  Compl. ¶ 56.

1   F.3d 799, 804-05 (9th Cir. 2017). "'Whereas the arbitrariness analysis looks to the objective

2   adequacy of the Union's conduct, the discrimination and bad faith analyses look to the subjective

3   motivation of the Union officials.'" *Simo v. Union of Needletrades*, 322 F.3d 602, 618 (9th Cir.

4   2003).

5         Notably, "a union's conduct generally is not arbitrary when the union exercises its

6   judgment." *Demetris*, 862 F.3d at 805. "When a union exercises its judgment, its action can be

7   classified as arbitrary" only "if it is so far outside [the] wide range of reasonableness that it is

8   wholly irrational." *Id.* "[S]o long as a union exercises its judgment, no matter how mistakenly, it

9   will not be deemed to be wholly irrational." *Beck v. UFCW, Local 99*, 506 F.3d 874, 879 (9th Cir.

10   2007).

11         A union's conduct may also be found improper if it was discriminatory or in bad faith.

12   This is a relatively high standard.

> To establish that the union's exercise of judgment was
> discriminatory, a plaintiff must adduce "substantial evidence of
> discrimination that is intentional, severe, and unrelated to legitimate
> union objectives." To establish that the union's exercise of
> judgment was in bad faith, the plaintiff must show "substantial
> evidence of fraud, deceitful action or dishonest conduct."

17   *Beck*, 506 F.3d at 880.

18         Although the parties have not done so, it is helpful to break down the Teamsters' conduct

19   that is being challenged.

20        (1) The Teamsters' interpretation of LOA #29.

21        (2) The Teamsters' failure to provide the underlying information for its Adjustment

22           Calculation.

23        (3) The Teamsters' failure to provide a copy of the Cost Model to Plaintiffs.

24        (4) The Teamsters' failure to seek documents to pursue the grievance and failure to

25           sufficiently advocate in support of the grievance.

26        (5) The Teamsters' refusal to pursue the grievance at the Third Step and/or refusal to

27           allow Plaintiffs to proceed with the grievance on their own at the Third Step.

28           a.    Teamsters' Interpretation of LOA #29

United States District Court
Northern District of California

16

1    As the Union Defendants contend, Plaintiffs' DFR claim rests in large part on how the

2    Teamsters allegedly interpreted LOA #29 contrary to the letter's express terms.  But that conduct

3    clearly involves some judgment; such conduct is not "merely ministerial or procedural in nature."

4    *Demetris*, 862 F.3d at 805.

5    As noted above, "[w]hen a union exercises its judgment, its action can be classified as

6    arbitrary" only "if it is so far outside [the] wide range of reasonableness that it is wholly

7    irrational."  *Id.*  Here, it cannot be said that the Teamsters' interpretation of LOA #29 was wholly

8    irrational.  It was not unreasonable for the Teamsters to conclude that the Cost Model was a part of

9    the Adjustment Calculation.  Although Plaintiffs disagree, that conclusion is supported by the fact

10   that the Cost Model is mentioned in ¶ 2 of LOA #29, which addresses the Adjustment Calculation:

11         2.   <u>Adjustment Calculation</u>.  If the results of the analysis

12   demonstrate that, as of the Measurement Date, [United's] Annual
     Wages and Benefits is less than 102 percent (102%) of the combined
     average of Annual Wages and Benefits under [American] CBA and

13   [Delta] CBA, then [United] shall adjust basic wages effective at the
     beginning of the first pay period after each measurement date to be

14   102 percent of the combined average. . . .

15   The parties shall meet to review the Cost Model for the purposes of
     reaching an understanding of the adjustment analysis.  In the event

16   the parties are unable to reach an understanding relative to the
     adjustment analysis, the matter may be submitted for expedited

17   arbitration as provided in Article 1 G.

18   Pantoja Decl., Ex. B (LOA #29, at ¶ 2).

19   Accordingly, Plaintiffs have a viable claim only if they can plausibly allege that Teamsters

20   acted discriminatorily or in bad faith.  Plaintiffs assert there was bad faith – in essence, because of

21   a secret agreement with the United Defendants – but they have failed to satisfy the plausibility

22   standard, particularly as bad faith requires that there be "'*substantial* evidence of fraud, deceitful

23   action or dishonest conduct.'"  *Beck*, 506 F.3d at 880 (emphasis added).  As noted above, the

24   Teamsters' interpretation of LOA #29 was reasonable, and this thereby weighs against the

25   existence of a secret agreement.  *See Banks v. Bethlehem Steel Corp.*, 870 F.2d 1438, 1444-45 (9th

26   Cir. 1989) (stating that, "[w]hile unions are accorded great leeway in deciding how to handle

27   employee grievances, the merits of the underlying dispute or claim are not irrelevant to evaluating

28   bad faith"; *e.g.*, "'[t]he arguable merit to a grievance is one factor in considering whether a union

17

acted in bad faith in refusing to represent an employee'").  It is also worth noting that Plaintiffs have not provided any explanation as to why the Teamsters would have entered into a secret agreement with the United Defendants – *e.g.*, what benefit was there to Teamsters from such an agreement?  Although Teamsters could, in theory, have acted in bad faith regardless of motive, Plaintiffs' failure to provide an explanation underscores that they are essentially engaging in speculation.

Plaintiffs might suggest there was bad faith because a business agent for Local 856, Javier Lectora, told Mr. Scholz that Mr. Scholz "was right that United was violating the CBA and LOA #29."  Compl. ¶ 76.  According to Mr. Lectora, "'United will not show anyone the numbers because they do not have the numbers, the values for the elements are simply estimated.  This is why the unions cannot request the values or will not be given the values.'"  Compl. ¶ 76; *see also* Compl. ¶ 79.  But if this is the basis of Plaintiffs' claim of bad faith, it is weak.  It amounts to nothing more than the argument that the Cost Model should not have been used to make the Adjustment Calculation.  It also fails to address the Court's point above – *i.e.*, that Plaintiffs have offered no reason why Teamsters would be willing to assist United in some kind of secret scheme.

> b.  Teamsters' Failure to Provide Underlying Information for Adjustment Calculation

To the extent Plaintiffs challenge the Teamsters' failure to provide the underlying information for its Adjustment Calculation, the analysis is similar to that above.  That is, the Teamsters exercised its judgment in not providing the underlying information.

Because the Teamsters exercised its judgment, Plaintiffs could have a plausible DFR claim only if the Teamsters' conduct was wholly irrational or undertaken in bad faith.

