SUSAN K. GAREA, SBN 260407
**BEESON, TAYER & BODINE, APC**
492 Ninth Street, Suite 350
Oakland, CA  94607-3865
Telephone:   (510) 625-9700
Facsimile:   (510) 625-8275
Email:       sgarea@beesontayer.com

Attorneys for Defendants
INTERNATIONAL BROTHERHOOD OF TEAMSTERS; TEAMSTERS LOCAL 986.

EMILY K. PANTOJA [MD Bar No. 1606210207]
*admitted pro hac vice*
**INTERNATIONAL BROTHERHOOD OF TEAMSTERS**
25 Louisiana Ave., NW
Washington, DC  20001
Telephone:   (202) 624-8710
Facsimile:   (202) 624-8970
Email:       epantoja@teamster.org

Attorneys for Defendants
INTERNATIONAL BROTHERHOOD OF TEAMSTERS

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# AT SAN FRANCISCO

| | |
|---|---|
| THOMAS NEAL MULLINS, an individual, and JOHN R. SCHOLZ, III, an individual, on behalf of themselves and all others similarly situated,<br><br>                                    Plaintiffs,<br><br>v.<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS, a labor organization; TEAMSTERS LOCAL 986, a labor organization; and UNITED AIRLINES, INC., a Delaware corporation; and UNITED AIRLINES HOLDINGS, INC., a Delaware corporation,<br>                                    Defendants. | Case No. 3:23-CV-03939-EMC<br><br>**REPLY BRIEF IN SUPPORT OF UNION DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Hearing Date:    October 30, 2024<br>Hearing Time:    9:00 a.m.<br>Courtroom:       5 – 17th Floor<br>Judge:           Hon. Edward M. Chen<br>Complaint Filed: August 6, 2023<br>Trial Date: |

# **TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................................................... 1

II.  ARGUMENT ..................................................................................................................... 1

    A.  Local 986 Is Not a Proper Party to This Action and Is Thus Not Liable for Any DFR Claims ................................................................................................. 1

    B.  Even if Local 986 Were a Proper Party to This Action, the DFR Claim Against Both Local 986 and the IBT Fails............................................................. 3

    C.  IBT's Selection of an Economic Expert to Audit and Confirm the Cost Model Agreement Did Not Create a Contract to Which Plaintiffs Are Third-Party Beneficiaries ................................................................................ 7

    D.  Plaintiffs Have Not Plausibly Pled a Claim for Violation of a Statutory Right Against the Union Defendants .................................................................... 8

    E.  Plaintiffs' Fraud Claim Requires Interpretation of the CBA and Is Preempted ................. 9

III.  CONCLUSION ............................................................................................................... 10

# **TABLE OF AUTHORITIES**

*Adkins v. Mireles*,
   526 F.3d 531 (9th Cir. 2008) .................................................................................................. 7

*Allis-Chalmers v. Lueck*,
   471 U.S. 202 (1985) ................................................................................................................ 9

*Andersen-Swiderski v. S. Cal. Permanente Med. Grp.*,
   No. 18-cv-1219-WQH-AGS, 2019 BL 10940 (S.D. Cal. Jan. 10, 2019) .......................... 6

*Audette v. Longshore and Warehouse Local 24*,
   195 F.3d 1107 (9th Cir. 1999) ................................................................................................ 7

*Beck* v. *United Food & Com. Workers Union, Loc. 99*,
   506 F.3d 874 (9th Cir. 2007) .................................................................................................. 4

*Beckington v. Am. Airlines, Inc.*,
   926 F.3d 595 (9th Cir. 2019) .................................................................................................. 3

*Borg v. Greyhound Lines, Inc.*,
   No. C83-7927, 1984 WL 14332 (N.D. Cal. July 1984) ..................................................... 1

*Del Costello v. Int'l Bhd. of Teamsters*,
   462 U.S. 151 (1983) ........................................................................................................... 5, 7

*Demetris v. Transp. Workers Union of Am.*,
   862 F.3d 799 (9th Cir. 2017) .................................................................................................. 4

*Dowty v. Pioneer Rural Electric Cooperative, Inc.*,
   770 F.2d 52, (6th Cir. 1985) (per curiam) ............................................................................ 6

