CHRIS A. HOLLINGER (S.B. #147637)
chollinger@omm.com
ADAM P. KOHSWEENEY (S.B. #229983)
akohsweeney@omm.com
MOLLY EDGAR (S.B. #341857)
medgar@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone:   (415) 984-8700
Facsimile:   (415) 984-8701

Attorneys for Defendants
United Airlines, Inc. and
United Airlines Holdings, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THOMAS NEAL MULLINS, an individual, and JOHN R. SCHOLZ, III, an individual, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS, a labor organization; TEAMSTERS LOCAL 986, a labor organization; UNITED AIRLINES, INC., a Delaware corporation; and UNITED AIRLINES HOLDINGS, INC., a Delaware corporation,<br><br>Defendants. | Case No. 3:23-cv-03939-EMC<br><br>**DEFENDANTS UNITED AIRLINES, INC. AND UNITED AIRLINES HOLDINGS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>**Hearing Date**:   December 19, 2024<br>**Time**:   1:30 p.m.<br>**Location:**   Courtroom 5, 17th Floor |

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

    I.    THE SECOND AMENDED COMPLAINT FAILS TO ESTABLISH AN EXCEPTION TO THE EXCLUSIVE JURISDICTION OF THE GRIEVANCE PROCEDURE OVER PLAINTIFFS' CLAIM FOR BREACH OF COLLECTIVE BARGAINING AGREEMENT. ............................. 2

        A.    Plaintiffs' Claim For Breach Of Collective Bargaining Agreement Is A "Minor" Dispute. ................................................................................. 3

        B.    The "Hybrid" Exception Does Not Apply. ..................................................... 4

        C.    United Did Not "Repudiate" The Grievance Process. ..................................... 7

    II.    PLAINTIFFS' POST-CERTIFICATION CLAIM UNDER SECTIONS 2, THIRD AND FOURTH, OF THE RAILWAY LABOR ACT SHOULD BE DISMISSED. ................................................................................................ 7

    III.    PLAINTIFFS' CLAIM FOR VIOLATION OF "STATUTORY DUE PROCESS" SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE NO INDIVIDUAL RIGHT TO ARBITRATE THEIR GRIEVANCES OVER THEIR UNION'S OBJECTION. ................................................................ 9

    IV.    PLAINTIFFS' STATE-LAW CLAIMS ARE PREEMPTED BY THE RAILWAY LABOR ACT. ................................................................................ 11

CONCLUSION ..................................................................................................................... 12

# TABLE OF AUTHORITIES

Page

**CASES**

*Alaska Airlines Inc. v. Schurke*,
   898 F.3d 904 (9th Cir. 2018) ............................................................................... 2, 11, 12

*Ass'n of Flight Attendants v. Horizon Air Indus., Inc.*,
   280 F.3d 901 (9th Cir. 2002) ..................................................................................... 1, 8, 9

*Bautista v. Pan. Am. World Airlines, Inc.*,
   828 F.2d 546 (9th Cir. 1987) ............................................................................................ 6

*Bensel v. Allied Pilots Ass'n*,
   387 F.3d 298 (3d Cir. 2004) ............................................................................................. 8

*Croston v. Burlington N. R.R. Co.*,
   999 F.2d 381 (9th Cir. 1993), *overruled on other grounds by Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994) ............................................................. 5, 6

*Dean v. Trans World Airlines*,
   924 F.2d 805 (9th Cir. 1991) ............................................................................................ 7

*Faulkner v. Dominguez*,
   2010 WL 342600 (C.D. Cal. Jan. 28, 2010) ..................................................................... 6

*Fennessy v. Southwest Airlines*,
   91 F.3d 1359 (9th Cir. 1996) ............................................................................................ 8

*Glover v. St. Louis-S.F. Ry. Co.*,
   393 U.S. 324 (1969) .......................................................................................................... 5

*Int'l Ass'n of Machinists & Aerospace Workers v. Alaska Airlines, Inc.*,
   813 F.2d 1038 (9th Cir. 1987) ................................................................................. 1, 7, 9

*Lindsay v. Ass'n of Pro. Flight Attendants*,
   581 F.3d 47 (2d Cir. 2009) ............................................................................................... 8

*Loc. 591, Transp. Workers Union of Am. v. Am. Airlines, Inc.*,
   2015 WL 3852958 (N.D. Ill. June 19, 2015) .................................................................... 4

