UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS NEAL MULLINS, et al., | Case No. 23-cv-03939-EMC |
| Plaintiffs, | |
| v. | **ORDER RE PLAINTIFFS' MOTION FOR INDICATIVE RULING** |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., | Docket No. 119 |
| Defendants. | |

Previously, the Court dismissed all claims against the Union Defendants and the United Defendants, except for the Railway Labor Act ("RLA") statutory due process claim. *See* Docket No. 91 (Order at 37). The Court thereafter granted the Union and United Defendants' motion for certification of an interlocutory appeal related to the statutory due process claim. *See* Docket No. 102 (Order at 4). The Ninth Circuit accepted the appeal. *See* Docket No. 107 (order). Plaintiffs filed a cross-appeal challenging the Court's rulings that were unfavorable to them. *See* Docket No. 111 (notice of cross-appeal).

Now pending before the Court is a motion by Plaintiffs in which they ask the Court for relief from the Court's prior orders to the extent those orders were unfavorable to them. Recognizing the pending cross-appeal,[1] Plaintiffs ask the Court to issue an indicative ruling on their underlying motion for relief. Having considered the parties' briefs and accompanying submissions, the Court finds this matter suitable for resolution without oral argument. The hearing on the motion for an indicative ruling is **VACATED**. The Court **DENIES** Plaintiffs'

---

[1] *See Armstrong v. Brown*, 732 F.3d 955, 959 n.6 (9th Cir. 2013) ("[A]n appeal ordinarily divests the district court of jurisdiction over the matters on appeal . . . .").

motion for relief, which, as discussed below, is essentially a motion to reconsider.

## I.   DISCUSSION

A.   Rule 62.1

Plaintiffs' motion for an indicative ruling is made pursuant to Federal Rule of Civil Procedure 62.1.  Under Rule 62.1,

> [i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:
>
> (1)   defer considering the motion;
>
> (2)   deny the motion; or
>
> (3)   state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

Fed. R. Civ. P. 62.1.

B.   Procedural Objection

In their papers, the Union and United Defendants do not challenge Plaintiffs' invocation of Rule 62.1.  However, they both argue that the Court should deny Plaintiffs' underlying motion for relief (*i.e.*, the motion for which Plaintiffs seek an indicative ruling) on the basis that it is procedurally improper.

Plaintiffs' underlying motion for relief is styled as a motion for relief from judgment under Federal Rule of Civil Procedure 60(b), and an accompanying motion to amend under Federal Rule of Civil Procedure 15(a).  Plaintiffs argue that relief from the judgment is warranted – and thereby an amendment to the operative complaint should be permitted– because there is newly discovered evidence that, if available earlier, would have required the Court to deny the Union and United Defendants' motions to dismiss.  *See* Mot. at 2 (arguing that, at the very least, the following two claims would not have been dismissed: (1) the claim against the Union Defendants for breach of the duty of fair representation ("DFR") and (2) the claim against the United Defendants for interference with the unions in violation of the RLA, 45 U.S.C. § 152, Third and Fourth).  Both Defendants argue that Plaintiffs' Rule 60(b)(2) motion should be denied (and likewise their motion to amend) because a Rule 60(b) motion is permissible only after there is a final judgment,

United States District Court
Northern District of California

and, here, no final judgment has been entered in the case at bar.

In response, Plaintiffs admit that their reliance on Rule 60(b) was not appropriate. They argue, however, that they still have the right to ask the Court to reconsider its non-final order dismissing the bulk of their causes of action. *See* Fed. R. Civ. P. 54(b); Civ. L.R. 7-9; *see also LMC Vineyards, LLC v. Allied World Nat'l Assur. Co.*, No. 24-cv-03357-TLT, 2025 U.S. Dist. LEXIS 255201, at \*8 (N.D. Cal. Aug. 26, 2025) (noting that, in the Northern District, "a motion for reconsideration under Rule 54(b) must satisfy additional requirements, set forth in Civil Local Rule 7-9(b)"). The Court thus construes Plaintiffs' motion for relief as a motion for reconsideration under Rule 54(b) and/or Civil Local Rule 7-9, and not a motion for relief from a final judgment under Rule 60(b).