The Teamsters' conduct was not wholly irrational because LOA #29 does not, on its face, require that underlying information for the Adjustment Calculation be provided to union members.  Also, even though LOA #29 does not say anything about confidential and/or proprietary information being used in the Adjustment Calculation, that does not preclude such information from being used, especially in light of the fact that the Cost Model was something to be agreed upon later based on negotiations between United and the Teamsters, the precise terms of which

were unknowable at the time.[7]  Notably, the Ninth Circuit rejected the same basic argument that Plaintiffs make here in *Seitz*.  *See Seitz*, 2023 U.S. App. LEXIS 19626, at *3 ("A union's negotiation over wages, its agreement to keep confidential an employer's proprietary information used to calculate those wages, and its determination that a grievance is meritless all involve reasonable exercises of judgment to which this court must defer.").

As for bad faith, consistent with the above, Plaintiffs' assertion of some kind of secret agreement between Teamsters and United is not plausible based on the allegations made in their complaint.

c.      Teamsters' Failure to Provide Cost Model

As indicated above, Plaintiffs take the position that the Cost Model was *not* a part of the Adjustment Calculation.  However, they seem to argue that, regardless of whether the Cost Model was a part of the Adjustment Calculation, Teamsters still should have provided Plaintiffs with a copy of the Cost Model because (1) the Cost Model is a part of the CBA, and (2) under the LMRDA, Plaintiffs had the statutory right to get a complete copy of the CBA, *i.e.*, including the Cost Model.

Plaintiffs are correct that, under the LMRDA, they had a statutory right to get a complete copy of the CBA.  *See* 29 U.S.C. § 414 (provision in LMRDA stating, *inter alia*, that "[i]t shall be the duty of the secretary or corresponding principal officer of each labor organization, in the case of a local labor organization, to forward a copy of each collective bargaining agreement made by such labor organization with any employer to any employee who requests such a copy and whose rights as such employee are directly affected by such agreement").  That being the case, any refusal by Teamsters to provide a copy of the CBA (in its entirety) would not involve an exercise of judgment, and it would be arbitrary for Teamsters not to provide a copy of the CBA.  *Cf. Simo v. Union of Needletrades*, 322 F.3d 602, 616 (9th Cir. 2003) (stating that "'[a] violation of section

---

[7] In theory, Plaintiffs could have claimed the union breached its duty of fair representation by representing to union members that objective, publicly available information would be used for the Adjustment Calculation so that they would ratify the CBA and LOA #29 – when in fact the opposite was true.  At the hearing, however, Plaintiffs effectively admitted that a DFR claim based on this theory would be time barred.

United States District Court
Northern District of California

1   [414 of the LMRDA] by failing to give an employee a copy of the collective bargaining agreement

2   is . . . . analogous to a union's violation of the duty of fair representation by failing to provide

3   information to employees'"); *see also Mazza v. Dist. Council*, No. CV-00-6854 (BMC) (CLP),

4   2007 U.S. Dist. LEXIS 65965, *39 (N.D.N.Y. Sept. 5, 2007) (considering "plaintiff's claim that

5   the Union breached its duty by not voluntarily providing him with a copy of the CBA"; "defendant

6   fails to point to any authority that plaintiff's claim must be brought under the LMRDA and cannot

7   also be a duty of fair representation claim").

8       However, the Union Defendants contend it is implausible that the Cost Model is a part of the

9   CBA.  The Court agrees.  Plaintiffs claim that the Cost Model is a part of the CBA based on

10  language used in LOA #29.  Specifically, LOA #29 defines the Cost Model as

11          an economic model, based in MS Excel, which calculates Annual
            Employee Cost. **The model is to be agreed upon by economic**
12          **experts from the company and the union within two months**
            **after the date of ratification of [United's] agreement as Exhibit**
13          **'A.'**  If an agreement is not reached within this timeframe, the
            matter may be submitted for expedited arbitration as provided in
14          Article 1 G.

15  Pantoja Decl., Ex. B (LOA #29, at ¶ 1.j) (emphasis added).  Based on the bolded language above,

16  Plaintiffs assert that "LOA #29, Section 1, subsection (j) . . . clearly states that once the Cost

17  Model is agreed to, it will be **attached** to the CBA as Exhibit A."  Compl. ¶ 56 (emphasis added).

18  But that is not what ¶ 1.j says.  Indeed, ¶ 1.j does not include the word "attached" or a variant

19  thereof at all.  If anything, ¶ 1.j suggests that it is United's agreement, and not the Cost Model, that

20  is Exhibit A.

21      Even if there were some ambiguity here,[8] Plaintiffs would still fare no better.  First, the

22  copy of the CBA provided by the Union Defendants includes the Table of Contents for the

23  _____

24  [8] *See Pace v. Honolulu Disposal Serv.*, 227 F.3d 1150, 1158 (9th Cir. 2000) (stating that
    "'extrinsic evidence is inadmissible to contradict a clear contract term, but if a term is ambiguous,
25  its interpretation depends on the parties' intent . . . in light of earlier negotiations, later conduct,
    related agreements, and industrywide custom'"); *Operating Engr's Pension Trusts v. B&E*
26  *Backhoe, Inc.*, 911 F.2d 1347, 1352 (9th Cir. 1990) (noting that "[a] collective bargaining
    agreement is not governed by the same principles of interpretation applicable to private contracts"
27  and "cannot be interpreted without considering the scope of other related collective bargaining
    agreements as well as the practice, usage and custom pertaining to all such agreements"; adding
28  that "[w]e may consider extrinsic evidence of parties' intent at the time of execution if the
    bargaining agreement is ambiguous").

1    agreement.  Technically, there are two Tables of Contents: one for the CBA generally and one

2    listing the various LOAs.  In the main Table of Contents, there is no reference at all to an Exhibit

3    A – or, for that matter, to any exhibit.  In fact, the main Table of Contents refers to an *Appendix* B.

4    As for the Table of Contents for the LOAs, an Exhibit A is mentioned but it appears to be in

5    conjunction with LOA #6, not LOA #29.  Thus, nothing in the CBA indicates that the Cost Model

6    was intended to be an attachment to the CBA.

7            Second, just because the Cost Model is mentioned in LOA #29 and the LOA itself is part

8    of the CBA does not mean that the Cost Model is part of the CBA.  In this regard, the Court finds

9    *Johnson v. NFL Players Association*, No. 17-cv-5131 (RJS), 2019 U.S. Dist. LEXIS 129500

10   (S.D.N.Y. Aug. 2, 2019), an instructive case.  There, the plaintiff "alleged that the NFLPA refused

11   to provide, upon request, a copy of the full operative collective bargaining agreement between the

12   parties" as required by the LMRDA.  *Id.* at *1.  At summary judgment, the court began by noting

13   that "the only relief to which Plaintiff could be entitled under [the] claim was a copy of the

14   complete agreement."  *Id.* at *2.  It then found that the LMRDA claim was moot because, during

15   discovery, the NFLPA had produced the entirety of a policy regarding performance-enhancing

16   substances.