*Galindo v. Stoody Co.*,
   793 F.2d 1502 (9th Cir. 1986) ........................................................................................... 5, 6

*Gen. Comm. of Adjustment of Bhd. of Locomotive Eng'rs for Mo-Kan.-Tex. R.R. v.
   Mo.-Kan.-Tex. Ry. Co.*, 320 U.S. 323 (1943) ..................................................................... 2

*Howard v. Lockheed-Georgia Co.*,
   742 F.2d 612, (11th Cir. 1984) (per curiam) ....................................................................... 6

*Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Aloha Airlines, Inc.*,
   790 F.2d 727 (9th Cir. 1986) .................................................................................................. 5

*James Edward Seitz* v. *International Brotherhood of Teamsters, et. al,* 3:21-cv-05346-VC
   *affirmed* No. 22-15902, 2023 WL 4858142 (9th Cir. July 31, 2023) ........................... 1, 4

*Kelly v. Burlington N. R. Co.*,
   896 F.2d 1194 (9th Cir. 1990)................................................................................................. 5

*Lea v. Republic Airlines*,
   903 F.2d 624 (9th Cir. 1990)................................................................................................... 5

*Marquez v. Screen Actors Guild, Inc.*,
   525 U.S. 33 (1998) .................................................................................................................. 4

*McNaughton v. Dillingham Corp.*,
   707 F.2d 1042 (9th Cir. 1983)................................................................................................. 7

*NLRB v. Don Burgess Construction Co.*,
   596 F.2d 378 (9th Cir. 1979) .................................................................................................. 6

*Perugini v. Safeway Stores, Inc.*,
   935 F.2d 1083 (9th Cir. 1991) ................................................................................................ 7

*Peterson v. Kennedy*,
   771 F.2d 1244 (9th Cir. 1985)................................................................................................. 8

*Samples v. Ryder Truck Lines, Inc.*,
   755 F.2d 881 (11th Cir.1985) ................................................................................................. 6

*Vaca v. Sipes*,
   386 U.S. 171 (1967) ................................................................................................................ 1

*Virginian Ry. Co. v. Sys. Fed'n No. 40*,
   300 U.S. 515 (1937) ................................................................................................................ 3

*Ward v. United Airlines, Inc.*,
   986 F.3d 1234 (9th Cir. 2021)................................................................................................. 9

**Statutes**

Cal. Code Civ. P. § 338............................................................................................................... 9

45 U.S.C. § 152 ..................................................................................................................... 2, 3

I. **INTRODUCTION**

Plaintiffs, Thomas Neal Mullins and John R. Scholz III, ("Plaintiffs") fail to establish in the Opposition to Defendants' Motion to Dismiss Second Amended Complaint ("Opposition") that Defendants' Motion to Dismiss should be denied. Plaintiffs' Second Amended Complaint ("SAC") and Opposition are a series of implausible and unfounded allegations that are time barred, improperly pled, and preempted. Plaintiffs' Second Amended Complaint adds no new allegations supporting their claim that the Defendants breached the duty of fair representation or that such claims are alleged against the proper party and are not preempted. Instead, Plaintiffs' Opposition merely reiterates the claims already dismissed by the court.

Moreover, as explained in the court's previous order, this lawsuit is a redo of an action already dismissed for failure to state a claim by this Court in a similar case. ECF No. 59, p. 10. *See James Edward Seitz* v. *International Brotherhood of Teamsters, et. al,* 3:21-cv-05346-VC *("Seitz") affirmed* Case No. 22-15902, 2023 WL 4858142 (9th Cir. July 31, 2023).

For the reasons set forth in the Union Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint and below, Plaintiffs' lawsuit should be dismissed in its entirety against all Union Defendants.