*Melanson v. United Air Lines, Inc.*,
   931 F.2d 558 (9th Cir. 1991) ............................................................................................ 2

*Seitz v. Int'l Bhd. of Teamsters*,
   2022 WL 1561076 (N.D. Cal. May 18, 2022), *aff'd*, 2023 WL 4858142
   (9th Cir. July 31, 2023) .................................................................................................... 6

*U.S. Airlines Pilots Ass'n ex rel. Cleary v. U.S. Airways, Inc.*,
   859 F. Supp. 2d 283 (E.D.N.Y. 2012) .............................................................................. 4

**STATUTES**

45 U.S.C. § 152 (Fourth) ......................................................................................................... 1

45 U.S.C. § 152 (Second) ...................................................................................................... 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

45 U.S.C. § 152 (Third) .................................................................................................... 1

45 U.S.C. § 184 ................................................................................................... 2, 10, 11

**INTRODUCTION**

The Court previously dismissed the original Complaint filed by Plaintiffs Thomas Neal Mullins and John R. Scholz, III (collectively, "Plaintiffs") and, in so doing, identified deficiencies with each of Plaintiffs' claims against Defendants United Airlines, Inc. ("United") and United Airlines Holdings, Inc. (collectively, the "United Defendants"). Plaintiffs' Second Amended Complaint ("SAC") has added some new allegations and modified others, but in no way resolves the deficiencies identified by the Court. In their opposition to the United Defendants' Motion to Dismiss, Plaintiffs characterize the SAC as establishing collusion between the United Defendants and Plaintiffs' union, Defendant International Brotherhood of Teamsters (the "IBT"), but, on their face, the actual allegations in the SAC reveal only a disagreement with the way in which the United Defendants calculated Plaintiffs' wage increases and the way in which the IBT handled their grievances. For the following reasons, Plaintiffs' claims against the United Defendants should be dismissed with prejudice.

This Court lacks subject-matter jurisdiction to adjudicate Plaintiffs' claim for breach of the collective bargaining agreement ("CBA") between United and the IBT, because Plaintiffs' claim is a "minor dispute" which can only be resolved in accordance with the CBA's grievance procedures. *See, e.g.*, *Ass'n of Flight Attendants v. Horizon Air Indus., Inc.*, 280 F.3d 901, 904, 906 (9th Cir. 2002). According to Plaintiffs, their claim satisfies the narrow exceptions to the exclusive jurisdiction of the CBA grievance procedures—but the allegations in their SAC fail to establish anything close to a breach of the duty of fair representation ("DFR") by the Union Defendants, collusion between the United Defendants and the Union Defendants, or the United Defendants' repudiation of the CBA's grievance procedures.

As for Plaintiffs' claims under RLA Sections 2, Third and Fourth, 45 U.S.C. § 152 (Third) & (Fourth), Plaintiffs have not alleged the "exceptional circumstances" which are necessary to permit this Court to hear such claims where, as here, a union has been certified to represent the employees at issue. *See Int'l Ass'n of Machinists & Aerospace Workers v. Alaska Airlines, Inc.*, 813 F.2d 1038, 1041 (9th Cir. 1987); *see also Ass'n of Flight Attendants*, 280 F.3d at 905 (judicial intervention in post-certification cases involving claims under RLA Sections 2, Third

and Fourth, is limited to "situations in which an employer's conduct has been motivated by anti-union animus or where circumstances exist that significantly undermine the functioning of the union, such as an attempt to interfere with an employee's choice of collective bargaining representative or an act of intimidation that cannot be remedied by administrative means").

Plaintiffs' claim for "statutory due process" under the RLA likewise fails as a matter of law, because the RLA does not provide airline employees with an individual right to submit grievances to arbitration over their union's objections. Even assuming that such a right exists, however, Plaintiffs have still not alleged that they attempted to enforce their right by petitioning the System Board of Arbitration in accordance with the procedures set forth in Section 204 of the RLA, 45 U.S.C. § 184.