C.      Rule 54(b) and Civil Local Rule 7-9

> Motions for reconsideration [under Rule 54(b)] are disfavored and "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *McDowell v. Calderon*, 197 F.3d 1253, 1254 (9th Cir. 1999) (per curiam) (internal quotation marks and citation omitted). . . . [Under Civil Local Rule 7-9,] [a] motion for reconsideration may be made on three grounds: (1) a material difference in fact or law exists from that which was presented to the court, which, in the exercise of reasonable diligence, the moving party did not know at the time of the order for which reconsideration is sought; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the court to consider material facts or dispositive legal arguments.

*Firsov v. Qatar Airways Grp.*, No. 5:25-cv-05325-BLF, 2025 U.S. Dist. LEXIS 219363, at \*2-3 (N.D. Cal. Nov. 6, 2025).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

3

In the instant case, Plaintiffs seek reconsideration based on two pieces of new evidence. They are as follows:

(1) **A memorandum from an Independent Investigations Officer[2] ("IIO") to the Teamsters General President and members of the General Executive Board.** *See* Mariani Decl., Ex. 1 (IIO Memo). The memorandum was only recently prepared, as reflected by its date of February 13, 2026. In the memorandum, the IIO recommends charges against two individuals: former Local Union 986[3] Secretary-Treasurer Chris Griswold and former President Sean Harren. According to the IIO, these "top officers of Local Union 986 . . . liv[ed] large on the local union's dime[,] spending outsized amounts of members' dues money" on, *e.g.*, meals, drinks, and trips for themselves and others, including but not limited to spouses and non-Teamster friends. *See* Mariani Decl., Ex. 1 (IIO Memo at 1). The IIO also reported that self-dealing by Chris Griswold and Sean Harren extended to exempting themselves and others from local union dues. *See* Mariani Decl., Ex. 1 (IIO Memo at 8). By failing to pay full dues during the relevant period, Chris Griswold was also ineligible for election as the local union secretary-treasurer. *See* Mariani Decl., Ex. 1 (IIO Memo at 9-10). The charges recommended by the IIO included, *e.g.*, embezzlement/conversion/misappropriation of union funds, lack of internal accounting controls and interfering with such controls, failure to enforce dues requirements, and failure to enforce election rules. *See* Mariani Decl., Ex. 1 (IIO Memo at 12-13).

/ / /

/ / /

/ / /

---

[2] As explained by Plaintiffs, the Independent Investigations Office "monitors Teamsters corruption, under the authority granted by Paragraphs 30, 31, and 32 of the Final Agreement and Order in *United States v. International Brotherhood of Teamsters*, 88 Civ. 4486 (S.D.N.Y.), Final Agreement and Order, Dkt. No. 4409-1, dated January 14, 2015." Mot. at 1.

[3] Local Union 986 is one of the named defendants in the instant case.

(2) **Two documents that "Plaintiffs were provided" related to Clacy Griswold.[4]** Mot. at 9. Clacy Griswold was one of several individuals who signed, on behalf of the Teamsters, the relevant collective bargaining agreement with United. The CBA included LOA #29, which provided for the wage adjustment. The CBA listed Clacy Griswold's title as "Chairman, International Representative," for Teamsters. *See* SAC, Ex. E (ECF Page 482) (CBA); *see also* Clacy Griswold Decl. ¶ 2 (testifying that he is a retired Teamster and works as a consultant with the Teamsters). The documents about Clacy Griswold that were provided to Plaintiffs appear to come from some kind of computer or online database titled "United Airlines Org Charts." One document shows a picture of Clacy Griswold along with his name and indicates that he is affiliated with "SFOMO Janitorial." There is a blank next to Clacy Griswold's office phone number. The email listed for Clacy Griswold uses the name "hector.santiago." The second document also shows a picture of Clacy Griswold along with his name but indicates that he is affiliated with "SFOHR." No office phone or email information is provided. *See* Mariani Decl., Ex. 2 ("United Airlines Org Charts" documents). According to Plaintiffs, the two documents suggest that Clacy Griswold, an individual "responsible for bargaining, negotiations, contract administration, and grievance handling [on behalf of the unions,] was **simultaneously** acting in this [union] representation role **and** on United's payroll as part of HR and later, as a janitor." Mot. at 6, 9 (emphasis added); *see also* Mariani Decl., Ex. 2. In response to the evidence submitted by Plaintiffs, the Union Defendants submitted a declaration from Clacy Griswold in which he states that he is not employed by United or on its payroll and that he has never been employed by United or on its payroll. *See* Clacy Griswold Decl. ¶ 3. The United Defendants also submitted a declaration, specifically, from an employee involved in collective bargaining negotiations with Teamsters making the