17           The production included what the NFLPA terms "a complete copy
18           of the 2015 Policy," as well as three additional documents: an April
             2013 letter memorializing an agreement between the NFLPA and
19           the NFL regarding medical record authorization forms for players; a
             May 2015 letter modifying the prior 2014 policy to provide that the
20           duties of the Chief Forensic Toxicologist ("CFT") could be fulfilled
             by the Directors of the UCLA Olympic Analytical Laboratory and
21           the Sports Medicine Research and Testing Laboratory; and, finally,
             "[s]creen shots" of player certifications regarding drug testing.

22   *Id.* at *85.

23           The plaintiff argued that production was not complete based on, *inter alia*, a failure to

24   provide laboratory "Policy Protocols and Procedures."  *See id.* at *6.  These protocols were

25   "referenced in the Policy" at issue.  *Id.* at *8 (indicating that "testing for prohibited substances is

26   'conducted in accordance with the collection procedures and testing protocols of the Policy and

27   the protocols of the testing laboratory'").  The court, however, rejected that argument.

28           By its plain terms, Section 104 of the LMRDA applies only to

United States District Court
Northern District of California

1
2
3
4
5
6
7
8

> "collective bargaining agreements."  29 U.S.C. § 414.  According to Plaintiff, the Policy incorporated the laboratory protocols by reference and, therefore, they must be produced to Plaintiff under the LMRDA.  (Johnson Br. at 12.)  Yet the documents Plaintiff seeks are laboratory documents, not collectively-bargained agreements between the NFLPA and the NFL.  Plaintiff's reliance on the U.S. Department of Labor's Office of Labor Management Standards ("OLMS") Interpretive Manual, which states that "all agreements which are incorporated by reference into the basic working agreement become a part of it," is therefore misplaced. (Johnson Br. Ex, 5 § 110.300 (emphasis added)).  The NFLPA's failure to produce UCLA's proprietary laboratory documents, as opposed to agreements between itself and the NFL, cannot create a genuine dispute of material fact with respect to the sufficiency of the NFLPA's production.

9    *Id.* at *8-9.

10          The Court finds the situation in *Johnson* analogous to that in the case at bar.  The policy at

11   issue in *Johnson* was considered part of the CBA but not the protocols referenced in the policy.

12   The *Johnson* court rejected the plaintiff's argument to the contrary, which had relied on the OLMS

13   Interpretive Manual.  Similarly, in the case at bar, LOA #29 is part of the CBA; however, the Cost

14   Model, while referenced in the LOA, is not.  Notably, Plaintiffs in the case at bar have relied on

15   the same OLMS Interpretive Manual referenced in *Johnson* in arguing that the Cost Model should

16   have provided to them.  See Docket No. 54 (Plaintiffs' post-hearing notice).

17          Even absent *Johnson*, the Court would still find in favor of the Union Defendants.  Unlike

18   the LOA, the Cost Model cannot fairly be characterized as part of the basic framework agreement

19   between the union and United, as embodied by the CBA.  Rather, the Cost Model was the specific

20   means by which part of that basic agreement would be implemented and carried out.  In other

21   words, the Cost Model is not formally part of the CBA, but rather a method by which the CBA

22   would be carried out.

23          The Court, therefore, holds that Teamsters did not act irrationally in not providing

24   Plaintiffs with a copy of the Cost Model.  The Cost Model was not a part of the CBA, and

25   certainly the Teamsters did not act irrationally in so concluding.

26          Finally, to the extent Plaintiffs argue that the Cost Model was withheld because of a secret

27   agreement between the union and the United Defendants, that assertion (as discussed above) is

28   implausible.

United States District Court
Northern District of California

22

United States District Court
Northern District of California

1

d.     Teamsters' Failure to Pursue Grievance

2      Plaintiffs also assert that the Teamsters breached the duty of fair representation because it

3   failed to pursue their grievance – *e.g.*, not seeking documents needed to pursue the grievance and

4   not sufficiently advocating for Plaintiffs' position at the Second Step.  This DFR claim is

5   dismissed because it is essentially duplicative of the first DFR claim above – specifically, the

6   claim contending that the Teamsters failed to comply with the express terms of LOA #29 in doing

7   the Adjustment Calculation.  *See* Part II.B.2.a (addressing Teamsters' interpretation of LOA #29).

8   The Teamsters' decision not to pursue the grievance was an exercise of judgment, and the

9   Teamsters did not act wholly irrationally by failing to pursue the grievance because its

10  interpretation of LOA #29 was reasonable.  Also, Plaintiffs' claim of bad faith based on a secret

11  agreement between the union and the United Defendants is not plausible.

12

e.     Teamsters' Conduct at the Third Step

13      To the extent Plaintiffs assert a DFR claim because the Teamsters refused to pursue the

14  grievance at the Third Step, that is the same claim as above.  However, Plaintiffs also seem to

15  have a separate DFR claim based on Teamsters' telling Plaintiffs that they could not proceed with

16  their grievance at the Third Step *on their own*, *i.e.*, in spite of the union's decision to close the

17  grievance.  Plaintiffs contend that they had a statutory right under the RLA to proceed with their

18  grievance on their own.  The Union Defendants (as well as the United Defendants) disagree with

19  that position.  That issue is explored further below, specifically, in the analysis of Count 4

20  (violation of the statutory right to due process of grievances pursuant to the RLA, 45 U.S.C. §

21  184).

22      As discussed below, it is a close call as to whether Plaintiffs had a statutory right under the

23  RLA to proceed with their grievance on their own.  Cases have gone both ways, as discussed in

24  Part II.D, *infra*.  Because cases have gone both ways, it is not fair to characterize Teamsters'

25  conduct here as being "merely ministerial or procedural in nature." *Demetris*, 862 F.3d at 805.

26  Teamsters made a judgment call (even if mistaken) that, per the terms of the CBA, only the union

27  could take a grievance to the adjustment board and that the relevant provision under the RLA

28  implicitly did not require otherwise.  That position was not wholly irrational.  Nor is there, as

23

1    discussed above, a plausible case of bad faith on the part of the Teamsters.

2            f.      Summary

3            For the reasons stated above, Plaintiffs' DFR claim has been broken into subparts, such

4    that the Court may evaluate each specific piece of misconduct alleged.  Plaintiffs' assertion of

5    breach under each of the subparts is implausible.  Most of the conduct challenged by Plaintiffs is

6    predicated on or related to the theory that Teamsters interpreted LOA #29 contrary to its express

7    terms.  This conduct involved the exercise of judgment and was not wholly irrational.  Nor is there

8    a plausible case that the Teamsters' interpretation of LOA #29 was undertaken in bad faith,

9    particularly as bad faith must ultimately be proven by substantial evidence.

10           The Court therefore dismisses the DFR claim against Teamsters in its entirety.  The Court

11   gives Plaintiffs leave to amend if they can do so in good faith, consistent with their obligations

12   under Federal Rule of Civil Procedure 11.