II. **ARGUMENT**

**A. Local 986 Is Not a Proper Party to This Action and Is Thus Not Liable for Any DFR Claims**

The Court dismissed Teamsters Local 986 from this lawsuit because the IBT is the exclusive representative of the Plaintiffs and, thus, the only entity liable for a DFR. *Vaca v. Sipes*, 386 U.S. 171, 177, 182 (1967); *Borg v. Greyhound Lines, Inc.*, No. C83-7927, 1984 WL 14332 (N.D. Cal. July 1984) (international union did not owe DFR because it was not the exclusive representative). It is undisputed that the National Mediation Board has certified only the IBT as the exclusive bargaining representative of the United Mechanics. (*See* Exhibit A to Pantoja Declaration in Support of Union Defendants' Motion to Dismiss, dkt. 34-1 ("Pantoja Decl."), p. 4. Plaintiffs have never sought to change the NMB certification of their exclusive representative and certainly cannot do so through these proceedings. The Board has exclusive jurisdiction over representation questions under the

1  RLA. *Gen. Comm. of Adjustment of Bhd. of Locomotive Eng'rs for Mo-Kan.-Tex. R.R. v. Mo.-
2  Kan.-Tex. R.R. Co.*, 320 U.S. 323 (1943); *see also* 45 U.S.C. § 152. Plaintiffs do not address
3  this exclusive jurisdiction issue in their opposition.

4      It is further undisputed that the CBA explicitly designates the IBT and only the IBT as the
5  exclusive representative. The cover lists "The International Brotherhood of Teamsters" as the
6  representative. (*See* Pantoja Decl., Ex. A, p. 1, Dkt. 34-1.) The IBT's status as the exclusive
7  bargaining representative is also explicitly stated in the CBA, the Preamble of which states that the
8  International Brotherhood of Teamsters represents the "Craft of Class of Mechanics and Related
9  Employees, as certified by the National Mediation Board." (Pantoja Decl., Ex. A, p. 4, Dkt. 34-1.)
10 Article 1, Section B contains similar language. (Pantoja Decl., Ex. A, p. 6, Dkt. 34-1.) The signature
11 block for the CBA reflects that the signatories to the agreement are (1) United and (2) the IBT.
12 (Pantoja Decl., Dkt. 34-1.) Plaintiffs' FAC admits that the CBA designates the IBT as the exclusive
13 representative of the United mechanics. (FAC ¶ 24.) As the Court noted in dismissing the Plaintiffs'
14 claim, the allegations "do[] not override the unchallenged CBA excerpts[.]" ECF No. 59. Despite the
15 Court's clear ruling, the Opposition continues to press the same claim, ignoring explicit CBA
16 sections that confirm the designation of the IBT as the exclusive representative of United mechanics
17 nationwide. ECF No. 59. There is nothing in the CBA that designates Local 986 as the exclusive
18 representative for grievances and the Plaintiffs have pointed to no additional facts to establish this
19 allegation already rejected by the Court.

20     Plaintiffs' argument is premised on its demonstrably false allegation that Teamsters Local 986
21 is "signatory" to the CBA. The signature page of the CBA reflects that there are two parties to the
22 CBA: "United Air Lines, Inc" and the "International Brotherhood of Teamsters." United Airlines had
23 sixteen individuals sign on its behalf and the IBT had 33 individuals sign on its behalf that served on
24 the IBT's negotiating team. The IBT can designate anyone that it wants to serve on its bargaining
25 team and to act as its agent. That does not change the status of the IBT as the exclusive representative
26 or supersede their designation as such by the NMB. Under the RLA, the designation and certification
27 of a union's exclusive bargaining representative "imposes on the employer an affirmative duty to
28

**REPLY BRIEF IN SUPPORT OF UNION DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**
Case No. 3:23-CV-03939-EMC

2

1307021.docx (1144-0046)

treat *only* with the [selected union], and hence the negative duty to treat with no other." *Beckington v. Am. Airlines, Inc.*, 926 F.3d 595, 599 (9th Cir. 2019), *citing Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 548 (1937) (internal quotations omitted).

Plaintiffs make a vague illusion to the IBT constitution and Local 986's bylaws as somehow creating the exclusive representative status of Local 986. That argument makes no sense. An employee organization cannot designate itself as an exclusive representative or workers through its bylaws or constitution; they must be selected through the RLA representation process and recognized by the employer. 45 U.S.C.A. § 152. Unsurprisingly, then, neither the IBT Constitution nor the Local 986 bylaws authorize Local 986 to act as the exclusive bargaining representative of the United mechanics.