Lastly, Plaintiffs cannot avoid the conclusion that their state-law fraud claims under the California Civil Code require interpretation of the terms of the CBA and, in particular, Letter of Agreement No. 29 ("LOA #29"). The Court cannot resolve the merits of these claims without determining whether United's alleged misrepresentations about the wage adjustment process and results were inaccurate, and doing so would require the Court to resolve the dispute between Plaintiffs and Defendants with respect to the requirements of LOA #29. As such, Plaintiffs' state-law fraud claims are necessarily dependent on a disputed interpretation of the CBA and are therefore preempted. *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921-22 (9th Cir. 2018); *Melanson v. United Air Lines, Inc.*, 931 F.2d 558, 563 (9th Cir. 1991).

## **ARGUMENT**

**I.   THE SECOND AMENDED COMPLAINT FAILS TO ESTABLISH AN EXCEPTION TO THE EXCLUSIVE JURISDICTION OF THE GRIEVANCE PROCEDURE OVER PLAINTIFFS' CLAIM FOR BREACH OF COLLECTIVE BARGAINING AGREEMENT.**

To avoid the conclusion that their breach-of-CBA claim is a "minor dispute" which this Court lacks jurisdiction to decide, Plaintiffs' brief attempts to reframe their claim and, in so doing, obscures the allegations in their SAC. This obfuscation is to no avail, because in support of their breach-of-CBA cause of action, Plaintiffs actually allege that the United Defendants:

(1) "intentionally alter[ed], falsif[ied], and misrepresent[ed] the LOA #29 Adjustment Calculation result" (SAC ¶ 283; *see also id*. ¶ 286);

(2) "refus[ed] to process Plaintiffs' legitimate grievances through the Third Step of the contractually mandated grievance process" (*id*. ¶ 287; *see also id*. ¶ 284);

(3) entered "secret agreements with the Union Defendants contrary to the terms of the in-force CBA" (*id*. ¶ 285); and

(4) "refus[ed] reasonable information requests that are related to enforcement of the CBA" (*id*. ¶ 288).

These allegations make clear that Plaintiffs' breach-of-CBA claim cannot be resolved without interpreting LOA #29 and United's obligations thereunder.

### A. Plaintiffs' Claim For Breach Of Collective Bargaining Agreement Is A "Minor" Dispute.

In response to the United Defendants' motion to dismiss Plaintiffs' original complaint in this case, Plaintiffs did not dispute that their breach-of-CBA claim was a "minor dispute" under the RLA. (*See* Order on Motions to Dismiss (ECF No. 59) at 34 ("In the case at bar, Plaintiffs do not dispute that their contract claim against the United Defendants involves a minor dispute for purposes of the RLA.").) After having failed to establish that their breach-of-contract claim satisfies one of the narrow exceptions to the exclusive jurisdiction of the CBA's grievance procedures over such claims (*see id*. at 34-35), Plaintiffs now suggest that the breach-of-CBA claim in their SAC is ***not*** a minor dispute after all. Plaintiffs' change of course falls wide of the mark.

***First***, Plaintiffs argue that, because the Cost Model is not physically part of the CBA, their claim "by definition" is "a non-minor dispute," and that "any agreement not part of the CBA, such as the Cost Model, or the alleged Non-Disclosure Agreement, would not give rise to a minor dispute." (Opp. at 7 & 8.) Plaintiffs are wrong. The relevant question for purposes of the Court's subject-matter jurisdiction is whether adjudication of Plaintiffs' claims—be they based on the Cost Model, the Non-Disclosure Agreement (or something else)—would require the Court to

1  interpret the CBA, which it would, and not whether the Cost Model and Non-Disclosure
2  Agreement are "part" of the CBA.