---

[4] It is not clear whether Chris Griswold and Clacy Griswold are related. Even if they were, that fact in and of itself would not be material to the Court's analysis.

same point.  *See generally* Hansen Decl.  Mr. Hansen states that Clacy Griswold is Mr. Hansen's "union counterpart in . . . negotiations" and that Clacy Griswold is not a United employee or otherwise paid by United.  Hansen Decl. ¶ 2.

D.    IIO Memorandum

The Court denies Plaintiffs' motion to reconsider based on the IIO memorandum.  The IIO memorandum has no impact on the Court's orders dismissing, *inter alia*, the DFR and RLA interference claims.  The Court dismissed these claims because they were predicated on a theory that the Union Defendants colluded with the United Defendants in not giving the wage adjustment required by the CBA, but there were insufficient allegations to support collusion.  *See* Docket No. 91 (Order at 19) (noting that Plaintiffs asserted collusion between the Union and United Defendants, but "there must be 'substantial evidence' of such to support a DFR claim" and "Plaintiffs' theory of collusion – *i.e.*, that the unions went along with United because they were fearful about their own misconduct being revealed – is convoluted, as well as speculative and implausible"); Docket No. 91 (Order at 32, 34-35) (in discussing RLA interference claim, stating that Plaintiffs essentially implicated § 152, Seventh, but this was not justified because alleged collusion between the Union and United Defendants was not plausible).[5]  The IIO memorandum does not render Plaintiffs' collusion theory plausible.  The IIO memorandum focuses on alleged misconduct by two local union officers, Chris Griswold and Sean Harren.  The individuals' alleged misconduct was essentially self-dealing.  There is no indication that the alleged misconduct was for the benefit of United.  There is also no indication that either individual was a part of the decision making related to wage adjustment or the denial of Plaintiffs' grievances.  In

---

[5] In their papers, Plaintiffs suggest that the Court dismissed their claims because it could not believe that union leadership might abandon the membership.  *See, e.g.*, Mot. at 4 ("The Order's reasoning rested centrally on the determination that it was not reasonable to infer that Union officials would secretly abandon member interests and act contrary to their fiduciary obligations."); Mot. at 14 ("The Court's dismissal turned on plausibility determinations regarding bad faith, motive, and interference, largely resting on a presumption that the alleged misconduct was implausible because no rational motive existed and because union officials would not secretly violate their fiduciary obligations.").  That is not correct.  The problem for Plaintiffs was that their theory was tied to collusion between the Union Defendants and the United Defendants.  Thus, Plaintiffs were required to have allegations suggesting that such collusion was plausible and not simply possible.

United States District Court
Northern District of California

fact, the IIO memorandum does not mention wage adjustment or Plaintiffs' grievances at all.

According to Plaintiffs, the self-dealing of the individuals made them "vulnerable to employer leverage," Mot. at 8, but this is largely speculative.  Plaintiffs do not explain, for instance, how United knew that Chris Griswold and Sean Harren were improperly spending the local union's dues money on things such as meals, drinks, and trips.  And even if, as Plaintiffs suggest, United knew that Chris Griswold and Sean Harren were not requiring full payment of dues for themselves and certain others (*i.e.*, because United had a "role in dues collection and remittance to the Trustees," Mot. at 13), there is nothing to suggest that United exploited this "vulnerability" with respect to the wage adjustment or Plaintiffs' grievances at issue in this case.  Again, nothing connects either individual to the wage adjustment process or the grievances.