13   C.     Claim for Violation of the LMRDA (Count 2)

14           Count 2 is pled against the Union Defendants only.  In Count 2, Plaintiffs allege that the

15   Union Defendants violated the LMRDA which provides in relevant part that

16           [i]t shall be the duty of the secretary or corresponding principal
             officer of each labor organization, in the case of a local labor
17           organization, to forward a copy of each collective bargaining
             agreement made by such labor organization with any employer to
18           any employee who requests such a copy and whose rights as such
             employee are directly affected by such agreement.
19

20   29 U.S.C. § 414; *see also id.* § 412 (providing that "[a]ny person whose rights secured by the

21   provisions of this title [29 U.S.C. § 411 *et seq.*] have been infringed by any violation of this title

22   may bring a civil action in a district court of the United States for such relief (including

23   injunctions) as may be appropriate").  Implicitly, the Union Defendants violated this provision

24   when they failed to provide a complete copy of the CBA to Plaintiffs – *i.e.*, including the Cost

25   Model.

26           This claim overlaps with part of the DFR claim (as discussed above).  Consistent with the

27   above, the LMRDA claim is dismissed because the Cost Model was not part of the CBA.

28           The Court also dismisses the LMRDA claim because it is time barred.  *See ESG Cap.*

*Ptnrs., LP v. Stratos*, 828 F.3d 1023, 1037 n.5 (9th Cir. 2016) ("'A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when the running of the statute is apparent on the face of the complaint.'").  There is no dispute that (1) Plaintiffs filed their case on August 6, 2023, and that (2) there is a six-month statute of limitations for the kind of LMRDA claim that Plaintiffs assert here.  *See Gardener v. Int'l Tel. Empl. Local No. 9*, 850 F.2d 518, 522 (9th Cir. 1988) (where plaintiff alleged a violation of § 414, *i.e.*, failure to provide a copy of the CBA, concluding that a six-month limitations period applied).  That means Plaintiffs must have asked for the CBA on or after February 6, 2023, in order for their LMRDA claim to be timely.

Plaintiffs point out that, in their complaint, they have made such an allegation:

> Plaintiff Scholz sent two written requests via certified mail to both the Teamsters and Local 986 for the relevant collective bargaining agreement, first on February 18, 2023, and again on March 25, 2023; however, neither the Teamsters nor Local 986 has complied with Plaintiff Scholz' requests and provided him the complete CBA.

Compl. ¶ 61.  But Plaintiffs' allegation here ignores the fact that their claim that they were not provided with a complete copy of the CBA rests on their contention that the Cost Model is a part of the CBA.  Plaintiffs clearly alleged in the complaint that they asked for a copy of the Cost Model in 2018 at least.  *See* Compl. ¶ 43 ("It is because of these, and other, statements, and the express terms of LOA #29, Plaintiffs and the Proposed Class began asking for the 'Cost Model.'  Mr. Graziano, however, in response to these requests, stated in a June 22, 2018 letter, despite the Cost Model having been 'completed and agreed upon shortly after the ratification of the Agreement, . . . . The model is kept on a server at the [National Mediation Board] for security' and therefore, it could not be so provided.").  That Plaintiffs may have sought the Cost Model a *second* time for a different Adjustment Calculation, *i.e.*, one post-dating 2022, is irrelevant.  In other words, Plaintiffs cannot restart the limitations period simply by asking for the Cost Model on a different occasion.

The Court therefore dismisses the LMRDA claim.  Dismissal is with prejudice on the basis of futility.  Plaintiffs did not in their papers provide any explanation as to how they could avoid the time bar, other than the argument rejected above.  Nor did they provide any other explanation

at the hearing.  Moreover, as noted above, it is implausible that the Cost Model is part of the CBA.

D.    Claim for Violation of the Statutory Right to Due Process of Grievances Under the RLA

        (Count 4)

        Count 4 is brought against both the Union Defendants and the United Defendants.
Plaintiffs assert that the RLA provides for certain due process with respect to grievances and that
they were not given that process.  Specifically, Plaintiffs contend that, even if the Union
Defendants did not want to take the grievance to the Third Step – *i.e.*, to present the grievance to
the System Board of Adjustment[9] – Plaintiffs had the right under the RLA to *individually* pursue
the grievance with the System Board of Adjustment (even if the CBA specified that only the union
could appeal an unfavorable Second Step decision).  *See* Compl. ¶¶ 142, 145-46.  Plaintiffs rely on
45 U.S.C. § 184 of the RLA which states as follows:

> The disputes *between an employee or group of employees and a
> carrier or carriers by air* growing out of grievances, or out of the
> interpretation or application of agreements concerning rates of pay,
> rules, or working conditions, . . . shall be handled in the usual
> manner up to and including the chief operating officer of the carrier
> designated to handle such disputes; but, failing to reach an
> adjustment in this manner, the disputes may be referred by petition
> *of the parties or by either party* to an appropriate adjustment board,
> as hereinafter provided, with a full statement of the facts and
> supporting data bearing upon the disputes.
>
> It shall be the duty of every carrier and of its employees, acting
> through their representatives, selected in accordance with the
> provisions of this title [45 U.S.C. § 181 *et seq.*] to establish a board
> of adjustment . . . .
>
> Such boards of adjustment may be established by agreement
> between employees and carriers either on any individual carrier, or
> system, or group of carriers by air and any class or classes of its or
> their employees . . . .

45 U.S.C. § 184 (emphasis added).

        Courts have reached different conclusions as to whether § 184 of the RLA gives individual
employees (and not just the union) the right to take a grievance to the appropriate adjustment

---

[9] As noted above, the CBA provides as follows: "[I]f the [written] decision is not satisfactory to
the employee and [her] Union Representative, the *Union* may appeal such grievance to the System
Board of Adjustment."  Pantoja Decl., Ex. A (CBA, art. 19, ¶ B.6) (emphasis added).

United States District Court
Northern District of California

board. *Compare, e.g.*, *Whitaker v. Am. Airlines, Inc.*, 285 F.3d 940, 944 (11th Cir. 2002) (acknowledging that, in *Pyles v. United Air Lines*, 79 F.3d 1046 (11th Cir. 1996), an earlier Eleventh Circuit decision, "the court explained in a footnote why it 'believed' that airline employees have a statutory right to pursue claims before a board of adjustment without union assistance"; but characterizing that statement in *Pyles* as dicta); *Santiago v. United Air Lines, Inc.*, 969 F. Supp. 2d 955, 966-69 (N.D. Ill. 2013) (holding that "the text of § 184 precludes United from deciding, on its own or with the [union], to bar [plaintiff] from bringing her grievance to the System board"); *Stevens v. Teamsters Local 2707*, 504 F. Supp. 332, 334 (W.D. Wash. 1980) (stating that "airline industry employees have the same right individually to process grievances [under § 184] as do railroad industry employees [under § 153, First]"), *with Martin v. Am. Airlines, Inc.*, 390 F.3d 601, 608-09 (8th Cir. 2004) (rejecting the argument that the RLA gives airline employees a statutory right to pursue arbitration individually before an airline's system board of adjustment because "the RLA specifically provides that § 153 [including the First paragraph, (j)] is not applicable to air carriers").