The provision of the IBT Constitution identified in the SAC, as presented in the Union Defendants' Motion to Dismiss the Second Amended Complaint, is completely irrelevant. Article XII Sec. 2 of the IBT constitution addresses ratification where Local Unions *are* the certified representatives of a group of employees that vote to negotiate alongside each other. This is not the case here, nor is it permissible under the RLA which requires nationwide collective bargaining units. The IBT is the only certified bargaining representative and there is a single bargaining unit and the entire bargaining unit votes on ratification. The Constitution does not need to expressly state that it only applies to the National Labor Relations Act because the Section's exclusive application to the NLRA is obvious since the structure described therein is not permitted under the RLA. Article XII, Section 2 applies when "Local Unions vote to participate in area, multi-area, national, multi-employer, company-wide or industry-wide negotiations ..." (Supplemental Declaration of Pantoja, Ex. A.). Plaintiffs have alleged no additional facts that establish that Local 986 is the exclusive representative and Local 986 must be dismissed as Defendants from the DFR claim without leave to amend.

**B. Even if Local 986 Were a Proper Party to This Action, the DFR Claim Against Both Local 986 and the IBT Fails**

Plaintiffs' SAC and Opposition fail to satisfy the plausibility standard required to prove that the union acted in bad faith, thus breaching the Duty of Fair Representation. Significantly, as the

court already indicated, "bad faith requires that there be 'substantial evidence of fraud, deceitful action or dishonest conduct.'" ECF No. 59, 17, citing *Beck v. United Food & Commercial Workers Union, Local 99*, 506 F.3d 874, 880 (9th Cir. 2007); *see* also *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45-46 (1998). In advancing their claims of bad faith conduct, Plaintiffs attempt to shift the burden to the Union Defendants to prove that the Union's conduct was reasonable ("Teamsters do not offer any evidence to demonstrate that their failure to investigate . . . is a reasonable exercise of their judgment beyond saying if they do it, it is reasonable."). (Opp., p. 16.) However, the burden is on the Plaintiffs to plausibly allege that the Union Defendants acted discriminatorily or in bad faith. As the court already explained, the "Teamsters' interpretation of LOA #29 was reasonable." ECF No. 59, p. 17. Therefore, mere allusions to a secret agreement are not sufficient to meet Plaintiffs' burden. The IBT's decision not to pursue Plaintiffs' grievances were wholly within the discretion of the Union and were not arbitrary or irrational. Importantly, the Union Defendants do not contend, as the Opposition states, that "a union possesses unfettered discretion over all matters and that when such power is exercised, it constitutes the union's 'judgment' that cannot be challenged or examined." (Opp., p. 15.)

Rather, as argued in the Union Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint, in Defendants' Motion to Dismiss the original Complaint, and in this Court's February 7, 2024, Order, unions may exercise their reasonable judgment to process grievances. *See* ECF No. 59; *Beck* v. *United Food & Com. Workers Union, Loc. 99,* 506 F.3d 874, 879 (9th Cir. 2007); *Demetris v. Transp. Workers Union of Am.,* 862 F.3d 799, 806 (9th Cir. 2017); *Seitz,* No. 22-15902, 2023 WL 4858142 (9th Cir. July 31, 2023). Plaintiffs' sole argument in support of their claim that the Union Defendants engaged in bad faith center around the Union Defendants' decision to withhold the cost model, which the Ninth Circuit has already deemed to be reasonable: "A union's negotiation over wages, its agreement to keep confidential an employer's proprietary information used to calculate those wages, and its determination that a grievance is meritless all involve reasonable exercises of judgment." *Seitz,* No. 22-15902, 2023 WL 4858142 (9th Cir. July 31, 2023).

Even if Plaintiffs were able to plausibly allege the Union Defendants acted in bad faith, the

1  DFR claims are time barred. The statute of limitations for a DFR claim is six months. *See Int'l Ass'n*
2  *of Machinists & Aerospace Workers, AFL-CIO v. Aloha Airlines, Inc.,* 790 F.2d 727, 735 (9th Cir.
3  1986); *Kelly v. Burlington N. R. Co*., 896 F.2d 1194 (9th Cir. 1990); *Lea v. Republic Airlines,* 903
4  F.2d 624 (9th Cir. 1990); *Del Costello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 169–72 (1983).