3  ***Second***, Plaintiffs attempt to reframe their breach-of-CBA claim as raising only the
4  questions of whether United "'acted in accordance' with its duties under the RLA" and whether
5  United "improperly entered into agreements in violation of the RLA or California law." (*See*
6  Opp. at 8.) However, even assuming that "intentionally altering, falsifying, and misrepresenting
7  the LOA #29 Adjustment Calculation result" violates the RLA (*see* SAC ¶ 283), the Court would
8  still have to interpret LOA #29 to determine what was required of United vis-à-vis the
9  Adjustment Calculation—the RLA itself contains no independent basis for any such obligations.
10 Further, to determine whether United entered into "secret agreements" with the IBT which were
11 "contrary to the terms of the in force CBA" (*see id.* ¶ 285), the Court would indisputably need to
12 interpret the "terms" of the CBA. Finally, to the extent that Plaintiffs contend United violated the
13 RLA by "refusing reasonable information requests that are related to enforcement of the CBA"
14 (*see id*. ¶ 288), and "refusing to process Plaintiffs' legitimate grievances" (*see id*. ¶ 287), these
15 claims would require interpretation of the grievance procedures of the CBA. *See, e.g.*, *U.S.*
16 *Airlines Pilots Ass'n ex rel. Cleary v. U.S. Airways, Inc.*, 859 F. Supp. 2d 283, 303 & 305
17 (E.D.N.Y. 2012) (holding that a claim under RLA Section 2, First, to compel an airline "to restore
18 the grievance and arbitration process as previously practiced by the parties" was a minor dispute;
19 stating "[t]hat plaintiff purports to bring a statutory claim in Count V does not change this
20 result. . . . [C]ourts generally apply the major-minor analysis in evaluating whether they have
21 jurisdiction over such statutory claims."); *Loc. 591, Transp. Workers Union of Am. v. Am.*
22 *Airlines, Inc.*, 2015 WL 3852958, at *4 (N.D. Ill. June 19, 2015) ("Defendant argues that
23 plaintiffs' first claim . . . is nothing more than a dispute over the processing and scheduling of
24 grievances, and, because this dispute implicates a contractual right, can properly be classified as
25 minor under the RLA. The court agrees.").

26  **B.    The "Hybrid" Exception Does Not Apply.**

27  In its order dismissing Plaintiffs' original complaint, the Court ruled that Plaintiffs'
28 breach-of-CBA claim was a minor dispute which did not satisfy any of the narrow exceptions to

1  the exclusive jurisdiction of the CBA's grievance procedures.  (Order at 35.)  Nothing in the SAC
2  warrants a departure from the Court's prior conclusion.
3        Plaintiffs continue to argue that this Court can exercise jurisdiction over their breach-of-
4  CBA claim under the "hybrid action" theory.  (*See* SAC ¶ 10.)  For several reasons, the SAC fails
5  to meet the standard set forth by the Supreme Court in *Glover*, which held that the exception may
6  apply "where the employee alleges that the union breached its duty of fair representation by
7  acting 'in concert' with the employer, making resort to the Adjustment Board 'absolutely futile.'"
8  *Glover v. St. Louis-S.F. Ry. Co.*, 393 U.S. 324, 329 (1969) (holding that "a formal effort to pursue
9  contractual or administrative remedies would be absolutely futile" where plaintiff alleged that the
10 union was "acting in concert with the railroad employer to set up schemes and contrivances to bar
11 [Black Americans] from promotion wholly because of race").  According to Plaintiffs, their claim
12 falls within the "hybrid" exception because their allegations supposedly state a plausible breach-
13 of-DFR claim against the IBT and collusion between the IBT and United.  (*See* Opp. at 9-12.)
14 The SAC does not establish either.
15       ***First***, Plaintiffs allege that the IBT breached its DFR by "withdrawing Plaintiffs'
16 grievances and not providing the written demand to United to initiate the Third Step of the
17 grievance process as requested," failing to obtain from United the "requested, relevant, material
18 information related to the processing of Plaintiffs' grievances," "secretly agree[ing] to alter,
19 modify, and/or reduce the Adjustment Calculation result," failing to prevent United from
20 modifying LOA #29 without a ratification vote, and adopting "illegitimate CBA interpretations of
21 LOA #29."  (*See* SAC ¶ 266) (cleaned up); *see also* Opp. at 9–10.)  The Court previously
22 considered these allegations, and held them insufficient to state a DFR claim when ruling on
23 Defendants' motions to dismiss Plaintiffs' original Complaint.  (*See* Order at 15, 24.)  The SAC
24 contains no new allegations which move the needle or show anything more than a "mere
25 disagreement between the employees and the union on the merits of a grievance."  *See Croston v.*
26 *Burlington N. R.R. Co.*, 999 F.2d 381, 387 (9th Cir. 1993), *overruled on other grounds by*
27 *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994).  The inquiry should end here, as Plaintiffs
28 have not plausibly alleged a DFR claim against the IBT, and therefore the "hybrid" exception

does not apply. *See Faulkner v. Dominguez*, 2010 WL 342600, at *5 (C.D. Cal. Jan. 28, 2010) (citing *Bautista v. Pan. Am. World Airlines, Inc.*, 828 F.2d 546 (9th Cir. 1987) ("[If the] employee does not have a triable claim against the union . . . *Glover* does not apply.)