To the extent Plaintiffs further contend that the IIO memorandum "strengthens the theory that the unexplained $1.5 million payment [from United to Teamsters] was part of unlawful employer influence," Mot. at 9, that argument is also unavailing.  The Court's prior order discussed the alleged $1.5 million payment from United to Teamsters as follows:

> Plaintiffs allege that, in 2017, about six months after the CBA was ratified but before the first Adjustment Calculation in 2018, "Teamsters received a $1.5 million dollar payment from United," and "[n]either the Teamsters nor United have ever accounted for this payment as a valid payment for legitimate reasons."  SAC ¶ 117.  Plaintiffs have not explained the relevance of this allegation.  Nor can the Court divine the relevance particularly because, as discussed below, Plaintiffs seem to take the position that United only decided to change the method for the Adjustment Calculation after a suit was brought against it in 2018.  *Cf. Seitz v. Int'l Bhd. of Teamsters*, No. 22-15902, 2023 U.S. App. LEXIS 19626, at *3 (9th Cir. July 31, 2023) (stating that plaintiff "Seitz points to a $ 1.5 million payment that the IBT received from United and insinuates that the IBT agreed to ratify and underenforce the CBA in exchange for that payment[,] [b]ut Seitz alleges no facts to connect this payment to the negotiation of the CBA, or to any other alleged misconduct").

Docket No. 91 (Order at 4 n.1).  Here, Plaintiffs do not provide any concrete explanation as to how the IIO memorandum, which focused on the alleged self-dealing of two individuals not involved in the wage adjustment process, has any impact on the instant case.  Plaintiffs simply seem to rely again on the fact that grievances related to the wage adjustment were denied at or about the same time of the payment.  *See* Mot. at 9 ("[G]rievance denials coinciding with financial transactions

7

when union leaders had reason to avoid employer scrutiny is precisely the kind of factual enhancement that supports plausibility."). The newly discovered document is not material to the Court's prior rulings.

E.      Documents Related to Clacy Griswold

The Court also denies the motion to reconsider to the extent it is based on the documents related to Clacy Griswold. As a preliminary matter, Plaintiffs have failed to show that the documents – apparently coming from a database titled "United Airlines Org Charts" – could not have been discovered earlier with reasonable diligence.

Even if Plaintiffs had acted with the requisite diligence, the Court cannot attribute any significance to the evidence without additional information from Plaintiffs. Plaintiffs suggest in their papers that "United Airlines Org Charts" is information that comes from United itself, *see* Reply to Union at 8 (stating that the "screenshots of United's organizational arguments" are "ordinary business records of the United Defendants"), but there is no concrete evidence to support that claim. *See, e.g.*, Mariani Decl. ¶ 5 (Plaintiffs' counsel testifying that she "became aware of records that strongly infer Clacy Griswold has been on United's payroll as an HR employee and a janitor during over [sic] the same period"; characterizing the documents – in conclusory terms – as "Clacy Griswold['s] United employment records"); Reply to Union at 11 (stating that the documents "*appear[]* to be United's own organization charts showing union leadership as employed by United") (emphasis added). The fact that one document lists Clacy Griswold's email as "hector.santiago" certainly raises questions about validity or, at least, reliability. And surprisingly, Plaintiffs did not provide any additional information about the documents even after both the Union and United Defendants provided declarations stating that Clacy Griswold was not a United employee or otherwise on the United payroll. To be sure, Plaintiffs are not required to prove, at this juncture, that Clacy Griswold was or is, in fact, a United employee. But for the Court to reconsider its prior rulings, plausibility at least is needed, *see generally Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and without more information about the "United Airlines Org Charts," that threshold has not been met.

Finally, even if Clacy Griswold did have some kind of affiliation with both the unions and United, his involvement seems to have been negotiating the CBA (which included LOA #29), and Plaintiffs do not argue that LOA #29 was unfavorable to them. Rather, their position is that the wage adjustment process was carried out in a way that was inconsistent with LOA #29. Plaintiffs have not – at least not clearly – claimed that Clacy Griswold was a part of that process or the grievance process related thereto.

## II.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion for relief from the Court's prior order is denied.

This order disposes of Docket No. 119.

**IT IS SO ORDERED**.

Dated: April 7, 2026

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California

9