Plaintiffs argue that there is a right to individually grieve because (1) railroad industry employees have the right to individually grieve under the First paragraph of 45 U.S.C. § 153, *see Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 49 n.11 (1979) (stating that the RLA "is somewhat more solicitous of individual rights" compared to the National Labor Relations Act because the RLA "authorizes employees who are unsuccessful at the grievance level to seek relief in their own right from the National Railroad Adjustment Board"; citing § 153, First (i)-(j)[10]); and (2) § 184, which governs airline industry employees, uses language similar to that used in the First paragraph of § 153.[11]

_____

[10] *See, e.g.*, 45 U.S.C. § 153 First (i) ("The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, . . . shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.").

[11] There is no dispute that § 153 does not govern the instant case because United is an air carrier and the RLA specifies that "[a]ll of the provisions of Title I of this Act [45 U.S.C. §§ 151 *et seq.*],

1    Defendants disagree.  The United Defendants in particular argue that the Second paragraph

2    of § 153, not the First, is the analogous provision because: (1) the First paragraph addresses the

3    *National* Railroad Adjustment Board; (2) the Second paragraph addresses *system, group, or*

4    *regional* boards of adjustment for the railroad industry; (3) § 184 likewise covers system, group,

5    or regional boards of adjustment, only for the airline industry instead; and (4) the Second

6    paragraph of § 153 indicates that a grievance is taken to an adjustment board by the union.  *See* 45

7    U.S.C. § 153, Second (referring to a "written request . . . made upon any individual carrier by the

8    *representative* of any craft or class of employees of such carrier for the establishment of a special

9    board of adjustment to resolve disputes otherwise referable to the Adjustment Board") (emphasis

10   added); *see also O'Neill v. Pub. Law Bd. No. 550*, 581 F.2d 692, 696 n.7 (7th Cir. 1978) (stating

11   that, under § 153, Second, "an individual employee has no right to bring a matter before a special

12   adjustment board[;] [o]nly a rail carrier or 'the representative of any craft or class of employees'

13   are authorized by the statute to bring a matter before a special adjustment board"); *Bhd. of*

14   *Locomotive Eng'rs v. Denver & W. Rio Grande R.R. Co.*, 411 F.2d 1115, 1118 (10th Cir. 1969)

15   (agreeing with the lower court that "an individual could not invoke the provisions of the

16   amendment to convene a special adjustment board [*i.e.*, under § 153, Second] to handle his

17   grievance, but rather Congress intended to limit the availability of this machinery to a union

18   representative").

19   For purposes of this decision, the Court need not decide whether § 184 gives an individual

20   employee (not just the union) the right to take a grievance to the system board of adjustment.  For

21   purposes of this decision, the Court assumes in Plaintiffs' favor that an individual does have a

22   right to individually grieve under § 184.[12]  However, even with this assumption, Plaintiffs have

23   

24   *except* the provisions of section 3 thereof [45 U.S.C. § 153], are extended to and shall cover every
     common carrier by air engaged in interstate or foreign commerce."  45 U.S.C. § 181 (emphasis

25   added).

26   [12] The Court also assumes here that there is a private right of action under § 184.  *But see Bybee v.*
     *Int'l Bhd. of Teamsters*, No. 18-cv-06632-JD, 2022 U.S. Dist. LEXIS 136561, at *14 (N.D. Cal.

27   Aug. 1, 2022) (declining "plaintiffs' request to 'imply a private right of action' against the union
     and United to enforce plaintiffs' alleged right under RLA § 184 to proceed to arbitration over the

28   union's objections" – at least "in the absence of controlling authority that is on point").  It is not
     clear what remedy Plaintiffs seek for the alleged violation of § 184.

United States District Court
Northern District of California

1   failed to state a claim for relief.

2        As to the Union Defendants, there is no plausible claim for relief because Plaintiffs have

3   simply alleged that the Union Defendants withdrew and closed the grievance that they were

4   pursuing and took the position that, under the CBA, only the union could take the grievance to the

5   system adjustment board.  *See, e.g.*, Compl. ¶¶ 72-73, 147.  Plaintiffs have not alleged that, *e.g.*,

6   the Union Defendants prevented Plaintiffs from individually petitioning, or coerced them not to

7   petition individually, the system adjustment board for relief.  *Cf.* Union Mot. at 13 ("Either

8   Plaintiffs have a right to proceed on their own or they did not.").

9        As to the United Defendants, there is no plausible claim of violation of the RLA because

10  Plaintiffs' only allegation is that "Plaintiff Scholz requested to complete the grievance process, at

11  a minimum to advance the grievance to the Third Step. . . . Defendant United never responded to

12  Scholz' request."  Compl. ¶ 81.  But asking the United Defendants to continue the grievance

13  process with the system adjustment board is not the same thing as petitioning the adjustment board

14  for relief.  There is no allegation that Plaintiffs individually petitioned the system adjustment

15  board for relief and that the United Defendants then failed to participate.  In their complaint,

16  Plaintiffs do suggest that "all Defendants . . . refus[ed] to establish a System Board of Adjustment"

17  to address their grievance, Compl. ¶ 150, but the system board of adjustment did not need to be

18  established.  The CBA already established the adjustment board.  *See* Pantoja Decl., Ex. A (CBA,

19  art. 19, ¶ D) ("The System Board of Adjustment ('the Board') shall be composed of two (2)

20  members designated by the Company and two (2) members designated by the Union.  The Board

21  will meet on a monthly or bi-monthly basis upon mutual agreement by the Parties during the

22  course of the calendar year at stations throughout the system on a rotating basis.").  Thus, it

23  appears that what Plaintiffs needed to do, under § 184, was "refer[]" their dispute to the

24  adjustment board "by petition[ing]" the adjustment board.  45 U.S.C. § 184.  In essence, Plaintiffs'

25  complaint against the United Defendants here is premature.  There is no viable claim that the

26  United Defendants have already breached an obligation owed under the RLA.

27        Accordingly, the Court dismisses the statutory due process claim against both the Union

28  Defendants and the United Defendants.  Plaintiffs have leave to amend if they can do so in good

United States District Court
Northern District of California

29

faith consistent with their Rule 11 obligations.