   Plaintiffs have asserted that the Union Defendants breached their DFR in a number of ways which all stem from Union Defendants decision not to share the cost model or calculations of the industry reset. In the SAC, Plaintiffs allege that UAL and the Union made the wage adjustments in 2018 and 2020 and on both occasions refused to provide the bargaining unit with the cost model and calculations utilized. Plaintiffs allege that the bargaining unit was informed that the cost model and calculations were deemed proprietary and would not be produced back in 2018 and again in 2020. (SAC ¶¶ 95; 121.) Grievances seeking computations were filed and withdrawn by the Union in 2018 and 2020. (SAC ¶¶ 94-96; 99; 126-127.) Plaintiffs admit that they were on notice as of 2020 that the cost model and calculations for the industry reset would not be provided to the bargaining unit because the cost model and calculations were deemed proprietary and that the IBT would not pursue such grievances to arbitration. (SAC ¶ 130.) In 2022, the SAC alleges that when the grievance was initially filed, the Union officials responded that there was no violation as the calculation was done. (SAC ¶¶138; 185.) The Plaintiffs knew prior to filing the grievance, as alleged in the SAC, that the Union would not pursue their grievances.

   Plaintiffs argue that the DFR cause of action did not accrue until they received the closeout letter on February 6, 2023, advising them that the Union would not be pursuing their 2022 grievances seeking the cost model and calculations for the 2022 reset. This, however, was a foregone conclusion. The Plaintiffs already knew or should have known that the Union would not pursue a grievance that sought the cost model and calculations because the Union had told them for *years* that the cost model and calculations were proprietary and would not be given and had withdrawn prior grievances seeking the information.

   Plaintiffs' reliance on *Galindo* to argue that the statute of limitations was tolled is misplaced as the court in *Galindo* explicitly stated that the limitations period for DFR claims related to

grievance handling begins to run when the employee "discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [violation]." *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir. 1986) *citing Howard v. Lockheed-Georgia Co.,* 742 F.2d 612, 614 (11th Cir. 1984) (per curiam) (quoting *NLRB v. Don Burgess Construction Co.,* 596 F.2d 378, 382 (9th Cir. 1979). Thus, in a duty of fair representation case, the six-month period generally begins to run when an employee knows or should know of the alleged breach of duty of fair representation by a union. *See e.g., Dowty v. Pioneer Rural Electric Cooperative, Inc.,* 770 F.2d 52, 56 (6th Cir. 1985) (per curiam); *Samples v. Ryder Truck Lines, Inc.,* 755 F.2d 881, 887 (11th Cir. 1985).

In *Galindo v. Stoody Co.,* the grievance protesting the union's failure to notify the plaintiff's employer that he was a steward began to run upon knowledge to the grievant that the Union had not done so. *Galindo v. Stoody Co.,* 793 F.2d 1502, 1509 (9th Cir. 1986). However, the court specifically distinguished DFR claims related to grievance processing from DFR claims related to errors committed by a union in subsequent arbitration proceedings. Notably, the court explained that the "*simplest* case is one where a union decides not to file a grievance; the cause of action generally accrues when the employee learns or should have learned of the union's decision." *Id.* (emphasis added). Regarding the DFR claim in *Galindo*, the court explained that a claim based on a union's errors in representing a grievance before an arbitrator does not accrue until the plaintiff learns of the arbitrator's decision. *Id.* In the case at hand, Plaintiffs' attempt to skew the court's accrual determination in *Galindo* to apply to their DFR claims. However, Plaintiffs' claims are distinct from the plaintiff in *Galindo* as Plaintiffs' grievances never reached the arbitration stage because the union declined to proceed with the grievances.