***Second***, even if Plaintiffs plausibly allege a DFR claim against the IBT, their SAC still fails to plausibly allege collusion between United and the IBT. As they did in their original Complaint, Plaintiffs allege that United and the IBT "secretly agreed to alter, modify, and/or reduce the Adjustment Calculation result." (*See* SAC ¶ 266.) The SAC adds new allegations regarding discrepancies between the Adjustment Calculation results reported by the Union Defendants and United Defendants, on the one hand, and their own and other mechanics' "calculations," on the other hand (*see, e.g.*, SAC ¶¶ 94, 139, 155-157, 182-183, 230), a non-disclosure agreement between the IBT economist and United (*see id*. ¶ 78), and statements to union members in which the Union Defendants purportedly "admitted . . . that the result was all a ruse entered into with United for United's benefit" (*see* Opp. at 10–11) (citing SAC ¶¶ 220–229). But none of these new allegations resolves the deficiencies which the Court recognized in its prior dismissal order:

> [T]he Teamsters' interpretation of LOA #29 was reasonable, and this thereby weighs against the existence of a secret agreement . . . . It is also worth noting that Plaintiffs have not provided any explanation as to why the Teamsters would have entered into a secret agreement with the United Defendants – *e.g.*, what benefit was there to Teamsters from such an agreement? Although Teamsters could, in theory, have acted in bad faith regardless of motive, Plaintiffs' failure to provide an explanation underscores that they are essentially engaging in speculation.

(Order at 17-18.)

Plaintiffs' allegations are insufficient to satisfy the *Glover* exception. *See Croston*, 999 F.2d at 387 ("Conclusory allegations that do not demonstrate any act of collusion between the union and the railroad will not establish jurisdiction."); *Seitz v. Int'l Bhd. of Teamsters*, 2022 WL 1561076, at *1 (N.D. Cal. May 18, 2022), *aff'd*, 2023 WL 4858142 (9th Cir. July 31, 2023) ("Seitz insinuates that the union was receiving illicit payments from United in exchange for its complicity in a scheme to under-compensate union members. But speculation about an unspecified payment between an employer and a union is not enough to plausibly allege that the union and employer were conspiring against employees.").

### C. United Did Not "Repudiate" The Grievance Process.

Plaintiffs also argue that this Court has jurisdiction over their breach-of-CBA claim because, allegedly, the United Defendants "by [their] own conduct" repudiated the grievance process. (See Opp. at 11-12.) According to Plaintiffs, they made "persistent efforts" and United "fail[ed] to respond" (*id.* at 11), citing SAC allegations regarding the processing of Plaintiff Mullins's grievance and Plaintiff Scholz's requests to appeal his grievance after it was closed. Plaintiffs contend these allegations "easily satisfy the standard" set forth in *Dean v. Trans World Airlines*, where the court excused the employee's failure to exhaust the grievance process upon finding that both the employer and union failed to comply with the CBA's terms regarding grievances. *See* 924 F.2d 805, 811 (9th Cir. 1991) ("ALPA never designated a union official to receive Hilly's decision, as required by section 3-B(D), and TWA refused to reinstate Dean, although interim reinstatement was required by section 3-B(E)."). Here, however, Plaintiffs do not allege that the United Defendants failed to comply with the CBA's grievance procedures by not submitting their case to arbitration.[1] Nor could they. Under the grievance procedures in the CBA, only the IBT has the authority to determine if a grievance is submitted to arbitration. (*See* SAC, Ex. 3 [CBA] § 19.B.6.) Accordingly, Plaintiffs' real complaint is not that the United Defendants repudiated the CBA's grievance procedure—it's that Plaintiffs don't like the CBA's grievance procedures in the first place.

### II. PLAINTIFFS' POST-CERTIFICATION CLAIM UNDER SECTIONS 2, THIRD AND FOURTH, OF THE RAILWAY LABOR ACT SHOULD BE DISMISSED.