E.      Claim for Breach of Contract Under the RLA and Common Law (Count 3)

        In Count 3, Plaintiffs allege a breach of contract against all of the Union Defendants as well as all of the United Defendants.  The claim is brought pursuant to the RLA and the common law.

        1.      Union Defendants

        To the extent the claim is brought against the Union Defendants, it appears to be grounded in the common law, and not the RLA.  This is because the RLA provision at issue refers to carriers, and not unions.  *See* 45 U.S.C. § 152, First ("It shall be the duty of all *carriers*, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.") (emphasis added).

        According to Plaintiffs, the Union Defendants breached at least two different sets of contracts: (1) the CBA and (2) the Teamsters' constitution and/or Local 986's bylaws.

        With respect to the CBA, the Union Defendants argue that there is no meritorious claim because, at most, Plaintiffs are simply claiming a breach of the duty of fair representation, not any provision in the CBA.  *See, e.g.*, *Staten v. Patrolmen's Benevolent Ass'n of the City of N.Y., Inc.*, 282 F. Supp. 3d 734, 739 (S.D.N.Y. 2017) ("Ordinarily, an employee's only claim against a union for violation of the terms of a collective bargaining agreement is for violation of the duty of fair representation.").  In response, Plaintiffs suggest that the Union Defendants have violated Article 19, ¶ 3.E of the CBA, which provides as follows: "Upon Request, the Union will be provided access to all documents and reports in the Company's possession on which the action was based. . . . Each Party shall be entitled to copies of any such documents that it may determine are needed." Pantoja Decl., Ex. A (CBA, art. 19, ¶ E.3); *see also* Opp'n to Union Mot. at 18 (identifying this provision in the CBA).  Plaintiffs' position seems to be that Teamsters violated the above provision from the CBA because it had the right to access documents related to a grievance and it

did not get documents from United to support Plaintiffs' grievance.

Plaintiffs' position lacks merit.  To be sure, the Supreme Court has accepted that

> "a labor union . . . may assume a responsibility towards employees by accepting a duty of care through a contractual agreement," even if that contractual agreement is a collective-bargaining contract to which only the union and the employer are signatories.

> But having said as much, we also think it necessary to emphasize caution, lest the courts be precipitate in their efforts to find  unions contractually bound to employees by collective-bargaining agreements.  The doctrine of fair representation is an important check on the arbitrary exercise of union power, but it is a purposefully limited check, for a "wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents."  If an employee claims that a union owes him a more far-reaching duty, he must be able to point to language in the collective-bargaining agreement specifically indicating an intent to create obligations enforceable against the union by the individual employees.

*United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 374 (1990).[13]  *See, e.g.*, *Lay v. Local Union 689 of the Amalgamated Transit Union, AFL-CIO*, No. PJM 18-2183, 2019 U.S. Dist. LEXIS 109594, at *17 (D. Md. July 1, 2019) (stating that no "provision in the collective bargaining agreement requires Local 689 to represent its members after a final arbitration decision[;] [w]hile it might be helpful to members if the union provided such advice, absent an express provision in the operative collective bargaining agreement, a labor union is not obliged to either (a) challenge an adverse arbitration decision on behalf of its members or (b) inform its members of their right to file a suit based on the decision, or to file any such suit within a limited period of time"); *Dragovic v. Enprotech Steel Servs.*, No. 1:10-CV-01250, 2011 U.S. Dist. LEXIS 17464, *17-18 (N.D. Ohio Feb. 23, 2011) (finding that plaintiff failed to show that union "owed him a duty to grieve this alleged instance of disability discrimination" because CBA "establish[ed] a grievance procedure only for disputes 'concerning the application or interpretation' of the Agreement itself" and, although one part of the CBA prohibited the employer and union "from engaging in disability discrimination, that Section also provides that '[a]ny violation of existing Federal and State laws

---

[13] *See also O'Hara v. District No. 1-PCD, MEBA*, 56 F.3d 1514, 1520 (D.C. Cir. 1995) (rejecting the proposition that "an employee may not sue a union for the union's independent breach of a collective bargaining agreement unless the employee can establish that the union also breached its duty of fair representation").

shall not be a basis for any grievance' made through the collective bargaining agreement's grievance procedure"); *Ackerman v. Local Union 363, IBEW*, 423 F. Supp. 2d 125, 128 (S.D.N.Y. 2006) (stating that "[t]he CBA requires 'the employer [to] furnish weekly reports to the Local Union 363 Office,' (CBA § 6.07) but does not impose on the Union the duty to bring action against the employer in the event that such reports are not forthcoming"). Here, the provision above from the CBA does not indicate an intent to create obligations enforceable against Teamsters by the union membership on the matters at issue here.

Furthermore, to the extent Plaintiffs suggest that they, as union members, are third-party beneficiaries of the agreement between United and the Teamsters (*i.e.*, the CBA), in *Steelworkers*, the Supreme Court made note that,

> third-party beneficiaries generally have no greater rights in a contract than does the promisee. For respondents to have an enforceable right as third-party beneficiaries *against the Union*, at the very least the *employer* must have an enforceable right as promisee. But the provisions in the collective-bargaining agreement relied on by respondents are not promises by the Union to the employer. They are, rather, concessions made by the employer to the Union, a limited surrender of the employer's exclusive authority over mine safety. A violation by the employer of the provisions allowing inspection of the mine by Union delegates might form the basis of a § 301 suit against the employer, but we are not presented with such a case.

*Id.* at 375 (emphasis added). The same situation is before the Court here: Plaintiffs are proceeding as third-party beneficiaries of the CBA against Teamsters, and therefore they cannot have any rights greater than United; but the provision in the CBA on which Plaintiffs rely is not a promise made by Teamsters to United but rather the other way around.

To the extent Plaintiffs also assert a breach of the Teamsters' constitution or Local 986's bylaws, they fare no better. Specifically, it is not clear from the complaint what provision of the constitution and/or bylaws were violated. The complaint simply contains the following allegations:

- "The Teamsters constitution, and Local 986's bylaws, are for the benefit of the members and can be enforced against the Union Defendants." Compl. ¶ 136.
- "Defendant O'Brien, as the principal officer of the Teamsters, failed to follow the

dictates of the Teamsters constitution and the CBA in failing to correct misrepresentations of his officials to Plaintiffs and the Proposed Class and failing to permit Plaintiffs to appeal the decision to close and withdraw Plaintiffs grievances without prior discuss[ion] and agreement by Plaintiffs." Compl. ¶ 137.

- "Defendant Griswold, as the principal officer of Local 986, failed to follow the dictates of the Teamsters constitution and the CBA in failing to enforce the CBA, in failing to process all grievances according to the bylaws, failing to perform adequate investigation into Plaintiffs' grievances and evidentiary assertions according to the bylaws, and in failing to permit, and assist Plaintiffs in appealing the decision to close and withdraw Plaintiffs grievances without prior discussion and agreement with Plaintiffs." Compl. ¶ 139.