Moreover, the court in *Galindo* explained that the grievance process tolls the statute of limitations unless "the grievance was frivolous or not brought in good faith for the purposes of tolling the statute of limitations." *Galindo v. Stoody Co.*, 793 F.2d 1502, 1518 (9th Cir. 1986). Likewise, in *Andersen-Swiderski v. S. Ca. Permanente Med. Grp.*, the court also stressed that any attempts to resolve the dispute through the grievance process must be in good faith. *Andersen-Swiderski v. S. Cal. Permanente Med. Grp.*, No. 18-cv-1219-WQH-AGS, 2019 BL 10940, at *4 (S.D. Cal. Jan. 10,

2019). The fact that Plaintiffs first filed grievances related to the cost model back in 2018 and continued to do so, eventually resulting in a representative from the Union requesting that they stop filing grievances over the cost model, shows that they simply were not using the grievance process in good faith. (SAC ¶¶94; 138.) Plaintiffs cannot simply file the same grievance repeatedly and use the most recent grievance as a shield against the statute of limitations. Therefore, Plaintiffs' DFR claims began to accrue once they were aware that the Union would not pursue their grievances because they were moot and that future grievances related to the cost model were frivolous.[1]

### C. IBT's Selection of an Economic Expert to Audit and Confirm the Cost Model Agreement Did Not Create a Contract to Which Plaintiffs Are Third-Party Beneficiaries

Plaintiffs' third-party beneficiary claim hinges on the unsupported and improperly alleged facts that (1) IBT and Dan Akins entered into a contract for the benefit of the class and (2) that IBT breached that contract by "falsifying" the results of the calculation. The breach of contract claim is predicated on several unsupported allegations with no basis in reality. The SAC and the Opposition fail to explain any plausible reason why IBT would breach a supposed contract with Akins besides vague allusions to a "secret agreement" with United. The SAC is not sufficiently clear as to what motivation IBT would have to hire an expert only to subsequently falsify that expert's calculations. Plaintiffs fail to plausibly allege IBT breached a contract with Akins, let alone that such a contract even existed. Therefore, this claim must be dismissed as a matter of law.

Even if Plaintiffs were able to plausibly allege a breach of contract claim, such a claim is preempted as it is premised on a breach of the duty of fair representation. In *Adkins v. Mireles*, the Ninth Circuit affirmed the district court's ruling that a breach of contract claim against a union was preempted because it implicated the duty of fair representation. *Adkins v. Mireles*, 526 F.3d 531 (9th Cir. 2008); *see also Perugini v. Safeway Stores, Inc*., 935 F.2d 1083, 1086 (9th Cir. 1991) (tort claims against union preempted as they could only be resolved by referring to terms of the CBA); *Audette v.*

---

[1] Plaintiffs also cite to *McNaughton v. Dillingham Corp*, where the court compared DFR claims against a union to professional malpractice suits and applied a two-year statute of limitations. *McNaughton v. Dillingham Corp*., 707 F.2d 1042, 1046 (9th Cir. 1983). However, *Del Costello*, which was handed down the day after *McNaughton*, created a uniform six-month statute of limitations thus overruling *McNaughton*. *Del Costello v. Int'l Bhd. of Teamsters,* 462 U.S. 151 (1983). Therefore, *McNaughton* cannot be relied upon to determine when or whether a limitations period tolls with respect to DFR claims.

*Longshore and Warehouse Local 24*, 195 F.3d 1107, 1112 (9th Cir. 1999) (finding that a claim for the breach of the covenant of good faith and fair dealing was preempted because it inevitably required interpretation of the CBA). Relatedly, the Ninth Circuit also held that a malpractice claim against outside counsel who performs a service on behalf of a union is preempted as the services are conducted as part of the collective bargaining process. *Peterson v. Kennedy*, 771 F.2d 1244 (9th Cir. 1985). Plaintiffs' breach of contract claim against the Union is preempted for the same reasons. To reach a decision on whether the Union properly availed itself of Dan Akins' services would require analyzing the substance and directives of LOA #29 and the CBA itself. Moreover, like the outside counsel in *Peterson*, Akins' creation of the cost model was a service that was performed pursuant to the CBA. Therefore, any breach of contract claims related to Akins' services, and the Union's relationship with Akins, are preempted as they fall under the duty of fair representation.