As the United Defendants established in their Motion to Dismiss (*see* Mot. at 14), where a union has been certified by the National Mediation Board, the scope of the judicial cause of action under Sections 2, Third and Fourth, of the RLA is "limited to exceptional circumstances." *See Int'l Ass'n of Machinists*, 813 F.2d at 1041. Plaintiffs contend that this case presents such exceptional circumstances because their statutory rights have allegedly been violated—in

---

[1] To the extent Plaintiffs are attempting to invoke the "repudiation" exception based on the parties' quibbles over non-substantive aspects of how Plaintiffs' grievances were processed, those disagreements raise "minor disputes" and do not confer subject-matter jurisdiction on this Court. (*See* Section I.A, *supra*.)

1    particular, according to Plaintiffs' brief, United failed to bargain over wages (a mandatory subject
2    of bargaining) and the Union Defendants "were forced to agree to United's demand for a
3    unilateral reduction" in wages. (See Opp. at 13.)
4          As a threshold matter, Plaintiffs' argument should be rejected because only the IBT, and
5    not individual employees, has standing to assert a claim for failure to bargain under the RLA. *See*
6    *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 318 (3d Cir. 2004) (holding that individual employees
7    lacked standing to bring claim against carrier and union for failure to negotiate in good faith);
8    *Lindsay v. Ass'n of Pro. Flight Attendants*, 581 F.3d 47, 53 (2d Cir. 2009) (holding that
9    "Congress did not intend to create a private cause of action for employees to enforce § 152,
10   First"). Unsurprisingly, the IBT does not contend that United somehow failed to bargain when it
11   implemented wage increases based on Adjustment Calculation results with which the IBT agreed.
12         In any event, the SAC's allegations do not support—plausibly or otherwise—the bizarre
13   conspiracy theory laid out in Plaintiffs' brief. Plaintiffs cite allegations related to grievances
14   about the Adjustment Calculation filed by IBT-represented employees at other stations (*see* SAC
15   ¶ 217), and various statements by Local 968 officials expressing skepticism, disagreement, or
16   disappointment with the Adjustment Calculation results (*see id*. ¶¶ 220–228), but none of these
17   allegations explain exactly how United "forc[ed] [IBT's] compliance with their position that is in
18   effect an illegitimate interpretation of the CBA" or why the "Union Defendants knuckl[ed] under
19   in fear of reprisal." (Opp. at 13.) Similar to their claims of collusion between United and the
20   IBT, "Plaintiffs' failure to provide an explanation underscores that they are essentially engaging
21   in speculation." (*See* Order at 18.) Moreover, these allegations do not suggest a "situation[] in
22   which an employer's conduct has been motivated by anti-union animus or where circumstances
23   exist that significantly undermine the functioning of the union, such as an attempt to interfere
24   with an employee's choice of collective bargaining representative or an act of intimidation that
25   cannot be remedied by administrative means." *See Ass'n of Flight Attendants*, 280 F.3d at 905.
26         Plaintiffs assert that the SAC "alleges similar facts" to *Fennessy v. Southwest Airlines*,
27   91 F.3d 1359 (9th Cir. 1996) (*see* Opp. at 13), yet fail to grapple with—let alone acknowledge—
28   the United Defendants' explanation for why *Fennessy* does not apply here. (*See* Mot. at 17.)

8

UNITED DEFENDANTS' REPLY ISO
MOTION TO DISMISS SAC
NO. 3:23-CV-03939-EMC

1  *Fennessy* involved a "unique factual setting that justified judicial intervention," because the
2  plaintiff sought to replace the existing union with a new one and the case thus "actually involved
3  a de facto precertification dispute." *See Ass'n of Flight Attendants*, 280 F.3d at 905-06
4  (discussing *Fennessy*).  None of the SAC's allegations remotely suggest the existence of a "de
5  facto precertification dispute" or retaliation against Plaintiffs for union-organizing activity.

6       Plaintiffs argue, alternatively, that if the Court is inclined to dismiss their claim under
7  RLA Sections 2, Third and Fourth, for lack of subject-matter jurisdiction, it should grant leave to
8  amend and allow Plaintiffs to seek "limited expedited discovery" related to this claim.  (*See* Opp.
9  at 14.)  Discovery is not warranted here, because the United Defendants seek dismissal of
10 Plaintiffs' cause of action not only for lack of subject-matter jurisdiction, but also for failure to
11 state a claim, and Plaintiffs fail to offer any explanation for how "limited expedited discovery"
12 could uncover information which would establish the "exceptional circumstances" justifying
13 judicial intervention in a post-certification dispute under Sections 2, Third and Fourth, of the
14 RLA.  *See Int'l Ass'n of Machinists*, 813 F.2d at 1041.