Accordingly, since Plaintiffs fail to specify any particular provision of the constitution or bylaws allegedly breached by the Teamsters, the Court dismisses the contract claim as to the Union Defendants. Plaintiffs have not sufficiently alleged either a breach of the CBA, or of the constitution or bylaws. The Court gives Plaintiffs leave to amend to the extent they can do so in good faith consistent with their Rule 11 obligations.

### 2. United Defendants

As noted above, the contract claim against the United Defendants is based on the RLA. *See* 45 U.S.C. § 152, First ("It shall be the duty of all *carriers*, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.") (emphasis added). The United Defendants argue that the contract claim should be dismissed on the basis that the Court lacks jurisdiction over the claim because it involves a "minor" dispute rather than a "major" one for purposes of the RLA.

> "Case law tends to classify disputes that arise between carriers and employee unions under the RLA as either 'major' or 'minor.'"
> "Major disputes concern statutory rights, such as the right to form

33

> collective bargaining agreements or to seek to secure new rights and
> incorporate them into future agreements."  "Federal courts have
> jurisdiction to decide major disputes."  "Minor disputes, on the other
> hand, 'concern the interpretation or application of collective
> bargaining agreements, and are resolved through binding arbitration
> before the System Board of Adjustment.'"  "Federal courts do not
> have jurisdiction to resolve minor disputes."

*Ass'n of Flight Attendants v. Horizon Air Indus.*, 280 F.3d 901, 904 (9th Cir. 2002); *see also*

*Conrail v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 302 (1989) (stating that "major disputes seek to

create contractual rights, minor disputes to enforce them"); *Alaska Airlines, Inc. v. Schurke*, 898

F.3d 904, 917 (9th Cir. 2018) (distinguishing major and minor disputes); *cf. Union Pac. R.R. v.*

*Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment*, 558 U.S. 67, 73 (2009)

(stating that, "[i]n keeping with Congress' aim to promote peaceful settlement of minor disputes,

the RLA requires employees and carriers, before resorting to arbitration, to exhaust the grievance

procedures specified in the collective-bargaining agreement").  In *Seitz*, the Ninth Circuit

confirmed that "[a plaintiff's] claims against [an air carrier] for breach of contract are archetypical

'minor' disputes [where] they arise out of his grievance over the interpretation of the CBA's

provisions governing his pay."  *Seitz*, 2023 U.S. App. LEXIS 19626, at *5.

In the case at bar, Plaintiffs do not dispute that their contract claim against the United

Defendants involves a minor dispute for purposes of the RLA.  They do contend, however, that

there is still jurisdiction in spite of the claim being a minor dispute because there are exceptions to

the general rule.

> Th[e] referred to exceptions are: (1) when the employer repudiates
> the grievance machinery, *Vaca v. Stipes*, 386 U.S. 171, 185 (1967);
> (2) when resort to administrative remedies would be futile, *Glover v.*
> *St. Louis-San Francisco Ry. Co.*, 393 U.S. 324, 330 (1969); (3)
> when the employer is joined in a duty of fair representation claim
> against the union, *Richins v. Southern Pacific Co.*, 620 F.2d 761,
> 762 (10th Cir. 1980); and (4) when, because of a breach of the duty
> of fair representation by the union, the employee loses the right to
> grieve before the board, *Childs v. Pa. Fed'n Bhd. of Maint. Way*
> *Employees*, 831 F.2d 429 (3d Cir. 1987).

Opp'n to United Mot. at 8.[14]

---

[14] The Third Circuit's *Childs* decision recites these four exceptions.

1   Although Plaintiffs assert that all four exceptions are applicable, their arguments really boil

2   down to the following: this Court should take jurisdiction because it would be futile to go through

3   the grievance/arbitration process given that the United Defendants were colluding with the Union

4   Defendants to deprive employees of their rights.

5   As an initial matter, the Court notes that Plaintiffs' theory is cognizable under Ninth

6   Circuit case law.  For example, the Ninth Circuit has stated that,

> under the RLA, employees alleging that their employer breached a
> collective bargaining agreement must ordinarily submit to
> mandatory arbitration; "[f]ederal courts lack subject matter
> jurisdiction over [these] disputes."  *Konop v. Hawaiian Airlines,
> Inc.*, 302 F.3d 868, 881 (9th Cir. 2002).  That remains true even if
> the employees also claim that their union has breached its duty of
> fair representation.  *See Crusos v. United Transp. Union*, 786 F.2d
> 970, 972-73 (9th Cir. 1986).  If, however, the employees allege that
> their employer and their union "acted 'in concert'" to discriminate
> against them, such that arbitration before a panel of employer and
> union representatives would be "absolutely futile," we have  held
> that the employees can "circumvent the statutory administrative
> remedies" and join their breach-of-contract claim against the
> employer with their breach-of-duty claim against the union in
> federal court.  *Bautista v. Pan Am. World Airlines, Inc.*, 828 F.2d
> 546, 551 (9th Cir. 1987) (quoting *Glover v. St. Louis-S.F. Ry. Co.*,
> 393 U.S. 324, 331 (1969)).  And in describing the degree of
> concerted conduct necessary to invoke this jurisdictional exception,
> we and other courts have sometimes used the term "collusion."

17   *Beckington v. Am. Airlines, Inc.*, 926 F.3d 595, 606-607 (9th Cir. 2019); *see also Seitz*, 2023 U.S.

18   App. LEXIS 19626, at *5-6 (taking note of a "narrow exception" that "permits a claimant to

19   bypass union grievance and arbitration procedures when 'the effort to proceed formally with

20   contractual or administrative remedies would be wholly futile'[;' [t]his exception, however, is

21   generally limited to situations in which a claimant cannot rely on contractual or administrative

22   procedures because the union is conspiring with the employer against the employee").

23   The problem for Plaintiffs is that, as discussed above, any secret conspiracy between the

24   United and Union Defendants is not plausibly alleged.  The Court therefore dismisses the breach-

25   of-contract claim as pled against the United Defendants.  Plaintiffs have leave to amend if they can

26   do so in good faith consistent with their Rule 11 obligations.

27   F.   Fraud Claim (Count 5)

28   Count 5 is a claim for fraud, brought against both the Union Defendants and the United

United States District Court
Northern District of California

35

Defendants.  *See* Cal. Civ. Code §§ 1709-10 (providing that "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers"; deceit includes, *e.g.*, "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact").  Both the Union Defendant and the United Defendants argue that the fraud claim is preempted by the RLA.

> RLA preemption – like the "virtually identical" preemption under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 1851 – extends only as far as necessary to protect the role of labor arbitration in resolving CBA disputes.  Consistent with this precedent, [the Ninth Circuit] recognize[s] RLA and LMRA § 301 preemption only where a state law claim [1] arises entirely from or [2] requires construction of a CBA.