### D. Plaintiffs Have Not Plausibly Pled a Claim for Violation Of a Statutory Right Against the Union Defendants

Plaintiffs next claim that the Union Defendants interfered with the Plaintiffs' statutory rights under Section 204 of the RLA. (SAC, p. 20). However, the only plausibly alleged action that the Union took with respect to any statutory rights of Plaintiffs was to withdraw and close their grievances. The IBT took the position that only the union could pursue a grievance to the board as the parties' CBA at Article 19 states that for contract interpretation grievances after the second step, "the Union *may* appeal such grievance to the System Board of Adjustment." (See Exhibit A to Pantoja Decl., p. 19-20.). This judgment call, as the Court reasoned, was not wholly irrational. ECF No. 59, p. 17. As the Court found, whether an individual has a right to individually grieve under Section 184 is irrelevant if Plaintiffs failed to state a claim for relief. ECF No. 59, p. 28. The SAC does not provide any plausible facts to support the allegation that IBT prevented Plaintiffs from individually petitioning the board, beyond the fact that the Union Defendants withdrew and closed the grievance. The SAC merely speculates that the Union "Defendants, unilaterally and arbitrarily, through their own conduct or by secret agreement, sought to divest and deprive Plaintiffs of their statutorily prescribed rights." (SAC p. 65). Beyond baseless conspiratorial speculations, the SAC offers zero examples of specific actions by the Union Defendants that deprived the Plaintiffs of their rights.

### E. Plaintiffs' Fraud Claim Requires Interpretation of the CBA and Is Preempted

Plaintiffs' SAC and Opposition attempt to circumvent RLA preemption by claiming that the Cost Model is not part of the CBA and thus Plaintiffs' fraud claim is not preempted by the RLA. Nonetheless, to resolve the fraud claim, interpretation of the CBA is required. Any determination of fraud necessarily requires a court to interpret the language of LOA #29 to determine whether or not UAL breached the CBA in failing to provide wage increases due under it and whether it requires the provision of calculations to bargaining unit employees.

The fact that there is an outside economic model that is used to interpret and apply the terms of the CBA does not override the fact that it is an inherent component of LOA #29, which falls squarely within the parameters of the CBA. *See* ECF No. 59. As the Court explained, "the Cost Model is not formally part of the CBA, but rather a method by which the CBA would be carried out." ECF No. 59, p. 22. Plaintiffs themselves admit as much in the SAC, which specifically states that the alleged violation of the California Civil Code was for failure "to disclose the true results of the LOA #29 Adjustment Calculation." (SAC, p. 67). Plaintiffs now attempt to claim that the fraud allegation solely requires interpretation of the Cost Model and not the CBA. However, this is nonsensical. The cost model is a component part of LOA #29, which is part of the CBA and thus any claims related to LOA #29 require interpretation of the CBA and are preempted. *Ward v. United Airlines, Inc.,* 986 F.3d 1234, 1244 (9th Cir. 2021); *Allis-Chalmers v. Lueck,* 471 U.S. 202, 220 (1985). As the Court explained: "the only way that the Union Defendants and/or United Defendants could be said to have concealed a fraud from Plaintiffs is if the CBA/LOA #29 should have been interpreted as Plaintiffs advocate . . . [a]ccordingly, the fraud claim is dismissed because it is preempted." ECF No. 59, p. 37-38.

Moreover, Plaintiffs' fraud claim is time-barred. Defendants' allegedly fraudulent statements occurred in 2016, 2017 and 2018, well beyond the three-year statute of limitations. Further, Plaintiffs allege that they were aware of the alleged fraud in 2018 when they were informed that they would not receive a copy of the cost model. (Cmplt. ¶¶ 36-43.) Thus, the three-year, statute of limitations has run. Cal. Code Civ. P. § 338.

### III. CONCLUSION

For the reasons set forth above, Defendants respectfully request the Court grant their Motion to Dismiss in its entirety without leave to amend.

Dated: October 7, 2024

BEESON, TAYER & BODINE, APC

By: */s/ Susan K. Garea*
SUSAN K. GAREA

Attorneys for INTERNATIONAL BROTHERHOOD OF TEAMSTERS; TEAMSTERS LOCAL 986