### III. PLAINTIFFS' CLAIM FOR VIOLATION OF "STATUTORY DUE PROCESS" SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE NO INDIVIDUAL RIGHT TO ARBITRATE THEIR GRIEVANCES OVER THEIR UNION'S OBJECTION.

18      Plaintiffs allege that Defendants also violated the RLA "[b]y refusing to allow Plaintiffs to
19 complete the congressionally mandated grievance process for a grievance arising under the CBA,
20 and by refusing to initiate the Third Step System Board of Adjustment as provided for under the
21 CBA for such purpose." (SAC ¶ 306.)  In briefing on their initial motion to dismiss, the United
22 Defendants explained at length that Plaintiffs' claim fails as a matter of law because the RLA
23 does not provide airline employees with a right to arbitrate where their union has declined to
24 appeal their grievance to arbitration before the System Board.  (*See* ECF No. 35 at 10-14; ECF
25 No. 45 at 7-11.)  Plaintiffs' arguments and case citations to the contrary—which were already
26 addressed in the United Defendants' reply brief in support of their initial motion to dismiss—are
27 not persuasive.  (*See* ECF No. 45 at 7-11) (discussing *Int'l Ass'n of Machinists v. Cent. Airlines,*
28 *Inc.*, 372 U.S. 682 (1963); *Elgin, Joliet, & E. Ry. Co. v. Burley*, 325 U.S. 711 (1945); *Edelman v.*

*Western Airlines*, 892 F.2d 839 (9th Cir. 1989); *Stevens v. Teamsters Loc. 2707, Airline, Aerospace & Allied Emps.*, 504 F. Supp. 332 (W.D. Wash. 1980).)[2]

In its prior Order, the Court assumed without deciding that Plaintiffs had an individual right under 45 U.S.C. § 184 to pursue their grievances to arbitration and that there was a private right of action under that provision of the RLA,[3] but dismissed Plaintiffs' claim because they did not allege "that Plaintiffs individually petitioned the system adjustment board for relief and that the United Defendants then failed to participate." (*See* Order at 29.) According to Plaintiffs, their SAC cures this deficiency, because they "alleged they followed the [petitioning] process at United." (Opp. at 17) (citing SAC ¶¶ 205-213).) They allege that Plaintiff Scholz sent United a "written request to appeal the grievance to the [system adjustment board]" (*id*. ¶ 207), but, as the Court noted in its initial Order, "asking the United Defendants to continue the grievance process with the system adjustment board is not the same thing as petitioning the adjustment board for relief." (Order at 29.) Nor is "ask[ing] [Local 986] . . . to continue the grievance process with United but without Local 986 as a no-fund case" (SAC ¶ 206), or "implor[ing] Local 986 to respond to how to go about initiating the [system adjustment board] without them and reiterating [Scholz's] rejection of closing the grievances without prior notification or consent." (*Id*. ¶ 210).

According to Plaintiffs, Plaintiff Scholz "pursued [his] grievances 'in the usual manner,'" which "includes the local union notifying United, on a member's behalf, that the member wishes to proceed however they will be doing so without the local union's support." (Opp. at 18) (citing SAC ¶ 18).) As the United Defendants demonstrated in their Motion to Dismiss (*see* Mot.

---

[2] Citing Section 204 of the RLA, 45 U.S.C. § 184, Plaintiffs also assert that "the statute speaks for itself" and provides that "employees may establish [boards of adjustment] to settle their disputes." (Opp. at 15.) However, when read in conjunction with other RLA provisions applicable to airlines (*e.g.*, Section 2, Second, of the RLA, 45 U.S.C. § 152 (Second)), it is clear that Section 204's reference to "the parties" and "either party," as having the right to submit a dispute to the adjustment board, refers to the carrier and the union, as those are the parties participating in the pre-arbitration conferences to attempt to resolve the dispute pursuant to Section 2, Second. (*See* ECF No. 35 at 11-12.)

[3] Plaintiffs assert that the United Defendants "essentially concede Plaintiffs are correct that Plaintiffs have individual rights to access the mandated grievance process." (Opp. at 16.) Not so. It is the United Defendants' position that no such right exists, as already extensively briefed to the Court. The United Defendants have simply focused the instant Motion to Dismiss on Plaintiffs' failure to "address—let alone remedy—the defect cited by the Court when it dismissed their 'statutory due process' claim in its prior Order." (Mot. at 18.)