*Alaska Airlines, Inc. v. Schurke*, 898 F.3d 904, 913-914 (9th Cir. 2018) (en banc).  *Compare id.* at 920 ("Congress did not intend to preempt state law claims simply because they in some respect implicate CBA provisions, make reference to a CBA-defined right, or create a state law cause of action factually 'parallel' to a grievable claim.").

With respect to the first prong,

> whether a particular right is grounded in a CBA, we evaluate the "legal character" of the claim by asking whether it seeks purely to vindicate a right or duty created by the CBA itself.  If a claim arises entirely from a right or duty of the CBA – for example, a claim for violation of the labor agreement, whether sounding in contract or in tort – it is, in effect, a CBA dispute in state law garb, and is preempted. . . . .
>
> By contrast, claims are not simply CBA disputes by another name, and so are not preempted under this first step, if they just refer to a CBA-defined right; rely in part on a CBA's terms of employment; run parallel to a CBA violation; or invite use of the CBA as a defense.

*Id.* at 920-21.

As for the second prong,

> we ask whether litigating the state law claim nonetheless requires interpretation of a CBA, such that resolving the entire claim in court threatens the proper role of grievance and arbitration.  "Interpretation" is construed narrowly; "it means something more than 'consider,' 'refer to,' or 'apply.'"  Accordingly, at this second step of an RLA or LMRA § 301 preemption analysis, claims are only preempted to the extent there is an active dispute over "the

> meaning of contract terms."  "[A] hypothetical connection between
> the claim and the terms of the CBA is not enough to preempt the
> claim . . . ."  Nor is it enough that resolving the state law claim
> requires a court to refer to the CBA and apply its plain or undisputed
> language – for example, "to discern that none of its terms is
> reasonably in dispute"; to identify "bargained-for wage rates in
> computing [a] penalty'" or "to determine whether [the CBA]
> contains a clear and unmistakable waiver of state law rights."

*Id.* at 921-22.

"As this two-step preemption inquiry suggests, RLA and LMRA § 301 preemption differ from typical conflict preemption because they are not driven by substantive conflicts in law," but rather "are grounded in the need to protect the proper *forum* for resolving certain kinds of disputes (and, by extension, the substantive law applied thereto)." *Id.* at 922 (emphasis in original).

In the instant case, Defendants do not contend that there is RLA preemption on the ground that the fraud claim arises from the CBA.  Instead, they argue that the fraud claim requires construction or interpretation of the CBA.  To evaluate this argument, the Court must consider what exact fraud claim is pled in Plaintiffs' complaint.

Though the factual predicate for the fraud claim is not entirely clear based on the complaint alone, Plaintiffs' opposition sums up the fraud claim as follows:

> The core of Plaintiffs' claim is that their employer [United] agreed
> to provide them with objectively calculated, biennial raises
> according to a set formula and then subsequently entered into a
> secret deal with the Plaintiffs' . . . union representatives, the Union
> Defendants, who agreed not only to conceal this deal but [also] to
> unilaterally reduce Plaintiffs' wages for Plaintiffs' employer's, the
> United Defendants', financial gain.

Opp'n to Union Mot. at 21; *see also* Compl. ¶ 154 (alleging that Defendants knew "the explicit terms of the collective bargaining agreement, and LOA #29"); Compl. ¶ 157 (alleging that Defendants concealed their manipulation of the Adjustment Calculation which resulted in Plaintiffs getting a lower wage increase).[15]

As this is the gist of Plaintiffs' fraud claim, the fraud claim is dependent on interpretation of the CBA/LOA #29.  That is, the only way that the Union Defendants and/or United Defendants

---

[15] As noted above, Plaintiffs are not asserting a claim that they were fraudulently induced to ratify the CBA – *e.g.*, by being told that the Adjustment Calculation would be based on publicly available information.

United States District Court
Northern District of California

1  could be said to have concealed a fraud from Plaintiffs is if the CBA/LOA #29 should have been

2  interpreted as Plaintiffs advocate wherein United agreed to provide employees with objectively

3  calculated raises according to a set formula.

4       Accordingly, the fraud claim is dismissed because it is preempted.[16]  The Court shall give

5  Plaintiffs leave to amend if they can do so in good faith consistent with their Rule 11 obligations.

6  G.    State Law Wage Claims (Counts 6-10)

7       In Counts 6-10, Plaintiffs have asserted, in essence, wage-related claims against the United

8  Defendants (based on the California Labor Code).  Similar to above, the United Defendants argue

9  that these state law claims are preempted because they require interpretation of the CBA and LOA

10  #29.  For the reasons stated above, the United Defendants are correct.  *See also Seitz*, 2023 U.S.

11  App. LEXIS 19626, at *7 ("Seitz's claims [under California Labor Code §§ 222-23] allege a

12  deviation from a wage scale provided by his CBA, and determining whether his pay complies with

13  the terms of the CBA would require resolving a dispute over the interpretation of the CBA.

14  Accordingly, the RLA preempts Seitz's state law claims.").

15       The Court dismisses these claims and with prejudice because they are futile – particularly

16  in light of *Seitz*.

17  H.    Claim for Declaratory Relief (Count 11)

18       Finally, in Count 11, Plaintiffs have asserted a claim for declaratory relief against both the

19  Union Defendants and the United Defendants.  Plaintiffs assert there is a case or controversy in

20  need of resolution because "Plaintiffs contend Defendants violated [Plaintiffs;] rights under the

21  RLA, LMRDA, California Labor Code, and California Business and Professions Code," and the

22  Union and United Defendants disagree.  Compl. ¶ 215.

23       In their motion, the Union Defendants argue that the declaratory relief claim should be

24  dismissed because it is derivative of the other claims discussed above.  The Court agrees.

25  Accordingly, the claim is dismissed as to both sets of Defendants, although Plaintiffs have leave to

26

27  _____

[16] In their reply brief, the Union Defendants have also raised a new argument – *i.e.*, that any fraud
28  claim is time barred.  Because that was not raised until the reply brief, the Court does not entertain
the argument.

amend consistent with the Court's rulings above.

### III.      <u>CONCLUSION</u>

For the foregoing reasons, the Court grants both the Union Defendants' and the United Defendants' motions to dismiss.  Plaintiffs have four weeks from the date of this order to file an amended complaint.  If Plaintiffs do not file an amended complaint, then this case shall be dismissed with prejudice and a final judgment entered against them.  If Plaintiffs do file an amended complaint, then the parties shall meet and confer regarding a schedule for Defendants' responses to the amended complaint.

This order disposes of Docket Nos. 34 and 35.

**IT IS SO ORDERED**.

Dated: February 7, 2024

_____
EDWARD M. CHEN
United States District Judge