1  at 18-20), however, these allegations are insufficient to state a plausible claim for "statutory due
2  process" under the RLA for two reasons:  (i) the alleged "petitioning" practice under the CBA
3  was not actually followed here—*i.e.*, Local 986 did not provide notice to United (*see* Mot. at 20)
4  (citing SAC ¶ 98)); and (ii) even if it were, an alleged practice under the CBA is irrelevant to
5  what the RLA requires: "a petition . . . to an appropriate adjustment board . . . with a full
6  statement of the facts and supporting data bearing upon the disputes."  45 U.S.C. § 184.

Accordingly, even if airline employees have the right under the RLA to individually arbitrate their grievances over their union's objection, Plaintiffs' SAC fails to state a plausible claim for relief.

## IV. PLAINTIFFS' STATE-LAW CLAIMS ARE PREEMPTED BY THE RAILWAY LABOR ACT.

In its prior Order, the Court dismissed Plaintiffs' claims under California Civil Code Sections 1709 and 1710 on RLA-preemption grounds.  Applying the two-part test set forth in *Alaska Airlines, Inc. v. Schurke*, 898 F.3d 904 (9th Cir. 2018), the Court concluded that:

> [T]he fraud claim is dependent on interpretation of the CBA/LOA #29.  That is, the only way that the Union Defendants and/or United Defendants could be said to have concealed a fraud from Plaintiffs is if the CBA/LOA #29 should have been interpreted as Plaintiffs advocate wherein United agreed to provide employees with objectively calculated raises according to a set formula.

(Order at 37-38.)

The SAC contains no new allegations which would compel a different conclusion.  In fact, Plaintiffs have largely repeated the same allegations as in their initial Complaint, and they argue once again that "United unlawfully concealed, and falsely stated, the correct wage rate" and "deceive[d] and misl[ed] its employees."  (*See* Opp. at 20 & 21.)  These claims turn on whether the statements and representations allegedly made by United to its employees regarding the Adjustment Calculation were true or false and, relatedly, whether United properly calculated the wage increases in accordance with the terms of LOA #29 (including the associated Cost Model). Plaintiffs' allegations of fraud are based entirely on ***their interpretation*** of LOA #29, which, in their view, required United to use a different formula to calculate the wage adjustments. Manifestly, there is a dispute between the parties over the proper interpretation of the CBA.

Plaintiffs argue that their state-law fraud claims escape preemption for two reasons. **First**, they assert that the United Defendants have failed to identify "disputed terms" of the CBA which require interpretation. (Opp. at 20.) According to Plaintiffs, in order to determine whether United properly calculated Plaintiffs' wage increases, the Court need only "refer" to LOA #29 and "make a factual determination" (*id*. at 21), but the discrepancies between the Adjustment Calculation results and Plaintiffs' "calculations" reveal that Plaintiffs and Defendants disagree about how the wage increases should have been calculated in accordance with the terms of LOA #29. **Second**, Plaintiffs assert that their state-law fraud claims are not preempted because the "United Defendants' obligation to refrain from deceiving and misleading its employees does not depend upon any express or implied promise set forth in the CBA." (Opp. at 21 (cleaned up).) Under *Schurke*, however, even if state-law claims seek to vindicate rights which are not "grounded in a CBA," they are still preempted if "litigating the state law claim nonetheless requires interpretation of a CBA." 898 F.3d at 920-22. Because Plaintiffs' allegations in support of their state-law fraud claims demonstrate that the claims cannot be resolved without interpreting the CBA, the claims are preempted by the RLA.

## CONCLUSION

For the reasons stated above and in its prior briefing, the United Defendants respectfully request that the Court grant their Motion to Dismiss and dismiss Plaintiffs' Second Amended Complaint with prejudice and in its entirety against the United Defendants.

Respectfully submitted,

Dated: October 7, 2024.           O'MELVENY & MYERS LLP

CHRIS A. HOLLINGER
ADAM P. KOHSWEENEY
MOLLY EDGAR

By:     */s/ Chris A. Hollinger*
              Chris A. Hollinger

*Attorneys for Defendants*
*United Airlines, Inc. and*
*United Airlines Holdings, Inc.*